**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARK W. DOBRONSKI,

Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
JNZ INSURANCE SERVICES, INC.,
NICHOLAS O'CONNOR,
GAMBALE INSURANCE GROUP, INC.,
MISAEL MATOS,
NATALIE DELLA AGENCY LLC,
ANA MERCEDES SANTOS,
PREMIER MARKETING SERVICES OF FLORIDA LLC,
and JOHN DOE I-X,

Defendants.

Case No. 2:26-cv-13879
District Judge Matthew F. Leitman
Magistrate Judge Curtis Ivy, Jr.

---

Mark W. Dobronski
P.O. Box 99
Dexter, MI 48130

*Plaintiff*

Joseph N. Tucker (P81807)
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Phone: (502) 540-2360
Joseph.tucker@dinsmore.com

Karen S. Hockstad (P47409)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd, Suite 200
Columbus, OH 43215
Karen.hockstad@dinsmore.com
*Attorneys for Defendant Nicholas O'Connor*

---

**JNZ INSURANCE SERVICES, INC. AND NICHOLAS O'CONNOR'S PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6)**

JNZ Insurance Services, Inc. and Nicholas O'Connor, through counsel, for the reasons stated in the following brief, respectfully requests this Court grant its Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and enter an order dismissing Mark W. Dobronski's Complaint against them *with prejudice*.

Date: October 20, 2026

Respectfully submitted,

*/s/ Karen S. Hockstad*

Joseph N. Tucker (P81807)
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Phone: (502) 540-2360
Joseph.tucker@dinsmore.com

And

Karen S. Hockstad (P47409)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd, Suite 200
Columbus, OH 43215
Karen.hockstad@dinsmore.com
*Attorneys for Defendants JNZ Insurance Services, Inc. and Nicholas O'Connor*

## LR 7.1 STATEMENT OF CONFERRAL

Pursuant to LR 7.1(a), the undersigned counsel certifies that on October 20, 2026, counsel reached out to Plaintiff to seek concurrence in the relief sought. In response, Counsel received an email requesting a meet and confer on October 23, 2026; however because responsive pleadings are due today, Counsel explained to Plaintiff that the Motion was due today.

Date: October 20, 2026

Respectfully submitted,

*/s/ Karen S. Hockstad*

Joseph N. Tucker (P81807)
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Phone: (502) 540-2360
Joseph.tucker@dinsmore.com

And

Karen S. Hockstad (P47409)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd, Suite 200
Columbus, OH 43215
Karen.hockstad@dinsmore.com
*Attorneys for Defendants JNZ Insurance Services, Inc. and Nicholas O'Connor*

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MARK W. DOBRONSKI,

Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
JNZ INSURANCE SERVICES, INC.,
NICHOLAS O'CONNOR,
GAMBALE INSURANCE GROUP, INC.,
MISAEL MATOS,
NATALIE DELLA AGENCY LLC,
ANA MERCEDES SANTOS,
PREMIER MARKETING SERVICES OF FLORIDA LLC,
and JOHN DOE I-X,

Defendants.

Case No. 2:26-cv-13879
District Judge Matthew F. Leitman
Magistrate Judge Curtis Ivy, Jr.

---

Mark W. Dobronski
P.O. Box 99
Dexter, MI 48130

*Plaintiff*

Joseph N. Tucker (P81807)
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Phone: (502) 540-2360
Joseph.tucker@dinsmore.com

And

Karen S. Hockstad (P47409)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd, Suite 200
Columbus, OH 43215
Karen.hockstad@dinsmore.com

*Attorneys for Defendants JNZ Insurance Services, Inc., and Nicholas O'Connor*

**BRIEF IN SUPPORT OF JNZ INSURANCE SERVICES, INC. AND NICHOLAS O'CONNOR'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6)**

# TABLE OF CONTENTS

CONCISE STATEMENT OF THE ISSUES PRESENTED ..................................... i

THE CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT ..................................................................................... ii

I. INTRODUCTION ........................................................................................ 1

II. MR. DOBRONSKI'S ALLEGATIONS ......................................................... 2

III. LEGAL STANDARD .................................................................................. 3

A. Fed R. Civ. P. 12(b)(1)............................................................................ 3

B. Fed R. Civ. P. 12(b)(6)............................................................................ 3

IV. ARGUMENT.............................................................................................. 4

A. Dobronski Cannot Succeed on Any Claims relating to Calls 3 or 4. .... 5

B. Dobronski Lacks Standing to Pursue Claims Against JNZ/O'Connor for Other Reasons As Well ..................................................................... 6

C. Counts I and II Should be Dismissed Because Mr. Dobronski Failed to Sufficiently Plead Use of an Autodialer ................................................ 8

D. Count III Should Be Dismissed Because There is No Private Right of Action Under 64.1200(C)(2) ............................................................ 10

E. Mr. Dobronski's "Falsified Caller ID" Claim (Count V) is Insufficiently Pled ..................................................................................... 14

F. Mr. Dobronski's MHSSA Claim (Count VII) is Insufficiently Pled...16

G. Mr. Dobronski's Would Not Be Entitled to a Willful Finding. ...........16

V. CONCLUSION........................................................................................... 18

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1. Should this Court dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) because Mr. Dobronski's Complaint fails to show any injury sufficient for Article III standing?

**Proposed Answer**: Yes.

2. Should this Court dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) because Mr. Dobronski's claims are insufficiently pled?

**Proposed Answer**: Yes.

## THE CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

*Ashcroft v. Iqbal, 556 U.S. 662 (2009)*

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)

*Bristow v. Am. Nat'l Ins. Co.*, No. 2:20-cv-10752, 2021 U.S. Dist. LEXIS 102406 (E.D. Mich. June 1, 2021)

*Dobronski v. Family First Life, LLC,* No. 2:22-cv-12039, 2024 U.S. Dist. LEXIS 27096, 2024 WL 575858 (E.D. Mich. Jan. 19, 2024)

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244 (2024)

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 168, 145 S. Ct. 2006, 2022 (2025)

*Shelton v. Fast Advance Funding, LLC (*378 F. Supp. 3d 356 *(E.D. Pa. May 8, 2019*)

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

*Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016)

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

## I. INTRODUCTION

JNZ Insurance Company ("JNZ") is an Allstate Insurance Agency. Nick O'Connor works for JNZ as an insurance agent. Mark W. Dobronski ("Mr. Dobronski" or "Plaintiff") is a serial litigator. In his various lawsuits filed under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*, Mr. Dobronski, who has claimed to be domiciled in both Florida and Michigan in various lawsuits, claims to be within the scope of aggrieved citizens the TCPA, MTCCCA and MHSSA seek to protect. In reality, bating callers to drum up claims is Mr. Dobronski's business plan. Indeed, Mr. Dobronski has over forty federal lawsuits to his name, most relating to the TCPA.

Mr. Dobronski initiated this lawsuit by filing his Complaint on September 14, 2026 in the Circuit Court for the 22nd Judicial Circuit, Washtenaw County, bearing case number 26-001890-NZ. In his Complaint, Mr. Dobronski contends the Defendants violated the TCPA, the MHSSA and the FTSA in relation to calls from unknown lead generators who then transferred him to one of the named defendants. Specifically, Mr. Dobronski claims that calls were made without his prior express consent and for no emergency purposes to his "residential telephone line" using an autodialer (Counts I and II), in violation of the delivery restrictions outlined in 47

CFR § 64.1200 (c)(2), despite his number being registered on the federal do-not-call registry (Count III), failing to comply with 47 C.F.R. §64.1200(d)(4)(Count IV), failing to honor his do not call request (Count V) and using a false identity and caller ID (VI). Mr. Dobronski further claims the subject calls violated the MHSSA (Count VII). For relief, Mr. Dobronski requests this Court grant him over $ 57,000 in monetary relief for six calls – at least four of which he consented to receiving. As outlined in more detail below, the Complaint fails to state a claim and should be dismissed.

## II. MR. DOBRONSKI'S ALLEGATIONS

The Complaint claims that Mr. Dobronski subscribes to and regularly uses 407-xxx-xx56 (the "56 Number") and 407-xxx-xx58 (the (58 Number" for personal family communications…[b]oth numbers are assigned to service for which Plaintiff is charged on a per-call and per-minute basis. Compl., ¶ 19. He further claims that each number has been registered on the National Do Not Call Registry more than thirty-one days prior to the "Subject Calls." Compl., ¶20. He next claims that he was in his home in Michigan when he received the "Subject Calls") even though the phone numbers have a Florida area code. Compl., ¶21. He alleges that both numbers are used as "residential telephone service at [his] residence." *Id.*

Mr. Dobronski claims that upon receipt of each call, he provided a "controlled name, false birth date, and a controlled Windermere mailing address to trace the

solicitation. Compl., ¶38. On Call one, Plaintiff used the fake name Alexander Graham. Compl., ¶29. For Call 2 he used the fake name Carl Carpenter. Compl., ¶38. Call 3 was made to a Carl Carpenter. Compl., ¶45. The same is true for calls 4 through 6. JNZ and O'Connor are alleged to ve involved with Call 3. Compl., ¶43-50.

## III. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1).

Federal Rule of Civil Procedure 12(b)(1) allows for motions asserting a lack of jurisdiction of the subject matter. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a complaint may be dismissed if the plaintiff lacks Article III standing to bring suit. *Id*. To demonstrate Article III standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

### B. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that [the defendant] is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must construe the pleading in favor of the non-moving party and shall accept the well-pleaded facts as true. *Jones v. City of Carlisle, Ky.*, 3 F.3d 945, 947 (6th Cir. 1993). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" need not be accepted. *Ashcroft*, 556 U.S. at 678.

## IV. ARGUMENT

As an initial matter, pleadings "drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a *pro se* complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, even a less stringent standard will not be met if the pleadings are not readily understandable. *See Becker v. Ohio State Legal Servs. Ass'n*, 19 F. App'x 321, 322 (6th Cir. 2001) (vague and conclusory allegations unsupported by material facts are not sufficient to state a claim).

Notwithstanding the foregoing, Mr. Dobronski should not be afforded the "less stringent standards" afforded *pro se* litigants, given his familiarity with the law.

Plaintiff was a Justice of the Peace in Scottsdale, Arizona, until February 22, 2002, when the Arizona Supreme Court issued an order removing Plaintiff from his position and ordering that Plaintiff "shall never again seek or hold judicial office in the State of Arizona." *Dobronski v. State of Arizona*, No. 03-273 (D. Ariz. Feb. 27, 2004), Dkt. 34; 2:6.

In a 2020 opinion (where sanctions were awarded *against* Mr. Dobronski for the "factual baselessness of [Mr. Dobronski's] suit"), the Honorable Robert H. Cleland found that Mr. Dobronski "is trained in the law," as he "previously served as a judge in Arizona," and thus, was aware of the "unnecessary burdens and costs" imposed by his actions. *Dobronski v. Alarm Mgmt. II, L.L.C.*, No. 18-11055, 2020 U.S. Dist. LEXIS 215666, at *11 (E.D. Mich. Nov. 18, 2020). Thus, Mr. Dobronski should be held to the same standards as any represented party. *See id.*

### A. Dobronski Cannot Succeed on Any Claims relating to Calls 3 and 4

In his complaint, Dobronski admits that he answered Call 2 made to the "56" number and provided the controlled name "Carl Carpenter" to the caller. Compl., ¶ 38. He also states that he provided an address and description of two vehicles he owned to the caller as part of the insurance application process. Id. Calls 3-6 were made to Carl Carpenter. Compl., ¶¶45, 54. Under similar fact patterns, this Court has determined that follow-up calls made to a consumer do not cause injury and therefore lack standing. See, e.g. *Dobronski v. Family First Life, LLC,* No. 2:22-cv-

12039, 2024 U.S. Dist. LEXIS 27096, 2024 WL 575858 (E.D. Mich. Jan. 19, 2024). Additionally, calls made to someone with an established business relationship to the caller are not considered telemarketing calls actionable under the TCPA. Id., at *27 ("Courts have found that an established business relationship exists where a call recipient feigns interest in a product in order to identify a caller")(citing *Charvat v. Southard Corp.*, No. 2:18-cv-190, 2019 U.S. Dist. LEXIS 241404, 2019 WL 13128407, at *4 (S.D. Ohio Sept. 30, 2019).

Because Calls 3-4 were made to Carl Carpenter at the number Dobronski provided to the agent during Call 2, Dobronski lacks standing to pursue damages for Calls 3-6 and in any event, such calls are not considered telephone solicitations actionable under either the TCPA or the MHSSA.

### B. Dobronksi Lacks Standing to Pursue Claims Against JNZ/O'Connor for Other Reasons As Well

In the 2021 opinion in *TransUnion LLC v. Ramirez*, the Supreme Court held that "[o]nly plaintiffs concretely harmed by a defendant's statutory violation have Article III standing to seek damages against that private defendant in federal court." 141 S. Ct. 2190, 2197 (2021). The Supreme Court further held that "[r]equiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts decide only the rights of individuals and that federal courts exercise their proper function in a limited and

separated government, Under U.S. Const. art. III, federal courts do not adjudicate hypothetical or abstract disputes." *Id*. at 2203.

"Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Casillas v. Madison Ave. Assocs*., 926 F.3d 329, 332 (7th Cir. 2019). Thus, "a bare procedural violation, divorced from any concrete harm," is not sufficient. *Spokeo*, 578 U.S. at 341. "Instead, the plaintiff must show that the statutory violation presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc*., 865 F.3d 884, 887 (7th Cir. 2017)

Mr. Dobronski's Complaint is entirely "divorced from any concrete harm" or meaningful allegations of any true nuisance or invasion of privacy. Mr. Dobronski fails to put forth any facts to demonstrate he, as a "private attorneys general" with a developed plan to lure callers, suffered any actual "concrete" injury. *See Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 800 (W.D. Pa. 2016) (no injury-in-fact where Plainitff's "only purpose in using her cell phones [was] to file TCPA lawsuits, [and according] the calls are not 'a nuisance and an invasion of privacy.'") On the contrary, Mr. Dobronski flaunts his "investigative technique" whereby he "provides false, but unique, identifying information during each received call," in the hopes that future callers will surface again so that he can create "a tie-in between

the two events," and then sue. Compl., ¶ 69. As in *Stoops*, Mr. Dobronski "has not suffered an injury-in-fact," nor has he revealed any harm that is fairly traceable to JNZ or O'Connor's alleged conduct. Thus, he "lacks constitutional standing to assert [his] claim[s]." *Stoops*, 197 F. Supp. 3d at 803.

### C. Counts I and II Should be Dismissed Because Mr. Dobronski Failed to Sufficiently Plead Use of an Autodialer

Dobronski alleges that the answered calls "repeatedly exhibited an electronic connection sound and several seconds of delay before a live salesperson spoke" and, that "[t]he callers then conducted scripted qualification and transferred Plaintiff to downstream sales personnel, and the September calls repeatedly used the same controlled lead information." Compl., ¶66. Dobronski further alleges that "upon information and belief…the originating operations used automated dialing equipment" and further "upon information and belief that the equipment used to place the Subject Calls employed random or sequential telephone-number generation in storing or producing numbers to be called and dialing them." Compl, ¶67. These allegations do not adequately plead the use of an auto-dialer and therefore Counts I and II of the Complaint must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To sustain a claim under 64.1200(a)()(iii) or (a)(2) alleging use of an automatic telephone dialing system, a plaintiff must do more than merely parrot

the statutory language. *Dobronski v. Rocket Mortgage, LLC*, No. 4:25-cv-12798, 2026 U.S. Dis. LEXIS 180350, 2026 LX 479174 (Jul. 15, 2026 E.D. Mich.), at *16 (citing) *Katz v. CrossCountry Mortg., LLC, N*o. 1:22-cv-00925, 2022 U.S. Dist. LEXIS 207417, 2022 WL 16950481, at *3 (N.D. Ohio Nov. 15, 2022). None of the allegations in Dobronski's complaint support a finding that an auto-dialer was used. In fact, at least two of the six Subject Calls were made to the same alias Dobronski provided in Call 2 – Carl Carpenter.[1] As explained by the *Rocket Mortgage* Court, *Facebook v. Duguid* requires that there must be allegations in the complaint alleging that the system used to place calls has the capacity to "use a random or sequential number generator to either store or produce numbers to be called." Id. (*citing Facebook v. Dugid,* 592 U.S. 395, 399, 141 S. Ct. 1163, 209 L. Ed. 2d 272 (2021)). In this case, Dobronski merely alleges that upon information and belief, the equipment used to place the Subject Calls employed random or sequential telephone-number generation in storing or producing numbers to be called and dialing them." Compl., ¶67. This is not sufficient to withstand a Motion to Dismiss.

Even if the Court allowed the bare bones allegation of ATDS to withstand a Motion to Dismiss, generally, Counts I and II as they relate to calls 3-6 certainly must be dismissed because by Dobronski's own admission, each of those calls

[1] See Compl., ¶¶38, 54.

used the same "controlled name" used by Dobronski in Call 2; which means whoever dialed the 56 number was intending to call Carl Carpenter at a number confirmed by Dobronski during the initial call.

Like the allegations in *Rocket,* the allegations here tacitly acknowledge that the calls targeted Dobronski, a/k/a Carl Carpenter at a number he provided. The *Rocket* Court found a plausible inference that there was no use of an ATDS under such circumstances. *Rocket,* at *19 (citing *Fluker v. Ally Fin., Inc.*, No. 22-cv-12536, 2023 U.S.Dist. LEXIS 227644, 2023 WL 8881154, at *22 (E.D. Mich., Dec. 21, 2023), *aff'd.*, No. 24-1023, 2025 U.S. App. LEXIS 16515, 2025 WL 1827747 (6th Cir. Jul. 2, 2025). This Court should make the same conclusion and dismiss Counts I and II of the Complaint.

### D. Count III Should Be Dismissed Because There is No Private Right of Action Under 64.1200(c)(2)

Under 47 C.F.R. § 64.1200(c)(2), "[n]o person or entity shall initiate any telephone solicitation to: … (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 U.S.C. § 227(c)(5) states that anyone "who has received more than one telephone call within any 12-month period by or on behalf of the same entity… may assert a private cause of action."

Dobronski relies on 47 C.F.R. §64.1200(c)(2) and §227(c)(5). Count III of Dobronski's Complaint fails on its face because the statutory provisions providing for a private cause of action for violation of the DNC regulations do not apply to text messages or cell phones. Section 227(c)(5) allows a private cause of action in favor of a person who has received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." "[R]egulations prescribed under this subsection" refers to various regulations intended to "protect residential telephone subscribers' privacy rights," 47 U.S.C. § 227(c)(1). Thus, a private cause of action under § 227(c) only exists in favor of "***residential*** telephone subscribers" who receive "more than one telephone *call*" in violation of the regulations.

Following guidance from the Federal Communications Commission, courts often ruled that a cellular telephone was presumed to be a residential phone number if registered on the DNC. *See, e.g., Dobronski v. CHW Group, Inc.*, No. 24-cv-11649, 2025 U.S. Dist. LEXIS 162742 (E.D. Mich. Aug. 21, 2025). However, in light of recent Supreme Court opinions abolishing *Chevron* deference and clarifying that final FCC orders are subject to post-enforcement judicial review in district courts notwithstanding the Hobbs Act, this Court "is not bound by the FCC's interpretation of the TCPA." *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 168, 145 S. Ct. 2006, 2022 (2025); *see also Loper Bright Enters. v.*

*Raimondo*, 603 U.S. 369, 144 S. Ct. 2244 (2024). Rather, district courts "should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin Chiropractic*, 606 U.S. at 168, 145 S. Ct., at 2022.

In exercising this newly granted power of independent judicial review, district courts have found that the term "residential telephone subscriber"—unburdened by any prior FCC interpretations to the contrary—does not encompass cellular phone subscribers. In enacting the TCPA, "it is clear that Congress knew how to differentiate between cellular and residential when it wished to," as demonstrated by Congress's use of "cellular" and "residential" as distinct terms throughout the TCPA. *Shelton v. Fast Advance Funding, LLC (*378 F. Supp. 3d 356 *(E.D. Pa. May 8, 2019. See also, Anthony v. Brian Marketing Group*, No. 24-80800, 2026 U.S. Dist. LEXIS 210179, at *22–23 (S.D. Fla. Sep. 11, 2026); *see also Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022) ("The TCPA clearly draws a distinction between cellular telephones and residential telephones.") (citing 47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(B), (b)(2)(H)). While Dobronski states in his complaint multiple times that the Florida area code numbers he answered while in Michigan are residential numbers, his own allegations belie this truth. First, in paragraph 19 of the Complaint, Dobronski alleges that both numbers on which he received calls are "assigned to service for which Plaintiff is

charged on a per-call and per-minute basis." Compl., ¶19. This clearly describes cellular phones or non-fixed (mobile) VOIP technology; not residential land lines. Dobronski also states that his "telephone service permits him to receive calls at his Michigan residence notwithstanding the Florida area code." Compl., ¶21. He cannot feasibly have received a call in Michigan made to a Florida area code without the use of cell phone technology. Based on his own allegations, Plaintiff has described receiving calls on a mobile line; which claim is not supported by 47 C.F.R. §64.1200(c) and 47 U.S.C. §227(c)(5). Thus, an allegation of a violation of the TCPA's telemarketing regulations based on solicitations to a cell phone fails to state a claim. *See, e.g., id.* at *30 (dismissing claim based on alleged violations of 47 C.F.R. § 64.1200(c) where solicitations were made to cellular device).

This interpretation is the most natural. The plain language of § 227(c) excludes calls to businesses from its scope, as that would render any distinction between "residential" and non-"residential" telephone subscribers non-existent. However, an interpretation that includes cell phones within the potential ambit of "residential" telephones leads to absurd results where the applicability of the statute depends not on the objective nature of the phone line—i.e., whether it is assigned to a residence—but on the particular subjective use of the phone—i.e., whether the cell phone is used primarily like a residential line or a commercial one. In other words, there is no way, before placing a call, for a telemarketer to know whether the

telemarketing regulations apply. Moreover, it raises difficult questions about calls to small business owners or others who use their cell phones for both personal and business use, adding further uncertainty for both plaintiffs and defendants. *Cf. Chennette v. Porch.Com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022) (pre-*McLaughlin* decision employing four-factor test in determining whether a "mixed-use" cell phone is "residential").

Despite this, until the Supreme Court's recent pronouncement, courts were forced to presume that cell phones were "residential" phones for purposes of § 227(c), because the FCC said as much in a 2003 order. *See, e.g.*, *Turizo*, 603 F. Supp. 3d at 1341 (holding that, under the Hobbs Act, "the Court lacks jurisdiction to review a final order of the FCC," including the 2003 FCC order creating presumption that cell phones registered to national DNC list were "residential subscribers"). Now, however, the FCC's word is neither binding nor entitled to deference. *McLaughlin Chiropractic*, 606 U.S. at 168. Rather, non-binding FCC decisions cannot change what the statute says. *See, e.g.*, *Anthony*, 2026 U.S. Dist. LEXIS 210179, at *30 (concluding that 2003 FCC order expanding scope of "residential telephone subscriber" to include cellular phones is contrary to text of TCPA).

### E. Mr. Dobronski's "Falsified Caller ID" Claim (Count V) is Insufficiently Pled.

Mr. Dobronski's fifth count alleges that the Calls violated 47 C.F.R. § 64.1601(e)(1) because "Defendants and/or Defendants' agents failed to provide

caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours." Compl., ¶ 105. Mr. Dobronski claims the "Defendants had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violations of the TCPA were willful and/or knowing." *Id.*, ¶ 106. As discussed above, neither JNZ nor O'Connor made any calls, and thus, neither could "take deliberate and overt action to manipulate the telephone network equipment…"

Moreover, as Mr. Dobronski knows, "[n]ot all sections of the TCPA expressly provide a private right of action to enforce violations of regulations promulgated under them." *Dobronski v. Total Ins. Brokers, LLC*, No. 21-10035, 2021 U.S. Dist. LEXIS 186528, at *5 (E.D. Mich. Sep. 29, 2021). Section 64.1601(e) does not convey a private right of action. *See Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020) (dismissing section 64.1601(e) claim brought by Plaintiff); *see also Dobronski*, 2021 U.S. Dist. LEXIS 186528, at *5 (E.D. Mich. Sep. 29, 2021) (same). This Court should follow the persuasive authority *from this District* that holds that there is no private right of action for violations of § 64.1601(e). Therefore, the claim fails.

### F. Mr. Dobronski's MHSSA Claim (Count VII) is Insufficiently Pled.

For his seventh claim, Mr. Dobronski claims the Calls violated M.C.L. § 445.111a(5) and/or M.C.L. § 445.111b, and M.C.L. §445.111c(1)(f)(g) and (3) as "Defendant or Defendant's agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list," and/or "the person making the telephone solicitation did not state his or her name and the full name of the organization or other person on whose behalf the call was initiated," and/or "the telephone solicitor intentionally blocked or otherwise interfered with the caller identification function." Compl., ¶¶124-127.

Mr. Dobronski's MHSSA claim is subject to dismissal as to Calls 3-6 for the reasons outlined above; namely that those calls were not telephone solicitations because Mr. Dobronski's provision of his contact information in order to trap the caller(s) and he created an established business relationship with the callers. See, infra, at 5-6). Moreover, Mr. Dobronski fails to allege actual loss and merely demands $250 per call. Compl., ¶127.

### G. Mr. Dobronski's Would Not Be Entitled to a Willful Finding.

Finally, Mr. Dobronski's requested damages are unsupported by law and should be stricken. Mr. Dobronski's entire case against JNZ and O'Connor is deficient; However, even if Mr. Dobronski could establish, among other things, that

JNZ or O'Connor is liable for one or more calls outlined in the Complaint, Mr. Dobronski's conclusion which he argues entitles him to treble damages due to "willful and/or knowing" violations are woefully insufficient.

The TCPA does permit this Court, "in its discretion, [to] increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3)(C). However, "this district has repeatedly interpreted similar language in the context of 47 U.S.C. § 227(b) as requiring knowledge or conduct beyond a mere violation of the TCPA." *Bristow v. Am. Nat'l Ins. Co.*, No. 2:20-cv-10752, 2021 U.S. Dist. LEXIS 102406, at *5-6 (E.D. Mich. June 1, 2021); *Duchene v. OnStar, LLC*, No. 15-13337, 2016 U.S. Dist. LEXIS 97129, 2016 WL 3997031, at *7 (E.D. Mich. July 26, 2016) ("[T]he Court holds that a willful or knowing violation of TCPA requires that Plaintiff has to plead that Defendant was made aware of/notified that Plaintiff did not consent to calls from Defendant.")

More than "a mere violation is required in order to elevate it to a willful or knowing one, lest every violation be subject to the treble damage provision of the Act." *Bristow*, 2021 U.S. Dist. LEXIS 102406, at *7. Mr. Dobronski has provided insufficient allegations to support a willful finding against either JNZ or O'Connor. Instead, Mr. Dobronski has merely concluded that all violations were "willful and/or

knowing," which is unequivocally insufficient, especially in light of his "canary trap" tactics.

## V. CONCLUSION

For the reasons detailed above, Mr. Dobronski's claims against JNZ and O'Connor fail, and accordingly, the Complaint should be dismissed *with prejudice.*

Date: October 20, 2026

Respectfully submitted,

*/s/ Karen S. Hockstad*
Joseph N. Tucker (P81807)
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Phone: (502) 540-2360
Joseph.tucker@dinsmore.com

And

Karen S. Hockstad (P47409)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd, Suite 200
Columbus, OH 43215
Karen.hockstad@dinsmore.com
*Attorneys for Defendants JNZ Insurance Services, Inc. and Nicholas O'Connor*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MARK W. DOBRONSKI,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br>JNZ INSURANCE SERVICES, INC.,<br>NICHOLAS O'CONNOR,<br>GAMBALE INSURANCE GROUP, INC.,<br>MISAEL MATOS,<br>NATALIE DELLA AGENCY LLC,<br>ANA MERCEDES SANTOS,<br>PREMIER MARKETING,<br>SERVICES OF FLORIDA LLC,<br>and JOHN DOE I-X,<br><br>Defendants. | Case No. 2:26-cv-13879<br>District Judge Matthew F. Leitman<br>Magistrate Judge Curtis Ivy, Jr. |
| Mark W. Dobronski<br>P.O. Box 99<br>Dexter, MI 48130<br><br>*Plaintiff* | Joseph N. Tucker (P81807)<br>Dinsmore & Shohl LLP<br>101 South Fifth Street, Suite 2500<br>Louisville, KY 40202<br>Phone: (502) 540-2360<br>Joseph.tucker@dinsmore.com<br><br>And<br><br>Karen S. Hockstad (P47409)<br>Dinsmore & Shohl LLP<br>191 W. Nationwide Blvd, Suite 200<br>Columbus, OH 43215<br>Karen.hockstad@dinsmore.com |

*Attorneys for Defendant*
*Nicholas O'Connor*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, and served the same to the following by U.S. Mail on:

Mark W. Dobronski
P.O. Box 99
Dexter, MI 48130
*Pro Se Plaintiff*

I declare the foregoing is true to the best of my information, knowledge, and belief.

Date: October 20, 2026

Respectfully submitted,

*/s/ Karen S. Hockstad*
Joseph N. Tucker (P81807)
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Phone: (502) 540-2360
Joseph.tucker@dinsmore.com

And

Karen S. Hockstad (P47409)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd, Suite 200
Columbus, OH 43215
Karen.hockstad@dinsmore.com
*Attorneys for Defendant*
*Nicholas O'Connor*

# INDEX OF EXHIBITS

**Exhibit 1** *Dobronski v. State of Arizona*, No. 03-273 (D. Ariz. Feb. 27, 2004), Dkt. 34; 2:6 ....................5

**Exhibit 2** *Dobronski v. Alarm Mgmt. II, L.L.C.*, No. 18-11055, 2020 U.S. Dist. LEXIS 215666, at *11 (E.D. Mich. Nov. 18, 2020)....................5

**Exhibit 3** *Dobronski v. Family First Life, LLC,* No. 2:22-cv-12039, 2024 U.S. Dist. LEXIS 27096, 2024 WL 575858 (E.D. Mich. Jan. 19, 2024) ....................5

**Exhibit 4** *Charvat v. Southard Corp.*, No. 2:18-cv-190, 2019 U.S. Dist. LEXIS 241404, 2019 WL 13128407 (S.D. Ohio Sept. 30, 2019) ....................6

**Exhibit 5** *Dobronski v. Rocket Mortgage, LLC*, 2026 U.S. Dis. LEXIS 180350 (Jul. 15, 2026 E.D. Mich.) ....................9, 10

**Exhibit 6** *Katz v. CrossCountry Mortg., LLC*, o. 1:22-CV-00925, 2022 U.S. Dist. LEXIS 207417, 2022 WL 16950481 (N.D. Ohio Nov. 15, 2022)....................9

**Exhibit 7** *Fluker v. Ally Fin., Inc.*, No. 22-cv-12536, 2023 U.S.Dist. LEXIS 227644, 2023 WL 8881154, at *22 (E.D. Mich., Dec. 21, 2023), *aff'd.*, No. 24-1023, 2025 U.S. App. LEXIS 16515, 2025 WL 1827747 (6th Cir. Jul. 2, 2025) ....10

**Exhibit 8** *Dobronski v. CHW Group, Inc.*, No. 24-cv-11649, 2025 U.S. Dist. LEXIS 162742 (E.D. Mich. Aug. 21, 2025)....................11

**Exhibit 9** *Anthony v. Brian Marketing Group*, No. 24-80800, 2026 U.S. Dist. LEXIS 210179 (S.D. Fla. Sep. 11, 2026) ....................12, 14

**Exhibit 10** *Dobronski v. Total Ins. Brokers LLC*, No. 21-10035, 2021 U.S. Dist. LEXIS 186528, at *5 (E.D. Mich. Sep. 29, 2021)....................15

**Exhibit 11** *Bristow v. Am Nat'l Ins. Co.*, No. 2:20-cv-10752, 2021 U.S. Dist. LEXIS 102406 (E.D. Mich. June 1, 2021) ....................17

**Exhibit 12** *Duchene v. OnStar, LLC*, U.S. Dist. LEXIS 97129, 2016 WL 3997031, at *7 (E.D. Mich. July 26, 2016....................17