# EXHIBIT
# 3

EXHIBIT
3

# Dobronski v. Fam. First Life, LLC

United States District Court for the Eastern District of Michigan, Southern Division

January 19, 2024, Filed

Case No. 2:22-cv-12039

**Reporter**
2024 U.S. Dist. LEXIS 27096 *; 2024 WL 575858

MARK W. DOBRONSKI, Plaintiff, v. FAMILY FIRST LIFE, LLC; UNITED OF OMAHA LIFE INSURANCE COMPANY; AMERICO FINANCIAL LIFE AND ANNUITY INSURANCE COMPANY; GREAT WESTERN INSURANCE COMPANY; YOUR SENIOR CARE INC.; KHONSAVAN VONGDARA; LEWIS JAN FRIEDMAN a/k/a LUKE FRIEDMAN; SHANNON ADAMS a/k/a CLAUDIA SHANNON ADAMS; DONTE C. GRANT; OLIVIA PEREZ; VANINA E. BONANNO; VANESSA ISABEL POWELL; EMMANUEL CHIBUZOR IGWEH; DARIO JOSEPH WICKHAM; BLAKE HUNTER SCHEIFELE; PAUL RYAN CHRISTLE; and GRETCHEN LOUISE DROUHARD, Defendants.

**Subsequent History:** Adopted by, in part *Dobronski v. Fam. First Life, LLC, 2024 U.S. Dist. LEXIS 58517 ( E.D. Mich., Mar. 29, 2024)*

**Prior History:** *Dobronski v. Fam. First Life, LLC, 2023 U.S. Dist. LEXIS 21324, 2023 WL 1819150 ( E.D. Mich., Feb. 8, 2023)*

**Counsel:** **[*1]** For Blake Hunter Scheifele, Defendant: Virginia Bell Flynn, Troutman Pepper Hamilton Sanders LLP, Charlotte, NC; Kelly Elizabeth Kane, Matthew J. Lund, Troutman Pepper Hamilton Sanders LLP, Southfield, MI; Chad R Fuller, Troutman Pepper Hamilton Sanders LLP, San Diego, CA; Rachelle Pointdujour, Troutman Pepper, New York, NY.

For Americo Financial Life and Annuity Insurance Company, Defendant: John T. Mihelick, Dinsmore & Shohl, Troy, MI; Karen Hockstad, Dinsmore & Shohl LLP, Columbus, OH.

For Dario Joseph Wickham, Defendant: Matthew J. Lund, Kelly Elizabeth Kane, Troutman Pepper Hamilton Sanders LLP, Southfield, MI; Rachelle Pointdujour, Troutman Pepper, New York, NY; Chad R Fuller, Troutman Pepper Hamilton Sanders LLP, San Diego, CA; Virginia Bell Flynn, Troutman Pepper Hamilton Sanders LLP, Charlotte, NC.

For FAMILY FIRST LIFE LLC, Defendant: Alvin Lee, KING & SPALDING, New York, NY; Livia Kiser, King & Spalding, Chicago, IL; Michael D. Weaver, Plunkett & Cooney (Bloomfield Hills), Bloomfield Hills, MI; MARISA MALECK, KING & SPALDING, Washington, DC.

For Emmanuel Chibuzor Igweh, Defendant: Rachelle Pointdujour, Troutman Pepper, New York, NY; Chad R Fuller, Troutman Pepper Hamilton Sanders **[*2]** LLP, San Diego, CA; Matthew J. Lund, Kelly Elizabeth Kane, Troutman Pepper Hamilton Sanders LLP, Southfield, MI; Virginia Bell Flynn, Troutman Pepper Hamilton Sanders LLP, Charlotte, NC.

For Khonsavan Vongdara, Defendant: Rachelle Pointdujour, Troutman Pepper, New York, NY; Kelly Elizabeth Kane, Matthew J. Lund, Troutman Pepper Hamilton Sanders LLP, Southfield, MI; Chad R Fuller, Troutman Pepper Hamilton Sanders LLP, San Diego, CA; Virginia Bell Flynn, Troutman Pepper Hamilton Sanders LLP, Charlotte, NC.

For Shannon Adams, also known as, Defendant: Chad R Fuller, Troutman Pepper Hamilton Sanders LLP, San Diego, CA; Rachelle Pointdujour, Troutman Pepper, New York, NY; Virginia Bell Flynn, Troutman Pepper Hamilton Sanders LLP, Charlotte, NC; Kelly Elizabeth Kane, Matthew J. Lund, Troutman Pepper Hamilton Sanders LLP, Southfield, MI.

For Great Western Insurance Company, Defendant: David M. Schultz, Jennifer W. Weller, Hinshaw & Culbertson LLP, Chicago, IL; Nancy K. Chinonis, Cline Cline & Griffin P.C., Flint, MI.

For Donte C. Grant, Defendant: Chad R Fuller, Troutman Pepper Hamilton Sanders LLP, San Diego, CA; Rachelle Pointdujour, Troutman Pepper, New York, NY; Kelly Elizabeth Kane, Matthew **[*3]** J. Lund, Troutman Pepper Hamilton Sanders LLP, Southfield, MI; Virginia Bell Flynn, Troutman Pepper Hamilton Sanders LLP, Charlotte, NC.

For Shannon Adams, Claudia Shannon Adams, Defendant: Kelly Elizabeth Kane, Matthew J. Lund, Troutman Pepper Hamilton Sanders LLP, Southfield, MI; Rachelle Pointdujour, Troutman Pepper, New York, NY; Chad R Fuller, Troutman Pepper Hamilton Sanders LLP, San Diego, CA; Virginia Bell Flynn, Troutman

Pepper Hamilton Sanders LLP, Charlotte, NC.

For United Omaha Life Insurance Company, Defendant: D. Peter Valiotis, Clark Hill, Detroit, MI.

For Vanessa Isabel Powell, Defendant: Virginia Bell Flynn, Troutman Pepper Hamilton Sanders LLP, Charlotte, NC; Chad R Fuller, Troutman Pepper Hamilton Sanders LLP, San Diego, CA; Rachelle Pointdujour, Troutman Pepper, New York, NY; Kelly Elizabeth Kane, Matthew J. Lund, Troutman Pepper Hamilton Sanders LLP, Southfield, MI.

Mark W. Dobronski, Plaintiff, Pro se, Dexter, MI.

For Paul Ryan Christle, Defendant: Chad R Fuller, Troutman Pepper Hamilton Sanders LLP, San Diego, CA; Matthew J. Lund, Kelly Elizabeth Kane, Troutman Pepper Hamilton Sanders LLP, Southfield, MI; Virginia Bell Flynn, Troutman Pepper Hamilton Sanders LLP, **[*4]** Charlotte, NC; Rachelle Pointdujour, Troutman Pepper, New York, NY.

Lewis Jan Friedman, Luke Friedman, Defendant, Pro se, Vista, CA.

Lewis Jan Friedman, also known as, Defendant, Pro se, Vista, CA.

For Vanina E. Bonanno, Defendant: Chad R Fuller, Troutman Pepper Hamilton Sanders LLP, San Diego, CA; Kelly Elizabeth Kane, Matthew J. Lund, Troutman Pepper Hamilton Sanders LLP, Southfield, MI; Rachelle Pointdujour, Troutman Pepper, New York, NY; Virginia Bell Flynn, Troutman Pepper Hamilton Sanders LLP, Charlotte, NC.

**Judges:** District Judge Mark A. Goldsmith. Magistrate Judge Kimberly G. Altman.

# Opinion

**REPORT AND RECOMMENDATION TO GRANT AMERICO, OMAHA, AND GREAT WESTERN'S MOTIONS TO DISMISS (ECF Nos. 103, 105, 113) AND TO GRANT IN PART AND DENY IN PART OTHER DEFENDANTS' MOTIONS (ECF Nos. 106, 107, 143)**[1]

[1] Upon review of the parties' motions, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2). Additionally, the undersigned informed the parties that the motions would be determined without oral argument. (ECF No. 176).

Table of Contents

Go to table1

I. Introduction

This is a consumer rights case under the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227 et seq.; the Michigan Telephone Companies as Common Carriers Act (MTCCCA), M.C.L. § 484.101 *et seq.*; the Michigan Home Solicitation Sales Act (MHSSA), M.C.L. § 445.101 *et seq.*; and the Michigan Consumer Protection Act (MCPA), M.C.L. § 445.901 *et seq.* On November 20, 2023, all pretrial matters were referred to the undersigned. (ECF No. 172).

Plaintiff Mark Dobronski (Dobronski),[2] proceeding *pro se*, alleges that unsolicited telephone calls utilizing an automatic telephone dialing system violated the TCPA, MTCCCA, MHSSA, and MCPA. (ECF No. 99, First Amended Complaint). The First Amended Complaint asserts thirteen claims against defendants, which will be set forth below. Defendants are as follows: Family First Life, LLC (Family First), United of Omaha Life Insurance Company (United), Americo Financial Life And Annuity Insurance Company (Americo), Great Western Insurance Company (Great Western), Your Senior **[*6]** Care Inc. (YSC), Khonsavan Vongdara (Vongdara), Lewis Jan Friedman a/k/a Luke Friedman (Friedman), Shannon Adams a/k/a Claudia Shannon Adams (Adams), Donte C. Grant (Grant), Olivia Perez (Perez), Vanina E. Bonanno (Bonanno), Vanessa Isabel Powell (Powell), Emmanuel Chibuzor Igweh (Igweh), Dario Joseph Wickham (Wickham), Blake Hunter Scheifele (Scheifele), Paul Ryan Christle (Christle), and Gretchen Louise Drouhard (Drouhard).

Before the Court are six motions to dismiss.[3] (ECF Nos. 103, 105, 106, 107, 113, 143). All are fully briefed and ready for consideration. (ECF Nos. 116, 118, 120, 124, 128, 129, 130, 131, 136, 148, 152, 153, 170, 171). For the reasons that follow, the undersigned RECOMMENDS the following:

- Americo's motion to dismiss, (ECF No. 103), be GRANTED;

2 Dobronski is "a litigant who frequently files similar lawsuits in this District" alleging violations of the TCPA. Dobronski v. Total Ins. Brokers, LLC, No. 21-10035, 2021 U.S. Dist. LEXIS 186528, 2021 WL 4452218, at *1 (E.D. Mich. Sept. 29, 2021). As one defendant notes, "[i]n the past five years, [Dobronski] has filed at least thirty-five complaints in the Eastern District of Michigan." (ECF No. 107, PageID.1180 (emphasis in original)).

3 YSC, Perez, and Drouhard have not appeared in the matter or filed any motions, while Friedman has appeared [*7] pro se and has filed an answer to the complaint, (ECF No. 19).

- Great Western's motion to dismiss, (ECF No. 105), be GRANTED;
- United's motion to dismiss, (ECF No. 113), be GRANTED;
- Family First's motion, (ECF No. 107), be GRANTED IN PART and DENIED IN PART;
- Vongdara, Adams, Grant, Powell, Wickham, Igweh, and Bonanno's motion, (ECF No. 106), be GRANTED IN PART and DENIED IN PART; and
- Scheifele and Christle's motion, (ECF No. 143), be GRANTED IN PART and DENIED IN PART.

If these recommendations are adopted, the following claims would survive dismissal: Count I as to Family First and the individual defendants; Count II as to Perez, Grant, and Family First; Count V as to Family First; Counts VI through X as to Vongdara; Count XII as to Perez, Grant, and Family First; and Count XIII as to Family First and the individual defendants.

II. Factual Allegations

The following facts are gleaned from the First Amended Complaint.

A. The Scheme Generally

1. Family First's Role

Dobronski alleges that Family First is a life insurance distributor that acts as an Insurance Marketing Organization (IMO), facilitating a multi-level marketing scheme that is well-established in the life insurance industry. (ECF No. 99, PageID.1016). He says that IMOs like Family First contract with insurance carriers who provide life insurance products that the IMO sells to consumers. (*Id.*). The IMOs employ independent contractors, which Dobronski calls "agents," to market and distribute the insurance carrier's products to consumers. (*Id.*). The IMO's role is to facilitate a contract between the insurance carrier(s) and the agents so that an agent can market the carrier's insurance product. **[*8]** (*Id.*). The IMO collects a commission off of any product sold, and then pays a smaller commission to the agent who sold the product. (*Id.*). Agents can also recruit other agents to work beneath them, earning commissions on the "downline" agents' sales. (*Id.*).

As an IMO, Family First sells telemarketing "leads" to its agents. (*Id.*, PageID.1017). Family First markets its leads as potential clients who are seeking insurance products and sells them at a premium, saying that they are exclusive and newly-generated. (*Id.*). Family First also provides agents with access to automated telephone dialing systems (ATDS) and services that help agents reach their leads *en masse*. (*Id.*). The ATDS use a random number or sequential number generator and have the capacity to call persons at random with no human involvement. (*Id.*).

Dobronski says that Family First's utilization of ATDS is illegal under the statutes cited above, Family First knows it is illegal, and Family First has been the subject of numerous complaints to the Better Business Bureau regarding this illegal sales tactic. (*Id.*, PageID.1018). He also says that Family First has been issued a cease and desist letter from the Federal Trade Commission **[*9]** due to misrepresenting its business opportunity to prospective agents. (*Id.*, PageID.1019).

2. Insurance Companies' and Agents' Role

United, Americo, and Great Western are insurance companies engaged in providing insurance products to consumers across the United States, including in Michigan. (*Id.*). These companies carry insurance products and contract with Family First to market their products. (*Id.*).

Dobronski says that the insurance companies are aware of Family First's illegal telemarketing and yet use it anyway because it results in a substantial return for their products. (*Id.*, PageID.1020). The insurance companies give Family First's agents access to their computer systems and authority to use their trademarks and service markets, thereby ratifying the illegal telemarketing by accepting the resulting insurance product requests from customers. (*Id.*).

Dobronski alleges that the individually named defendants (Vongdara, Adams, Grant, Perez, Bonanno, Powell, Igweh, and Wickham) are either employees or authorized agents of Family First, and also that they are authorized agents of one or more of the insurance companies. He says that defendants YSC, and Friedman are authorized agents of **[*10]** one or more of the insurance companies. (*Id.*).

According to Dobronski, Family First and its agents outsource their calls to ATDS. (*Id.*, PageID.1021). The use of ATDS is indicated when the person receiving a call experiences a delay, followed by a clicking or "boink" noise, and is then greeted by a live telemarketer. (*Id.*). It can also be indicated by a call recipient's caller ID saying the number is "spoofed" or manipulated to

display a false number. (*Id.*). Dobronski says that when someone answers one of these calls, he or she is first greeted by a "lead generator," who may give a false business name, refuse to provide identifying information, and become hostile if a potential customer is uninterested in the product. (*Id.*). He says that calls are deliberately made to telephone numbers that, like his, appear on the National Do Not Call Registry. (*Id.*).

Once a consumer is determined to be qualified by the lead generator, he or she is transferred to an agent, who will attempt to close the sale. (*Id.*, PageID.1022). The agents are said to be aware of the call center tactics but maintain deliberate indifference to the specifics so they can represent that they are unaware of any illegal telemarketing **[*11]** conduct. (*Id.*). During this part of the call, a consumer might be able to ascertain identifying information as to the agent and/or the source of the call. (*Id.*).

Dobronski alleges that in the twelve months prior to the complaint, he has received "well over 500" calls of this nature but was unable to obtain the true identity of the seller of the product. (*Id.*). In order to find out who is calling him, Dobronski sometimes provides false but unique identifying information to the caller. Then, if a later call ever references that earlier information, Dobronski is able to use information from that call to identify the source of the former illegal ATDS call. (*Id.*, PageID.1023). He terms this technique a "canary trap." (*Id.*).

B. Specific Phone Calls

Dobronski describes in detail thirty-four phone calls he received from one or more defendants that allegedly violate Michigan and federal law. The calls occurred between July 2021 and February 2023.

Dobronski traced the first two ATDS calls he received to Bonanno. The first call was made on July 30, 2021, by ATDS, which Dobronski could tell because of the four to five second delay after he answered before being connected to a live telemarketer. ( ***[*12]*** *Id.*, PageID.1023). That telemarketer already knew Dobronski's name and collected additional information from him before transferring him to a second telemarketer, neither of whom are named in the complaint. (*Id.*, PageID.1023-1024). The second telemarketer attempted to sell Dobronski a life insurance policy issued by United. (*Id.*, PageID.1024). He collected additional information from Dobronski before transferring the call to Bonanno, who identified herself as "Vanina Martin" with United. (*Id.*). Dobronski provided her with an email address at her request. (*Id.*). After the call, Dobronski attempted to call the number back that had called him, but it was disconnected. (*Id.*). Later that evening, Dobronski received an email from Bonanno that included a pre-filled application for life insurance with United. (*Id.*, PageID.1025).

Four days later, on August 3, 2021, Dobronski received a follow-up call that also had a four to five second delay after he picked up. (*Id.*). The caller identified Dobronski by his real name again, and would not identify the company he was calling on behalf of. (*Id.*). He referred to the life insurance policy Dobronski had previously purchased, then transferred the call **[*13]** to "Vanina," presumably Bonanno. (*Id.*). Bonanno went over Dobronski's life insurance policy with him, and then Dobronski confronted Bonanno about the source of the calls. (*Id.*, PageID.1026). Bonanno indicated that a call center was used to call and screen individuals before forwarding the calls to her. (*Id.*).

Dobronski received another ATDS call on April 11, 2022, similar to the first call described above. (*Id.*, PageID.1027). This time, Dobronski gave the caller a fake name. (*Id.*). After providing some information to the caller, Dobronski was transferred to a "licensed agent" who gave the name Anna Siago (Siago).[4] (*Id.*). Siago said she was an agent with United and asked Dobronski for an email address, then provided him with a life insurance policy quote. (*Id.*). He provided an email address, and later that day was sent an insurance application for the fake name he provided. (*Id.*, PageID.1028). The application included a certification by Vongdara that the terms of the application had been read and explained to Dobronski's alias. (*Id.*).

Subsequent similar phone calls are described in the complaint, implicating Perez, Powell, Scheifele, Grant, Adams, Wickham, Christle, Drouhard, Family First, **[*14]** Americo, Great Western, and United. (*Id.*, PageID.1028-1058). Each of the individual defendants are agents who represented one or more of the insurance companies or Family First, and commonalities include life insurance applications with an agent or Vongdara's name on them, and on each occasion, Dobronski called the number back and the line was either disconnected or belonged to someone other than a life insurance agent. (*Id.*).

Dobronski then lists twenty-two additional calls he

---

4 Dobronski does not believe Anna Siago is her real name and indicated that he will amend the complaint to add her as a defendant should he later identify her.

received from March to August 2022, from which he did not obtain identifying information. (*Id.*, PageID.1058-1059). He goes on to describe how, on occasion, he has made "confrontation calls" to different agents he was able to reach. One such call occurred on August 15, 2022, when Dobronski called Vongdara to confront him about the unsolicited calls Dobronski had been receiving from his agents. (*Id.*, PageID.1060). Vongdara confirmed to Dobronski that some of the agents Dobronski had spoken to (none named as defendants) were his employees. (*Id.*). Dobronski informed Vongdara that he did not want to receive any more telemarketing calls and asked Vongdara for a copy of his written do not call policy. (*Id.*). Vongdara **[*15]** stated that he did not have such a policy. (*Id.*).

That same day, Dobronski spoke with Adams and informed her that he was receiving repetitive calls, to which she responded that she would tell the call center to remove his numbers from further contact. (*Id.*, PageID.1061). The next day, Dobronski received a call from Igweh, who told Dobronski that Adams worked for him and that he told their call center to stop calling Dobronski. (*Id.*).

The complaint concludes with Dobronski saying that over the past twelve months, he has received over 400 calls to his residential and cell phones wherein the calling party used a fake or spoofed number, the caller identified themselves as being with some benefit-providing entity, and they attempted to pre-qualify Dobronski for "final expense" or life insurance. (*Id.*, PageID.1062).

III. Claims

Dobronski asserts the following claims against defendants:

Count I — TCPA: Autodialer calls (*47 U.S.C. § 227(b)(1)(A)(iii)* and *47 C.F.R. § 64.1200(a)(1)(iii)*)

Count II — TCPA: Recorded message calls (*47 U.S.C. § 227(b)(1)(B)* and *47 C.F.R. § 64.1200(a)(3)*)

Count III — TCPA: Premature hang up (*47 C.F.R. § 64.1200(a)(6)*)

Count IV — TCPA: Abandoned call (*47 C.F.R. § 64.1200(a)(7)*)

Count V — TCPA: Do not call (*47 C.F.R. § 64.1200(c)(2)*)

Count VI — TCPA: No written do not call policy (*47 C.F.R. § 64.1200(d)(1)*)

Count VII — TCPA: Failure to train (*47 C.F.R. § 64.1200(d)(2)*)

Count VIII — TCPA: Failure to record **[*16]** do not call request (*47 C.F.R. § 64.1200(d)(3)*)

Count IX — TCPA: Failure to identify (*47 C.F.R. § 64.1200(d)(4)*)

Count X — No do not call list (*47 C.F.R. § 64.1200(d)(6)*)

Count XI — TCPA: Falsified caller ID (*47 C.F.R. § 64.1601(e)(1)*)

Count XII — MTCCCA: Unauthorized calls (*M.C.L. § 484.125(2)(a)*)

Count XIII — MHSSA: Do not call list and no caller identification (*M.C.L. § 445.111a(5)* and *M.C.L. § 445.111b(1)*)

IV. Pending Motions The pending motions are as follows:

• Family First's motion to dismiss under *Rules 12(b)(1)*, *12(b)(6)*, and 8(a)(2), or in the alternative, for a more definite statement under *Rule 12(e)*, (ECF No. 107);

• Americo's motion to dismiss under *Rule 12(b)(6)*, (ECF No. 103);

• Great Western's motion to dismiss under *Rule 12(b)(6)*, (ECF No. 105);

• United's motion to dismiss under *Rules 12(b)(1)*, *12(b)(6)*, and 8(a)(2), or in the alternative, for a more definite statement under *Rule 12(e)*, (ECF No. 113);

• Vongdara, Adams, Grant, Powell, Wickham, Igweh, and Bonanno's motion to dismiss under *Rule 12(b)(6)*, (ECF No. 106); and

• Scheifele and Christle's motion to dismiss under *Rule 12(b)(6)*, (ECF No. 143).

V. Legal Standards

A. *Fed. R. Civ. P. 12(b)(1)*

"A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Fishon v. Mars Petcare US, Inc., 501 F. Supp. 555, 562 (M.D. Tenn. 2020). "Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." Cartwright v. Garner, 751 F.3d. 752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) **[*17]** or the factual existence of subject matter jurisdiction (factual attack)." *Id.* A facial 12(b)(1) attack, like the one here, "questions merely the sufficiency of the pleading," and requires the Court to "take[] the allegations in the complaint as true." Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)).

B. Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." Keys v. Humana, Inc., 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted); *see also* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." **[*18]** 16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B., 727 F.3d 502, 503 (6th Cir. 2013).

VI. Analysis

A. Seeking Concurrence

Before addressing the merits, the undersigned will address Dobronski's assertion that some of the defendants failed to properly seek concurrence as required under Eastern District of Michigan Local Rule 7.1(a). He argues that their motions should be stricken or denied on this basis.

There is some authority supporting the argument that motions made without certifying that concurrence has been sought *must* be denied. *See* United States v. Ramesh, No. 02-80756, 2009 U.S. Dist. LEXIS 24520, 2009 WL 817549, at *6 (E.D. Mich. Mar. 26, 2009) ("Seeking concurrence from the opponent is a mandatory directive of the Local Rules of this District. Inasmuch as [the defendant] has failed to comply with this Local Rule prior to filing this motion, the Court must deny the relief that he seeks to obtain."). The Local Rules are called rules," not "suggestions" or "guidelines[.]" Bryce v. Comm'r of Soc. Sec., No. 12-14618, 2013 U.S. Dist. LEXIS 194615, 2013 WL 12123666, at *1 (E.D. Mich. Oct. 8, 2013).

However, " 'district courts in this jurisdiction have routinely waived these requirements when it is obvious that the opposing party would not have concurred in the requested relief.' " Plastic Omnium Auto Inergy Indus. SA de CV v. MCC Dev., Inc., No. 21-CV-11141, 2022 U.S. Dist. LEXIS 53823, 2022 WL 883024, at *3 (E.D. Mich. Mar. 24, 2022) (quoting In re Kulek, No. 18-11509, 2019 U.S. Dist. LEXIS 5388, 2019 WL 168540, at *4 (E.D. Mich. Jan. 11, 2019)). It has also been recognized that Local Rule 7.1(a) was " 'designed to streamline litigation, reduce unnecessary costs, and narrow issues.' " Summer v. Detroit Pub. Sch. Cmty. Dist., No. 21-12936, 2023 U.S. Dist. LEXIS 217141, 2023 WL 8455031, at *2 (E.D. Mich. Dec. 6, 2023) (quoting All About Chores LLC v. Lyon, No. 18-CV-12000, 2019 U.S. Dist. LEXIS 105823, 2019 WL 2590750, at *1 (E.D. Mich. June 25, 2019)). Denying motions will not serve these interests where "[the p]laintiff has not argued [he] would have given the requested **[*19]** concurrence or has been prejudiced by [the d]efendants' failure to follow the rule in any way. *Id.* (citing Jarvis v. Cooper, No. 12-CV-11804, 2013 U.S. Dist. LEXIS 44717, 2013 WL 1289272, at *9 (E.D. Mich. Mar. 28, 2013)); Tuttle v. Land, No. 10-11221, 2010 U.S. Dist. LEXIS 52057, 2010 WL 2232210, at *4 (E.D. Mich. May 27, 2010)). As explained in Summer, "[t]he court seeks, to the furthest extent possible, to decide [d]efendants' motions on the merits, rather than denying them based on a technicality." Therefore, the undersigned does not recommend that any motions be struck or denied based on a violation of Local Rule 7.1(a).

B. Standing

1. General

Article III standing arises from the U.S. Constitution's "case or controversy" requirement. Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). To establish standing, a plaintiff must establish (1) actual or imminent injury in fact that is concrete and particularized; (2) a causal connection that establishes the plaintiff's injury is fairly traceable to the defendant's alleged conduct; and (3) that a favorable decision by the court is likely to redress the plaintiff's injury. Dep't of Educ. v. Brown, 600 U.S. 551, 561, 143 S. Ct. 2343, 216 L. Ed. 2d 1116 (2023) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). The plaintiff must " 'demonstrate standing separately for each form of relief sought" and "for each claim he seeks to press.' " DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006) (quoting Friends of Earth, Inc. v. Laidlaw Env't. Servs., Inc., 528 U.S. 167, 185, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). "Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, Inc. v. Robins, 578 U.S. 330, 341, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), *as revised* May 24, 2016.

2. Discussion

Family First, United, Americo, and the individual defendants argue that Dobronski did not suffer **[*20]** an actual injury from any of the calls alleged in the complaint. They say that the calls were a *de minimis* interference in his daily life, and that his willingness to engage in conversation during the calls, provide fake information to the callers, and give consent for subsequent calls renders him without standing. Dobronski admits that he is a seasoned plaintiff with sophisticated telephone answering and recording equipment. Despite this, he says that he has properly pled that the calls interrupt his daily life, that his phone numbers are listed on the National Do Not Call Registry because he does not wish to receive such calls, and that seasoned plaintiffs have just as much standing as those who are less prepared to receive such calls and trace them to their likely sources. He likens his equipment to having a security system at one's home. He asserts that a homeowner does not invite burglars by having such a system, as the system is intended to prevent burglary and assist in catching the perpetrators.

As the Supreme Court recently explained in TransUnion LLC v. Ramirez, 594 U.S. 413, 426 (2021), "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently **[*21]** decide whether a plaintiff has suffered a concrete harm under Article III[.]"

Defendants cite three cases outside of the Sixth Circuit in support of their contention that Dobronski is not within the "zone of interest" of the TCPA and/or has not suffered a concrete harm. All three are distinguishable.

In Leyse v. Bank of Am., Nat'l Ass'n, No. CV117128SDWSCM, 2020 U.S. Dist. LEXIS 44234, 2020 WL 1227410, at *4 (D.N.J. Mar. 13, 2020), *aff'd*, 856 F. App'x 408 (3d Cir. 2021), the district court found that a TCPA plaintiff did not assert that he suffered "nuisance, annoyance, inconvenience, wasted time, invasion of privacy, or any other such injury" and in fact "welcomed such calls in his role as a paid investigator aiding his counsel in the preparation of TCPA lawsuits." Thus, the district court held that the plaintiff did not have standing to sue the defendant for placing such calls. *Id.* Defendants argue that the same is true of Dobronski here.

Other courts, however, have found *Leyse* distinguishable and unpersuasive where plaintiffs have alleged injury due to the violating phone calls, *see* Laccinole v. U.S. Veterans Assistance Found., Inc., No. CV 21-160 WES, 2021 U.S. Dist. LEXIS 141581, 2021 WL 3213005, at *1 (D.R.I. July 29, 2021) (citing Gibbs v. SolarCity Corp., 239 F. Supp. 3d 391, 395-96 (D. Mass. 2017); Ready v. Synchrony Bank, No. 2:17-CV-00434-JDL, 2018 U.S. Dist. LEXIS 59069, 2018 WL 1701355, at *4 (D. Me. Apr. 6, 2018)), or where the plaintiff alleges that they were not compensated for his time on such calls as a paid investigator, *see Hirsch v. USHealth Advisors, LLC, 337 F.R.D. 118, 126-27 (N.D. Tex. 2020)* ("[H]ere, Hirsch was not compensated for his time on the calls, never called Defendants or their Agents back, and asked to be placed on both **[*22]** the [National Do Not Call] and [Internal Do Not Call] lists. And even if Hirsch may justifiably be called a 'professional TCPA plaintiff,' this designation does not strip away his Article III standing." (quoting *Cunningham v. Rapid Resp. Monitoring Servs., Inc., 251 F. Supp. 3d 1187, 1194-96 (M.D. Tenn. 2017)*)).

Defendants also cite Stoops v. Wells Fargo Bank, N.A., 197 F. Supp. 3d 782, 799 (W.D. Pa. 2016), where the plaintiff, who owned over thirty-five cell phones for the purpose of receiving unsolicited calls and pursuing TCPA claims as a business, was found to lack standing. The court reasoned that "[b]ecause [the p]laintiff has admitted that her only purpose in purchasing her cell phones and minutes is to receive more calls, thus

enabling her to file TCPA lawsuits, she has not suffered an economic injury." *Id. at 802* (citing *Leyse v. Bank of Am. Nat. Ass'n, 804 F.3d 316, 323 (3d Cir. 2015)*).

Again, contrary to *Stoops*, other courts have found that similar facts do not defeat a plaintiff's standing. *See, e.g., Fitzhenry v. ADT Corp., No. 14-80180, 2014 U.S. Dist. LEXIS 166243, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014)* (where the plaintiff pursued TCPA claims to bring in more income and had several different home phone numbers to receive a higher volume of telemarketing calls); *Jawk Enters. v. Greenlight Energy, Inc., No. 19-CV-4212-ARR-SJB, 2019 U.S. Dist. LEXIS 197070, 2019 WL 5881752, at *2 (E.D.N.Y. Nov. 5, 2019)* (where the plaintiff had filed multiple TCPA lawsuits, had a profit motive in doing so, and was a "professional" litigant).

Notably, at least one district court in this Circuit, *Cunningham, supra*, has strongly disagreed with the notion that a sophisticated plaintiff, motivated **[*23]** by statutory compensation, would lack standing for those reasons. As the district court explained:

> Nothing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no "amateurs only" rule. *See Murray v. GMAC Mortg. Corp., 434 F.3d 948, 954 (7th Cir. 2006)* ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."). Nor is there anything out of the ordinary or constitutionally suspect about a plaintiff's being motivated by the prospect of reaping a reward rather than simply vindicating or receiving restitution for his constitutionally sufficient injury. The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good: "like statutory compensation for whistleblowers," they "operate as bounties, increasing the incentives for private enforcement of law." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc., 747 F.3d 489, 492 (7th Cir. 2014)*. Designing a cause of action with the purpose of enlisting the public **[*24]** in a law's enforcement scheme is a well-established tool that can be found in areas ranging from antitrust and civil rights law to environmental law and false claims. While these schemes do not eliminate the constitutional requirement of an injury-in-fact, neither do they impose an additional hurdle simply because the plaintiff may have a motive beyond mere compensation for his injury.

*Cunningham, 251 F. Supp. 3d at 1195-96* (footnotes omitted). The undersigned agrees with the rationale in *Cunningham* that it would make little sense for a plaintiff's statutory incentives to cut against his standing if he has, in fact, suffered the injury contemplated by the statute.

Defendants also cite *Tel. Sci. Corp. v. Asset Recovery Sols., LLC, No. 15-CV-5182, 2016 U.S. Dist. LEXIS 104234, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016)*, in which a company offering a service to screen customers' robocalls did not have standing to sue under the TCPA. However, this case is readily distinguishable, because Dobronski is not operating a business to screen anyone else's calls.

Moreover, "the vast majority of post-*Spokeo [Inc. v. Robins, 578 U.S. 330, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)]* TCPA cases have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury." *Gorss Motels, Inc. v. AT&T Mobility, LLC, 490 F. Supp. 3d 476, 485 (D. Conn. 2020)* (quoting *Sandusky Wellness Center, LLC v. MedTox Sci. Inc., 250 F. Supp. 3d 354, 357 (D. Minn. 2017)* (internal quotation marks omitted) (collecting cases)).

Further, although the Supreme Court made clear in **[*25]** *TransUnion* that a plaintiff must show an injury-in-fact independent of a statutory cause of action, the Sixth Circuit has recently found that a plaintiff's "receipt of an unsolicited [ringless voicemail message] bears a close relationship to the kind of injury protected by the common law tort of intrusion upon seclusion" and therefore constitutes an injury-in-fact, as well as a statutory injury under the TCPA. *Dickson v. Direct Energy, LP, 69 F.4th 338, 349 (6th Cir. 2023)*. District courts in the Sixth Circuit also agree that, even after *TransUnion*, plaintiffs have suffered injury and have standing under the TCPA for unsolicited communications prohibited by that Act. *See Chapman v. Nat'l Health Plans & Benefits Agency, LLC, 619 F. Supp. 3d 788, 795 (E.D. Mich. 2022)* (involving four unsolicited telephone calls); *Sowders v. Scratch Fin., Inc., No. 3:23-CV-56, 2023 U.S. Dist. LEXIS 203646, 2023 WL 7525900, at *6 (S.D. Ohio Nov. 14, 2023)* (involving one unsolicited fax advertisement).

Here, Dobronski has alleged that defendants' unsolicited phone calls have caused him several injuries, including occupying his phone lines, nuisance and annoyance, and impairment of the usefulness of his phones. (ECF No. 99, PageID.1015). He also alleges the injury of a trespass to his chattel, namely his telephone line and services. (*Id.*). The undersigned finds that at this stage—on motions to dismiss rather than ones for summary judgment like those in question in *Leyse* and Stoops—Dobronski has alleged an injury-in-fact **[*26]** sufficient to satisfy his standing requirements. However, this only applies to the truly unsolicited or "cold" calls he received, which are calls 1, 3, 4, 7, 8, 13, 15, 16, 18, 24, 29, 30, 31, and 33.

The remaining calls, however—2, 5, 6, 9, 10, 11, 12, 14, 17, 19, 20, 21, 22, 23, 25, 26, 27, 28, 32, and 34-56—were follow-ups resulting from Dobronski's feigned interest in the insurance products being sold, and thus did not cause injury and lack standing. *See* *Dobronski v. Total Ins. Brokers, LLC, No. 21-10035, 2021 U.S. Dist. LEXIS 186528, 2021 WL 4452218, at *4 (E.D. Mich. Sept. 29, 2021)* (concluding that the plaintiff (Dobronski) gave "implied consent" to calls when he "engaged in conduct [that was] designed to encourage" additional calls). As to these calls, Dobronski's implied consent renders him without standing to pursue claims.

Dobronski argues that the TCPA requires "express consent" in order for a call to be allowed under the statute. *See* *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 (2015)* ("The TCPA and the Commission's rules plainly require *express* consent, not implied or 'presumed' consent." (emphasis in original)). This, however, does not affect whether Dobronski has separate non-statutory *standing* to pursue his claims. For the phone calls that Dobronski encouraged by offering fake identifying information and feigning interest in the product being sold, **[*27]** he cannot claim an injury-in-fact.

Furthermore, Dobronski ignores another exception to the TCPA's guidelines: that a "telephone solicitation" does not include a call "to any person with whom the caller has an established business relationship." *47 U.S.C. § 227(a)(4)*; *47 C.F.R. § 64.1200(f)(14)(ii)*. Courts have found that an established business relationship exists where a call recipient feigns interest in a product in order to identify a caller. *See* *Charvat v. Southard Corp., No. 2:18-CV-190, 2019 U.S. Dist. LEXIS 241404, 2019 WL 13128407, at *4 (S.D. Ohio Sept. 30, 2019)* ("It may be true that Plaintiff has trouble discerning the identity of telemarketers in order to bring lawsuits against them unless he feigns interest in their services, but this does not make an otherwise voluntary conversation involuntary."); *Hamilton v. Spurling, No. 3:11CV00102, 2013 U.S. Dist. LEXIS 38585, 2013 WL 1164336, at *10 (S.D. Ohio Mar. 20, 2013)* ("Setting up the appointment constitutes an 'inquiry' or 'application' regarding chiropractic services offered at Chiropractic Therapy West. Thereafter, . . . [the plaintiff's] second, third, and fourth calls following up regarding the missed appointment do not meet the definition of a 'telephone solicitation' under the TCPA Regulations."); *Morris v. Copart, No. 4:15-CV-724, 2016 U.S. Dist. LEXIS 155755, 2016 WL 6608874, at *9 (E.D. Tex. Nov. 9, 2016)* (stating that "the p]laintiff's false affirmation that he had a vehicle to donate established a business relationship, excusing subsequent calls made in furtherance of that business relationship and for the **[*28]** stated purpose of that relationship—to effectuate [the p]laintiff's donation of a car."). Thus, Dobronski has failed to allege statutory standing regarding any follow-up calls, namely, those in which the caller was given reason to believe that Dobronski or one of his alter egos was interested in the purchase of an insurance product.

Thus, calls 1, 3, 4, 7, 8, 13, 15, 16, 18, 24, 29, 30, 31, and 33 survive dismissal for lack of standing. Calls 2, 5, 6, 9, 10, 11, 12, 14, 17, 19, 20, 21, 22, 23, 25, 26, 27, 28, 32, and 34-56 do not.

C. Vicarious Liability

Dobronski admits that no defendant is directly liable for the offending calls, as he received these calls from unidentified overseas telemarketers that then transferred the calls to agents within the United States. He argues that defendants are nonetheless vicariously liable for the calls under traditional agency theories.

Defendants argue that they do not exert control over the callers to the extent that they can be held liable for the callers' actions.

1. Standard

The Sixth Circuit has summarized liability under the TCPA as follows:

> The TCPA prohibits a person from: (1) initiating any telephone call to any residential telephone line using **[*29]** an artificial or prerecorded voice to deliver a message without the prior express consent of the called party; or (2) making live calls to residential telephone numbers that have been

placed on the national do-not-call registry. . . .

In [*In re Dish Network, 28 F.C.C. Rcd. 6574 (2013)*], the FCC clarified that a "telemarketer" is "the person or entity that initiates a [telemarketing] call," i.e., "takes the steps necessary to physically place a telephone call, and generally does not include persons or entities . . . that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." 28 FCC Rcd. at 6583, ¶ 26, 27.; *see also* *IMHOFF [Inv., LLC v. Alfoccino, Inc., 792 F.3d 627, 635 (6th Cir. 2015)*]. However, the FCC concluded that inclusion of the phrase "on behalf of" in *§ 227(c)(5)*, which creates a private right of action to challenge multiple live calls, allowed for a "seller" to be held vicariously liable under traditional agency tenets, including "not only formal agency, but also principles of apparent authority and ratification." *Dish Network*, 28 FCC Rcd. at 6584, ¶ 28.

*Lucas v. Telemarketer Calling from (407) 476-5680, No. 18-3633, 2019 U.S. App. LEXIS 16106, 2019 WL 3021233, at *5 (6th Cir. May 29, 2019)*.

2. Family First

Family First admits that vicarious liability exists under the TCPA following federal common law agency principles for a violation by a third-party telemarketer but argues that Dobronski has failed to allege it here. (ECF No. 107, PageID.1192-1193 **[*30]** (citing *Dobronski v. NPS, Inc., No. 356617, 2022 Mich. App. LEXIS 2209, 2022 WL 1194212, at *4 (Mich. Ct. App. Apr. 21, 2022)* (unpublished),[5] *appeal dismissed*, *985 N.W.2d 832 (Mich. 2023)*)). In *Dobronski v. NPS*, the Michigan Court of Appeals found that Dobronski failed to show an agency relationship between NPS, a seller of vehicle-service contracts that allegedly made TCPA-violating calls, and Omega Auto Care (Omega) on whose behalf the contracts were sold. There, Dobronski failed to show that NPS had actual or apparent authority to use illegal telemarketing calls to sell Omega's product, and that Omega did not ratify the actions of NPS in that regard. Family First argues that under these principles, Dobronski has similarly failed to establish Family First's liability for the calls from overseas telemarketers.

Family First further argues that awareness, or even knowingly assisting telemarketers, does not establish vicarious liability under the TCPA. (*Id.*, PageID.1194 (citing *Gen. Ret. Sys. Of Detroit v. Alamerica Bank, 14-cv-10032, 2015 U.S. Dist. LEXIS 161408, 2015 WL 7756153, at *2 (E.D. Mich. Dec. 2, 2015)*; *Lucas, 2019 U.S. App. LEXIS 16106, 2019 WL 3021233, at *5-6*). Family First's argument ignores vital allegations from the First Amended Complaint and, as such, misses the mark.

As summarized above, Dobronski alleges that Family First knowingly provides agents with access to ATDS which use a random number or sequential number generator and have the capacity to call persons at random with no human involvement. (ECF **[*31]** No. 99, PageID.1016-1017). Family First promotes the illegal telemarketing scheme alleged as an essential tool for selling the insurance companies' products and is aware that its practices are illegal and tortious. (*Id.*, PageID.1018). Family First also knows that its leads, generated by random dialing, did not give express consent to be dialed, and that the practice results in the same consumers being contacted by multiple agents to be sold duplicative insurance products. (*Id.*, PageID.1019).

Dobronski expands on Family First's role in his response, alleging that it trains its agents on telemarketing. (ECF No. 128, PageID.1924). He attaches exhibits showing insurance applications that list "Family First Life" as the agency and showing a list of available Family First training videos. (*Id.*, PageID.1945-1960). Although the undersigned cannot consider new allegations or exhibit evidence at this stage, the exhibits essentially show facts that Dobronski has pled in the First Amended Complaint. *See* ECF No. 99.

In *Lucas, supra*, the plaintiff's vicarious liability claims failed because he "did not allege facts indicating that the telemarketers were acting 'on behalf of' the defendants or that **[*32]** they were subject to their control." *2019 U.S. App. LEXIS 16106, 2019 WL 3021233, at *6*. Here, unlike in *Lucas*, Dobronski has alleged that multiple telemarketers identified themselves as affiliated with Family First, and that Family First was listed as the agency on insurance applications sent to Dobronski. These allegations are similar to those made in *Dobronski v. Sunpath Ltd., No. 19-13094, 2020 U.S. Dist. LEXIS 251990, 2020 WL 8840311, at *4 (E.D. Mich. July 27, 2020)*, in which the district court found that the allegation that the caller was "affiliated with [defendant]" "provide[d] support for Plaintiff's effort to hold [the defendant] responsible for the phone calls giving rise to his claims in this case, whether as the

5 Michigan Court Rule 7.215(C)(1) explains that "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis."

direct initiator of these calls or, perhaps, under a theory of vicarious liability." Although the decision in SunPath involved a jurisdictional argument, the finding as to allegations of direct or vicarious liability was necessary to the district court's determination that there was jurisdiction over the defendant corporation. *Id.*

Other courts have also found that vicarious liability was supported by similar facts. *See, e.g., Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 662 (4th Cir. 2019)* (where one defendant authorized another to use its name and logo in carrying out its operation, took no meaningful action to ensure TCPA compliance, and profited from the other defendant's actions); *Hossfeld v. Gov't Emps. Ins. Co., 88 F. Supp. 3d 504, 510 (D. Md. 2015)* (defendant **[*33]** company was liable for the actions of third-party telemarketers where it contracted with them, created scripts for them, knew they were using ATDS, and had them make calls with ATDS before forwarding the calls to its representatives).

In reply, Family First says that it "is merely a platform to connect Independent Insurance Agents with carriers" and that based on this, "there is simply no basis for vicarious liability." (ECF No. 148, PageID.2119). This may be true, but it runs contrary to the full set of allegations in Dobronski's First Amended Complaint, summarized above. Dobronski has alleged facts that support a theory of vicarious liability as to Family First for the telemarketing calls that allegedly violated the TCPA and Michigan statutes. Because the allegations are taken as true at this stage of litigation, the claims against Family First should not be dismissed for failure to allege vicarious liability.

3. Individual Agents

Dobronski also alleges that the individual agents named in the First Amended Complaint—Vongdara, Perez, Powell, Grant, Adams, Wickham, Bonanno, Igweh, Scheifele, Christle, Drouhard, and Friedman—are vicariously liable for the initial calls placed by overseas **[*34]** telemarketers in violation of the TCPA and Michigan statutes.[6]

The agents argue that under *Lucas*, discussed above, "knowingly assisting telemarketers in the making of illegal telemarketing calls" does not suffice to establish vicarious liability. *2019 U.S. App. LEXIS 16106, 2019 WL 3021233, at *5*. They also cite *Childress v. Liberty Mut. Ins. Co., No. 17-CV-1051 MV/KBM, 2018 U.S. Dist. LEXIS 167281, 2018 WL 4684209, at *4 (D.N.M. Sept. 28, 2018)*, in which the court found that the transfer of a tortious call to the defendant, alone, "[did] not establish that Defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call" in order to establish an agency relationship.

As discussed above, Dobronski's allegations go beyond those by the plaintiff in *Lucas* and, as to Family First, properly alleged vicarious liability. The same is true for the individual agents moving for dismissal. On multiple occasions, Dobronski alleges that he asked named defendants about the source of the originating call. (ECF No. 99, PageID.1026, ¶ 121; 1029, ¶ 143; 1032, ¶ 162; 1035, ¶ 180; 1038, ¶ 204; 1051, ¶ 296; 1057, ¶ 341; 1058, ¶¶ 344-5; 1060, ¶ 351; PageID.1061, ¶ 353-4). Bonanno informed him that the calls were from "their call center"; Perez told him that the call originator was **[*35]** "our lead generation specialist[,]" and on subsequent calls that the originator "works for her company[,]" and that she "utilize[d] third-party telemarketers located in Asia"; Grant told him that the call originator "works for [his] transfer company"; Christle stated that the callers work in one of his company's call centers; Drouhard said that her company, Family First, "uses call centers outside the USA"; Vongdara said that three of the initiating callers Dobronski inquired about were his employees; Adams admitted to the use of a call center to originate calls; and Igweh did so as well, stating that Adams was his employee. (*Id.*).

As stated above, these allegations go well beyond those in *Lucas* and adequately state an agency relationship between the individual agents and the callers initiating the offending calls. The same is true of *Childress*, which was distinguished by a later case from the same district in which the plaintiff pled further facts establishing an agency relationship between the caller and the company the call was transferred to. *See Mestas v. CHW Grp. Inc., 508 F. Supp. 3d 1011, 1025 (D.N.M. 2020)* (finding an agency relationship where the plaintiff alleged that Jane Doe callers were connected to named defendant who authorized the telemarketing **[*36]** calls to the plaintiff, directly or indirectly controlled the call initiators, and approved, wrote, or reviewed the telemarketers' scripts). Even as to the agents not directly referred to above, they are all connected to the originating and allegedly tortious calls placed by overseas telemarketers, either through the transfer of calls to

---

6 As noted above, Friedman is proceeding pro se and has not filed a motion, Drouhard does not appear to have been served, and Perez appears to have been served but has not answered or otherwise responded to the complaint. The other individual agents have filed motions to dismiss, (ECF Nos. 106, 143), and the analysis herein applies only to them.

them, through return calls to Dobronski from them, or by sending Dobronski insurance applications (which he connects to offending calls through their use of his aliases on those calls). It is clear, if Dobronski's allegations are true, that the named individuals have directed offending calls to be made to Dobronski and transferred to them to sell insurance products. The agents cannot escape liability at this stage based on the allegations as pled.

4. Insurance Companies

As for the insurance companies—United, Americo, and Great Western—Dobronski's allegations fall short of establishing vicarious liability.

Dobronski alleges that the companies are "well aware" that Family First and its agents engage in illegal telemarketing to sell their products. (ECF No. 99, PageID.1020). He further alleges that they support these activities by "giving the agents access **[*37]** to their respective computer systems for purposes of pricing data and entering prospective insureds' application information, as well as the authority to use the company's trademark and service market[.]" (*Id.*). This, he says, establishes actual authority and ratification. (*Id.*). He also alleges having received several insurance applications after feigning interest in the products, and that each company was listed as the insurance provider on at least one application. *See generally* ECF No. 99.

The insurance companies are correct that there is no indication they directed or acquiesced in the conduct of having offending calls placed by overseas telemarketers and then transferred to their agents. Simply knowing about, as Dobronski has alleged, it is not enough. *See Lucas*.

An agent acts with actual authority "when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." 1 *Restatement Agency, 3d, § 2.01*. Dobronski has not adequately pled actual authority as to the insurance companies. Though the agents allegedly had actual authority to prequalify consumers for **[*38]** insurance products, as shown by the "access to their respective computer systems for purposes of pricing data and entering prospective insureds' application information" and "authority to use the company's trademark and service market," (ECF No. 99, PageID.1020), this does not extend to the tactics used to sell the products to consumers. Unlike Family First, the insurance companies are not alleged to provide agents with telemarketing resources, scripts, or ATDS, or in any other way authorized telemarketing practices that violate the TCPA and Michigan statutes.

As for apparent authority, there is no indication that the principal (here, the insurance companies) held out to Dobronski that the agents had authority to commit the tortious acts he alleges. *See [Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365, 374 (6th Cir. 2015)](#)*. Therefore, they are not liable under this theory.

Lastly, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." 1 *Restatement Agency, 3d, § 4.01(1)*. A principal can ratify an act by "(a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." 1 *Restatement Agency, 3d, § 4.01(2)*. Here, the acts were not **[*39]** ratified because Dobronski has not alleged that the insurance companies manifested assent or that they consented to the calls. The insurance applications were sent to Dobronski by the agents, not the insurance companies, and though they purported to be offers of sale, the insurance companies are not alleged to have accepted any application from Dobronski or his aliases.

5. In Sum

Dobronski has sufficiently alleged vicarious liability for his claims as to Family First and the individual agents that have moved for dismissal. He has not sufficiently alleged vicarious, or direct, liability as to the insurance companies, United, Americo, and Great Western. Therefore, United, Americo, and Great Western should be dismissed. As to the other defendants, Dobronski only has standing to pursue claims based on calls 1, 3, 4, 7, 8, 13, 15, 16, 18, 24, 29, 30, 31, and 33. *See* ECF No. 99, PageID.1023-1057. The other calls were part of an established business relationship and did not cause injury-in-fact.

The undersigned will now consider the separate counts of Dobronski's First Amended Complaint, as the remaining defendants argue that he has failed to state a cause of action as to each.

D. Causes of Action **[*40]**

1. Count I — Autodialer Calls

Dobronski alleges that defendants violated *47 U.S.C. § 227(b)(1)(A)(iii)* and *47 C.F.R. § 64.1200(a)(1)(iii)* by initiating calls using ATDS, which dialed random or

sequential numbers without prior consent of the called party. (ECF No. 99, PageID.1062-1063).

*47 C.F.R. § 64.1200(a)(1)(iii)* states that a caller may not use ATDS, unless for emergency purposes or with prior express consent, to initiate a call to a cellular telephone service or any service for which the party is charged for the call. A plaintiff is required to make " 'some additional factual allegations, no matter how minor, in addition to parroting the language of the statute,' to sufficiently allege that [a d]efendant utilized a prerecorded or artificial voice or used an ATDS system." *Katz v. CrossCountry Mortg., LLC, No. 1:22-CV-00925, 2022 U.S. Dist. LEXIS 207417, 2022 WL 16950481, at *3 (N.D. Ohio Nov. 15, 2022)* (quoting *Reo v. Caribbean Cruise Line, Inc., No. 1:14 CV 1374, 2016 U.S. Dist. LEXIS 35596, 2016 WL 1109042, at *4 (N.D. Ohio Mar. 18, 2016)*). " 'It is not unreasonable [ ] to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via the ATDS.' " *Id. at *3* (quoting *Johansen v. Vivant, Inc., No. 12 C 7159, 2012 U.S. Dist. LEXIS 178558, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012)*).

The Supreme Court decided in *Facebook, Inc. v. Duguid, 592 U.S. 395 (2021)* that in all cases, ATDS must be alleged to have the capacity to use a random or sequential number generator to either store or produce numbers to be called. Otherwise, the claims require dismissal. *See* ***[*41]*** *Barry v. Ally Fin., Inc., No. 20-12378, 2021 U.S. Dist. LEXIS 129573, 2021 WL 2936636, at *3 (E.D. Mich. July 13, 2021)*. In *Barry*, the district court found that a plaintiff who does not allege the capacity of a defendant's system to dial numbers randomly or sequentially fails to state a TCPA claim. Other courts have found that mere conclusory allegations of random or sequential number generators also fail to state a claim. *See* *ACA Int'l v. Fed. Commc'ns Comm'n, 885 F.3d 687, 702, 435 U.S. App. D.C. 1 (D.C. Cir. 2018)* (differentiating ATDS from a calling list, which is allowed under the TCPA), *Mosley v. Gen. Revenue Corp., No. 20-cv-01012-JES-JEH, 2020 U.S. Dist. LEXIS 127055, 2020 WL 4060767, at *4 (C.D. Ill. July 20, 2020)* (finding that a mere allegation of ATDS was not enough).

However, where the complaint "does not merely parrot, in a conclusory fashion, the statutory language as to the definition of an ATDS" but instead "includes several factual allegations as to the facts and circumstances surrounding the calls and texts that make it plausible that an ATDS was used[,]" courts have found that use of ATDS was plausibly alleged. *Lopez v. Quicken Loans, Inc., 461 F. Supp. 3d 638, 645 (E.D. Mich. 2020)*. In *Lopez*, allegations that the calls were made by SMS shortcode, were of a generic and non-personal nature, and followed a pattern that included a long pause followed by a clicking sound, plausibly indicated that ATDS was used in violation of the TCPA.

Similarly, Dobronski has alleged multiple indicia of the calls that make his allegation of ATDS plausible. Dobronski states that the calls he received **[*42]** had "multi-second delays and/or a 'boink' or clicking sound . . . before a live telemarketer comes on the line," that some calls were "simply dead air," and that "the caller identification number display[ed] [was] 'spoofed' or manipulated to display a false telephone number." (*Id.*, PageID.1021). These factors were allegedly present for almost every phone call that he received in the First Amended Complaint.

Based on these allegations, Dobronski has stated a claim for improper use of an ATDS and Count I should survive dismissal.

2. Count II — Recorded Message Calls

Under this Count, Dobronski alleges that calls 3 and 13 were in violation of the TCPA and its implementing regulations, specifically *47 U.S.C. § 227(b)(1)(B)* and *47 C.F.R. § 64.1200(a)(3)*. For these calls, Dobronski allegedly received a recorded message upon answering.

Under *47 C.F.R. § 64.1200(a)(3)*, a caller may not initiate any telephone call to a residential line "using an artificial or prerecorded voice to deliver a message that includes or introduces an advertisement or constitutes telemarketing without the prior express written consent of the called party[.]" Exceptions are made for calls for emergency purposes and some types calls that do not exceed a certain number within specified timeframes. **[*43]** *Id.*

For call 3, Dobronski alleges that he received a call that began with a recorded voice message asking him to respond with his age. (*Id.*, PageID.1026). After he did so, he was connected to a live telemarketer and identified himself as Arthur Heaton. (*Id.*). He later received a call (call 6) from Perez, who identified herself as an agent with Family First and asked to speak with Arthur Heaton. (*Id.*, PageID.1030). Call 13 was allegedly a call that began with a recorded message as well. (*Id.*, PageID.1037). This call was eventually transferred to

Grant with Family First, who attempted to sell Dobronski a life insurance policy. (*Id.*, PageID.1038).

These allegations state a claim for violating the TCPA prohibition against the use of a prerecorded voice message for telemarketing purposes. The calls are plausibly connected to Perez, Grant, and Family First, who as discussed above, may be vicariously liable for the calls. Therefore, Count II should not be dismissed as to them, but should be dismissed as to the other moving defendants.

3. Count III — Premature Hang Up

Dobronski alleges that defendants violated *47 C.F.R. § 64.1200(a)(6)*, which prohibits "[d]isconnect[ing] an unanswered telemarketing call prior to at least **[*44]** 15 seconds or four (4) rings." Dobronski says that this claim applies to calls 17 and 53-56.

Call 17 refers to a call that Dobronski received while he was engaged in call 16. Dobronski says that the caller did not allow the telephone to ring more than three times, and thus his voicemail was unable to answer and take a message. (*Id.*, PageID.1040-1041). Calls 53-56 were made in August of 2022 and were all missed by Dobronski. (*Id.*, PageID.1059).

For each of these calls, it is plausibly alleged that the caller violated this provision of the TCPA implementing regulations by failing to allow Dobronski's phone to ring more than three times. However, Dobronski does not allege who placed these calls and could not plausibly do so, because he gathered no information about the callers. Thus, the calls in question cannot be connected to any of the defendants. The undersigned therefore recommends that Count III be dismissed.

4. Count IV — Abandoned Calls

Dobronski alleges that a number of calls violated *47 C.F.R. § 64.1200(a)(7)* by failing to connect him to "a live sales representative within two (2) seconds of the called person's completed greeting." *47 C.F.R. § 64.1200(a)(7)*. The regulation states that a caller may not abandon "more than three percent **[*45]** of all telemarketing calls that are answered live by a person, as measured over a 30-day period for a single calling campaign." *Id.*

Dobronski does not state a claim under this provision. Previous courts have found that "[t]o state a violation of this provision, [the plaintiff] must plausibly allege that no more than three percent of live telemarketing calls were 'abandoned,' which means that the call was not connected to a live sales representative within two seconds of the called person's greeting." *Dahdah v. Rocket Mortg., LLC, No. 22-11863, 2023 U.S. Dist. LEXIS 161335, 2023 WL 5941730, at *5 (E.D. Mich. Sept. 12, 2023)*. The court in *Dahdah* reasoned that "this provision requires information about the abandonment rate, which [the plaintiff's] complaint fails to mention[,]" and dismissed his claim.

Dobronski argues that the subsections of *§ 64.1200(a)(7)* create an additional cause of action and asserts liability based on (a)(7)(i)(A), which requires an abandoned call to contain a "prerecorded identification and opt-out message," and (a)(7)(i)(B), which requires an "automated, interactive voice-and/or key press-activated opt-out mechanism[.]" (ECF No. 120, PageID.1786-1787).

These subsections do not create causes of action. As clarified in *Leyse, supra*, subsections (i)(A) and (i)(B) "create[] an *exception* for abandoned call messages that provide a number for call recipients **[*46]** to call and make a do-not-call request." *2020 U.S. Dist. LEXIS 44234, 2020 WL 1227410, at *7* (emphasis added). Thus, defendants could state a defense for making abandoned calls under *§ 64.1200(a)(7)* if those calls met the requirements of *(i)(A)* and *(i)(B)*. But since Dobronski has not plausibly alleged a violation of *§ 64.1200(a)(7)*, those subsections are inapplicable. Therefore, Count IV should be dismissed.

5. Count V — Do Not Call

Next, Dobronski alleges violations of *47 C.F.R. § 64.1200(c)(2)* for all calls except call 7. *47 C.F.R. § 64.1200(c)(2)* prohibits telephone solicitations to any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." Dobronski alleges that all of his phone numbers are listed on the National Do Not Call Registry, and defendants do not aver otherwise at this stage.

Defendants argue that based on the TCPA itself, and not the implementing regulation, a private right of action for this violation is only available for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" *47 U.S.C. § 227(c)(5)*. Dobronski counters that the defendants **[*47]** were acting in concert and that based on calls 1, 3, 4, 8, 13, 15, 16, 18, 24, 29, 30, 31, and 33, they are all liable for having made more

than one prohibited telephone solicitation within a 12-month period.

Defendants also argue that § 227(c)(5) does not apply to calls made to cellular phones, as some courts have suggested. *See* Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1250 (11th Cir. 2014) (distinguishing "residential telephone line" from a "cell-phone number" in dicta); Cunningham v. Politi, No. 418CV00362ALMCAN, 2019 U.S. Dist. LEXIS 102447, 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019), *report and recommendation adopted*, No. 4:18-CV-362, 2019 U.S. Dist. LEXIS 102054, 2019 WL 2524737 (E.D. Tex. June 19, 2019) (collecting cases that distinguish cell phones from residential telephone subscribers related to claims under § 227(c)(5)).

Other courts have found that cell phones can potentially qualify as residential phone lines. *See Stevens-Bratton v. TruGreen, Inc., 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020)* (listing cases acknowledging that cell phones can satisfy the "residential telephone subscriber" element of *§ 64.1200(c)* & *(d)* claims). "A plaintiff, however, must put forth evidence establishing that [his] cellular telephone is used for residential purposes." *Id.* (citing Cunningham v. McDonald, No. 3:15-cv-215, 2018 U.S. Dist. LEXIS 201403, 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 201401, 2018 WL 6198417 (M.D. Tenn. Nov. 28, 2018); Cunningham v. Cap. Advance Sols., LLC, No. 17-cv-13050-FLW, 2018 U.S. Dist. LEXIS 197590, 2018 WL 6061405, at *5 (D.N.J. Nov. 20, 2018); Cunningham v. Rapid Cap. Funding, LLC/RCF, No. 3:16-CV-02629, 2017 U.S. Dist. LEXIS 136951, 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and recommendation adopted sub nom*. 2017 U.S. Dist. LEXIS 140908, 2017 WL 3776165 (M.D. Tenn. Aug. 31, 2017)).

The undersigned finds this line of cases more compelling than those suggesting a hardline rule that cell phones can never qualify as residential phones. As stated by the Supreme Court, cell phones "are **[*48]** now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." Riley v. California, 573 U.S. 373, 385, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014). That said, the undersigned agrees with *Stevens-Bratton* that there must be plausible allegations supporting the plaintiff's use of a cell phone as a residential line.

Defendants argue that Dobronski "has not put forth any facts to show that he uses his cell phone for residential purposes. Indeed, per his Complaint, [Dobronski] already has four residential lines." (ECF No. 106, PageID.1157).

While true that Dobronski alleges having at least four other phone lines, he has alleged that he "utilizes his cellular telephone primarily for personal, family, and household use." (ECF No. 99, PageID.1011). At this stage, it is plausible that Dobronski's cell phone qualifies as a residential telephone line, and his claims need not be parsed out to dismiss those under § 227(c)(5) that are based on calls to his cell phone. The undersigned recommends that Count V be dismissed as to the individual agents, but not dismissed as to Family First. Dobronski has plausibly alleged that all of the above phone calls were made by agents affiliated with Family First and that Family **[*49]** First is vicariously liable for those calls. This easily satisfies § 227(c)(5)'s requirement that causes of action be based on receiving more than one violative call in a 12-month period. As to the individual agents, Dobronski has not alleged beyond a conclusory manner that they acted in concert with one another or were even aware of the calls of other agents. Each agent is only liable for the calls made at their direction, and Dobronski has not argued that any of them individually caused more than one call to be placed to him within a 12-month period. Therefore, this claim should be dismissed as to the agents.

6. Count VI-X — Defendants' Written Do Not Call Policy

Dobronski says that calls 1-56 violated *47 C.F.R. § 64.1200(d)*, which requires callers to have "instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." "Plaintiff[s] cannot recover for [a defendant's] refusal to send them its do-not-call policy. [They] can only recover for a call made at a time when [the defendant] did not have such a policy in place[.]" Hamilton v. Voxeo Corp., No. CIV.A. 3:07-CV-404, 2009 U.S. Dist. LEXIS 53619, 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009).

Dobronski asserts five claims, one each for *§ 64.1200(d)(1)-(4)* and *(6)*. Dobronski has not plausibly alleged any facts related to **[*50]** the maintenance or details of a written do not call policy for any defendant except for Vongdara. Dobronski alleged that he called and spoke to Vongdara on August 15, 2022. (ECF No. 99, PageID.1060). During that call, Dobronski told Vongdara that his numbers were on the National Do Not Call Registry, and Vongdara assured him that he would

not receive further calls since he had purchased a life insurance policy (which he had not). (*Id.*). Dobronski asked Vongdara for a copy of Vongdara's written do not call policy, and "Vongdara stated that he did not have one." (*Id.*).

Based on this alleged conversation, Dobronski has stated claims under *§ 64.1200(d)* against Vongdara. As to the other defendants, he has failed to allege with particularity any indication that they made or were liable for calls while failing to maintain a written do not call policy. In fact, Adams and Igweh stated that they would inform their call centers to no longer contact Dobronski. (*Id.*, PageID.1061). Therefore, Counts VI-X should be dismissed for all other defendants.

7. Count XI — Falsified Caller ID

Under Count XI, Dobronski alleges that defendants failed to provide caller identification information as required under *47 C.F.R. § 64.1601(e)(1)*. Numerous **[*51]** judges in this district have found that this regulation does not promulgate a private cause of action. *See, e.g., Dobronski v. Total Ins. Brokers, LLC, No. 21-10035, 2021 U.S. Dist. LEXIS 188485, 2021 WL 4338957, at *7 (E.D. Mich. May 14, 2021)*; *Dobronski v. Sunpath Ltd., No. 19-13094, 2020 U.S. Dist. LEXIS 251990, 2020 WL 8840311, at *7 (E.D. Mich July 20, 2020)*; *Dobronski v. Selectquote Ins. Servs., 462 F. Supp. 3d 784 790 (E.D. Mich. 2020)*. Relying on the analysis in *Worsham v. Travel Options, Inc., No. JKB-14-2749, 2016 U.S. Dist. LEXIS 118774, 2016 WL 4592373, at *7 (D. Md. Sept. 2, 2016)*, *aff'd*, *678 F. App'x 165 (4th Cir. 2017)*, these judges have reasoned that *§ 64.1601(e)(1)* was not promulgated under subsection *b* or *c* of the TCPA, and hence includes no private right of action.

Dobronski argues that the Court should instead follow *Worsham v. LifeStation, Inc., No. 661, Sept. Term 2020, 2021 Md. App. LEXIS 1014, 2021 WL 5358876 (Md. Ct. Spec. App. Nov. 17, 2021)*. While acknowledging that "the FCC's consideration of what network information must be transmitted via Caller ID is technical," the *LifeStation* court reasoned that the caller ID requirement fell under the scope of *§ 227(c)* rather than *§ 227(d)* because it would exceed the scope of regulation under the latter, and because it serves *§ 227(c)*'s purpose of "protect[ing] subscribers from unrestricted commercial telemarketing calls." *LifeStation, 2021 Md. App. LEXIS 1014, 2021 WL 5358876, at *17*.

The Michigan Court of Appeals considered whether *LifeStation* was persuasive in another case brought by Dobronski. The court of appeals concluded it was not, explaining:

> Having reviewed the statutes, regulations, and relevant case law, we conclude that there is no private right of action with respect to *47 CFR 64.1601(e)*. First and most critically, there is nothing in the statute that clearly indicates that Congress intended for private lawsuits to enforce caller-ID **[*52]** requirements. Subsection (b) prohibits certain prerecorded robocalls, and subsection (c) provides for various do-not-call protections. The caller-ID regulation does not fit squarely within either of these subsections, either conceptually or technically. Second and relatedly, when promulgating *47 CFR 64.1601(e)*, the FCC did not indicate that either subsection (b) or (c) was the statutory authority for that regulation. Had there been an intent to create a private right of action by Congress, or an understanding by the FCC that Congress had so intended, then one would expect more clarity in the statute or regulation, especially when private rights of action were expressly created elsewhere in the federal scheme. If a statute and its implementing regulations have expressly created a private right of action in one section, but have not expressly done so elsewhere, then it is "highly improbable" that Congress and the FCC "absentmindedly forgot to mention an intended private action." *Transamerica Mtg Advisors, Inc v Lewis, 444 U.S. 11, 20, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979)*.

*Dobronski v. Transamerica Life Ins. Co., No. 360506, ___ N.W.2d ___, 2023 Mich. App. LEXIS 3789, 2023 WL 3665869, at *8 (Mich. Ct. App. May 25, 2023)*.

A recent case in this district has also reaffirmed the stance that *§ 64.1601(e)(1)* was not likely intended to contain a private cause of action in the absence of any statement to the contrary. *Dobronski v. Tobias & Assocs., No. 5:23-CV-10331, 2023 U.S. Dist. LEXIS 193553, 2023 WL 7005844, at *8 (E.D. Mich. Sept. 25, 2023)*.

The undersigned agrees with the reasoning of *Dobronski v. Transamerica Life Ins. Co.* and **[*53]** *Dobronski v. Tobias & Assocs.*. Given the recent signs of life for a private action under this regulation in *LifeStation*, it is understandable that Dobronski has attempted to plead a *§ 64.1601(e)(1)* claim. However, the overwhelming authority has found, for good reason, that no such cause of action exists. Therefore, the

undersigned recommends dismissal of Count XI.

8. Count XII — Violation of the MTCCCA

Dobronski's remaining two claims arise under Michigan statutes. The first arises under *M.C.L. § 484.125(2)(a) of the MTCCCA*, which prohibits callers from contacting a [telephone] subscriber to deliver "a recorded message for the purpose of presenting commercial advertising to the subscriber[.]" He also alleges violation of *§ 484.125(2)(b)*, which prohibits callers from delivering "intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber."

Dobronski's claim under *§ 484.125(2)(b)* should be dismissed. That section governs only *intrastate* advertising. Though Dobronski has alleged the use of false caller ID numbers originating in Michigan, he has pled that every initial call he received originated from overseas. Further, he has listed the residence of every **[*54]** named defendant, and none reside in Michigan. Accordingly, he has not plausibly alleged that anyone he spoke to was calling from Michigan. The MTCCCA defines "[i]ntrastate" as "originating and delivering within this state." *§ 484.125(1)(c)*. Therefore, he has failed to meet an element of the statue on the face of the First Amended Complaint.

Dobronski contends that "[t]he parties initiating the calls certainly wanted to fraudulently convey to called parties that the calls were originating in Michigan" and that "claims under Count XII are plausible as intrastate telephone solicitations; leastwise, until discovery can be had to ascertain the true originating location of the initiated calls if they were not initiated from Michigan." (ECF No. 118, PageID.1740). However, the liberal pleading requirements of *Rule 8* do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal, 556 U.S. at 678-79 (2009)*. Furthermore, Dobronski's new argument is not supported by the allegations in the First Amended Complaint.

The other statute at issue in Count XII, *M.C.L. § 484.125(2)(a)*, requires an allegation of delivery of a recorded message. It is not limited to intrastate communications. Therefore, this claim can proceed, but only as to **[*55]** calls 3 and 13, as discussed above. Those calls, implicating Grant, Perez, and Family First, allegedly began with a recorded message for the purpose of commercial advertising. Count XII should not be dismissed as to causes of action under *§ 484.125(2)(a)* for calls 3 and 13, but should otherwise be dismissed.

9. Count XIII — Violation of the MHSSA

Dobronski's final stated causes of action arise under *M.C.L. § 445.111a(5)* and *§ 445.111b(1)*. *§ 445.111a(5)* states: "A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal list." *§ 445.111b(1)* requires a person making a telephone solicitation to state his or her name and the full name of the organization or other person on whose behalf the call was initiated at the beginning of the call. It also requires the caller to provide a phone number for the organization or other person upon request.

Dobronski has clearly alleged receipt of phone calls in violation of these statutes. Defendants' arguments against the claims essentially rest on their theory that they are not vicariously liable for the calls initiated by overseas telemarketers. Thus, for the calls that Dobronski has standing to **[*56]** proceed on (calls 1, 3, 4, 7, 8, 13, 15, 16, 18, 24, 29, 30, 31, and 33) he has stated a claim under the MHSSA against Family First and the individual agents moving for dismissal.

E. Willfulness

Dobronski has alleged treble damages under the TCPA for willfulness. *See* *47 U.S.C. § 227(c)(5)*. Courts are split on the issue of whether TCPA violations for numbers appearing on the National Do Not Call Registry are *per se* willful violations.

Some courts have found that calling a number on the Registry is sufficient to state a claim for a willful violation. *See* *Dobronski v. Total Ins. Brokers, LLC, 2021 U.S. Dist. LEXIS 186528, 2021 WL 4452218, at *4* ("Plaintiff asserts that his phone number was on the DNC Registry at the time of the first call. Accordingly, he alleges sufficient facts to state a claim that the first call on November 24, 2020 was a willful violation of the TCPA."); *Litz v. My Car Warrior, LLC, No. 120CV00377TWPDLP, 2020 U.S. Dist. LEXIS 114558, 2020 WL 3546129, at *4 (S.D. Ind. June 30, 2020)* (holding that a telemarketing call to a number on the Do Not Call Registry was a willful violation of the TCPA); *Krakauer, 925 F.3d at 662* (holding that it is a willful violation of the TCPA where a defendant's agent calls numbers on the Do Not Call Registry or where a company is aware that its agent calls numbers on the

Do Not Call Registry but fails to act); *Shelton v. Fast Advance Funding, LLC, 378 F. Supp. 3d 356, 363 (E.D. Pa. 2019)* (holding that the defendant's twenty-two calls to a number on the Do Not Call Registry were **[*57]** each willful violations of the TCPA where the defendant's business practice was to neither purchase the Do Not Call Registry nor review it).

However, more courts in this district have found that a plaintiff must allege something beyond a mere TCPA violation (including one's number on the Do Not Call Registry) to show willfulness. *See* *Bristow v. Am. Nat'l Ins. Co., No. 2:20-CV-10752, 2021 U.S. Dist. LEXIS 102406, 2021 WL 2201171, at *2 (E.D. Mich. June 1, 2021)* ("[T]he statute and associated regulations do not themselves explicitly provide that mere failure to check the Do-Not-Call Registry constitutes a knowing or willful violation of *47 U.S.C. § 227(c)*[,]" nor does "the constructive notice which may be afforded by the Registry automatically mean that calling someone on the Registry equates to a willful or knowing violation of the TCPA."); *Harris v. World Fin. Network Nat'l Bank, 867 F.Supp.2d 888, 895 (E.D. Mich. 2012)* ("The Court disagrees with Plaintiff's position that, in order to establish that Defendants' conduct was willful or knowing, he must only demonstrate that Defendants intended to use the autodialer to place the calls. . . . Plaintiff must also show that Defendants knew that Plaintiff did not consent to the phone calls."); *Currier v. PDL Recovery Grp., LLC, No. 14-12179, 2017 U.S. Dist. LEXIS 25240, 2017 WL 712887, at *10 (E.D. Mich. Feb. 23, 2017)* (holding that to demonstrate a knowing violation of *47 U.S.C. § 227(b)*, a plaintiff must show that the defendant knew he or she did not consent to the phone calls); *Duchene v. Onstar, LLC, No. 15-13337, 2016 U.S. Dist. LEXIS 97129, 2016 WL 3997031, at *7 (E.D. Mich. July 26, 2016)* ("[T]he Court holds that **[*58]** a willful or knowing violation of [the] TCPA requires that Plaintiff has to plead that Defendant was made aware of/notified that Plaintiff did not consent to calls from Defendant.").

The undersigned is persuaded by the majority of courts in this district. Dobronski must allege something beyond a TCPA violation in order to state a claim for treble damages. Otherwise, the provision would be superfluous. Here, Dobronski merely alleges that his TCPA damages "shall be trebled because the violations were willful and/or knowing[.]" (ECF No. 99, PageID.1069). He has not, for instance, alleged that he received calls from the same agent after informing the agent to stop calling him. Therefore, Dobronski's claim for treble damages based on willful conduct should be dismissed.

F. Group Pleading and Motions for More Definite Statement

Several defendants have asked the Court to dismiss Dobronski's First Amended Complaint for impermissible group pleading. Some argue that, alternatively, Dobronski should be ordered to provide a more definite statement. The aspect of the complaint defendants take issue with is that Dobronski's Counts do not specify which defendants are allegedly liable for which Counts. **[*59]**

1. Impermissible Group Pleading

The general rules of pleading provide that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Fed. R. Civ. P. 8(a)(2)*. This rule requires that Dobronski "provide the defendants 'adequate notice of the claims against them and the grounds upon which each claim rests.' " *Lee v. Ohio Educ. Ass'n, 951 F.3d 386, 392-93 (6th Cir. 2020)* (quoting *Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018)*);*see also* *Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 946 (7th Cir. 2013)* (" 'The primary purpose of [*Fed. R. Civ. P. 8* and *10(b)*] is to give defendants fair notice of the claims against them and the grounds supporting the claims.' ") (quoting *Stanard v. Nygren, 658 F.3d 792, 797 (7th Cir. 2011)*). Courts have found that " 'shotgun' allegations of general misconduct" by a group of defendants is not sufficient to state a claim against each. *Kerrigan v. ViSalus, Inc., 112 F. Supp. 3d 580, 601 (E.D. Mich. 2015)*.

2. More Definite Statement

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under *Rule 12(e)* before responding." *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*. The federal rules provide that "if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." *Fed. R. Civ. P. 12(e)*. But "[i]f the complaint **[*60]** meets the notice pleading requirements of *Rule 8 of the Federal Rules of Civil Procedure*, the motion should be denied." *McCloy v. Corr. Med. Servs., No. 07-13839, 2008 U.S. Dist. LEXIS 107618, 2008 WL 5350623, at *1 (E.D. Mich. Dec. 18, 2008)*. "Whether to grant a motion for a more definite statement is within the

discretion of the trial court." *Boddie v. MTD, No. 07-1227-T, 2008 U.S. Dist. LEXIS 128985, 2008 WL 11320012, at *3 (W.D. Tenn. July 25, 2008)* (citing 5A Wright & Miller, Federal Practice and Procedure: Civil 2d § 1376).

3. Discussion

Defendants note that a magistrate judge in this district has previously recommended dismissal of a complaint in one of Dobronski's other cases for impermissible group pleading. *See Dobronski v. Tobias & Assocs., supra*. There, the magistrate judge found it "problematic" that Dobronski pled nine counts without any being "clearly directed at any particular Defendant." *2023 U.S. Dist. LEXIS 193553, 2023 WL 7005844, at *6*. Relying on *Kerrigan and Lanman v. Hinson, 529 F.3d 673, 684 (6th Cir. 2008)*, the magistrate judge recommended dismissal because "Plaintiff's allegations improperly group[ed] the Defendants together[,] failing to provide Defendants with proper notice of the basis of the individual claims against each Defendant."

Other courts, however, have found that, where the allegations against each defendant are outlined in the complaint, grouping defendants together under counts to which they are all alleged to be liable is permissible. *See Gold Crest, LLC v. Project Light, LLC, 525 F. Supp. 3d 826, 835 (N.D. Ohio 2021)* (citing *Berry v. Cahoon, 731 F. Supp. 2d 685, 688 (S.D. Ohio 2010)*; *Hale v. Enerco Grp., Inc., No. 1:10-cv-00867-DAP, 2011 U.S. Dist. LEXIS 781, 2011 WL 49545, at *4 (N.D. Ohio Jan. 5, 2011)*). Courts outside of the Sixth Circuit have agreed that group pleading under the **[*61]** causes of action is permissible "following plaintiff's identification of each specific defendant and their role in the alleged scheme[.]" *Navient Sols., LLC v. L. Offs. of Jeffrey Lohman, No. 119CV461LMBTCB, 2020 U.S. Dist. LEXIS 65648, 2020 WL 1867939, at *7 (E.D. Va. Apr. 14, 2020)* (citing *CSX Transp., Inc. v. Gilkison, No. 5:05CV202, 2012 U.S. Dist. LEXIS 61719, 2012 WL 1598081, at *3, *12 (N.D.W. Va. May 3, 2012)*).

Here, Dobronski has outlined each defendant's role in the violations he alleges under the TCPA, MTCCCA, and MHSSA. Therefore, in the undersigned's opinion, it is not problematic that Dobronski asserts each Count against all defendants. This is not a case where the entire complaint is unclear as to which defendants are liable for which calls. Thus, the undersigned does not recommend that Dobronski's First Amended Complaint be dismissed in its entirety for group pleading nor that Dobronski be ordered to file a more definite statement.

VII. Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Americo's motion to dismiss, (ECF No. 103), Great Western's motion to dismiss, (ECF No. 105), and United's motion to dismiss, (ECF No. 113), be GRANTED and that they be DISMISSED from the case. The undersigned further RECOMMENDS that Family First's motion, (ECF No. 107), Vongdara, Adams, Grant, Powell, Wickham, Igweh, and Bonanno's motion, (ECF No. 106), and Scheifele and Christle's motion, (ECF No. 143), be GRANTED IN PART and DENIED **[*62]** IN PART.

Specifically, Dobronski only has standing to pursue claims based on calls 1, 3, 4, 7, 8, 13, 15, 16, 18, 24, 29, 30, 31, and 33. Claims based on all other calls should be dismissed. Further, Count II should be dismissed except for calls 3 and 13 against defendants Perez, Grant, and Family First. Counts III and IV should be dismissed in their entirety. Count V should be dismissed as to the individual agents, but not as to Family First. Counts VI through X should be dismissed as to all defendants except Vongdara. Count XI should be dismissed in its entirety. Count XII should be dismissed except for the claim under *M.C.L. § 484.125(2)(a)* based on calls 3 and 13. Counts I and XIII should remain in their entirety.

If these recommendations are adopted, the following claims/defendants remain: Count I as to Family First and the individual defendants; Count II as to Perez, Grant, and Family First; Count V as to Family First; Counts VI through X as to Vongdara; Count XII as to Perez, Grant, and Family First; and Count XIII as to Family First and the individual defendants.

Dated: January 19, 2024

Detroit, Michigan

/s/ Kimberly G. Altman

KIMBERLY G. ALTMAN

United States Magistrate Judge

**Table1 (*Return to related document text*)**

I. Introduction

II. Factual Allegations

A. The Scheme Generally

1. Family First's Role

2. Insurance Companies' and Agents' Role

B. Specific Phone Calls

III. Claims

IV. Pending Motions

V. Legal Standards

A. *Fed. R. Civ. P. 12(b)(1)*

B. *Fed. R. Civ. P. 12(b)(6)*

VI. Analysis

A. Seeking Concurrence

B. Standing

1. General

2. Discussion

C. Vicarious Liability

1. Standard

2. Family First

3. Individual Agents

4. Insurance Companies

5. In Sum

D. Causes of Action

1. Count **[*5]** I - Autodialer Calls

2. Count II - Recorded Message Calls

3. Count III - Premature Hang Up

4. Count IV - Abandoned Calls

5. Count V - Do Not Call

6. Count VI-X - Defendants' Written Do Not Call Policy

7. Count XI - Falsified Caller ID

8. Count XII - Violation of the MTCCCA

9. Count XIII - Violation of the MHSSA

E. Willfulness

F. Group Pleading and Motions for More Definite Statement

1. Impermissible Group Pleading

2. More Definite Statement

3. Discussion

VII. Conclusion

**Table1 (*Return to related document text*)**

End of Document