UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,

Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
JNZ INSURANCE SERVICES, INC.,
NICHOLAS O'CONNOR,
GAMBALE INSURANCE GROUP, INC.,
MISAEL MATOS,
NATALIE DELLA AGENCY LLC,
ANA MERCEDES SANTOS,
PREMIER MARKETING SERVICES OF FLORIDA LLC,
and JOHN DOE I-X,

Defendants.

Case No. 2:26-cv-13879
District Judge Matthew F. Leitman
Magistrate Judge Curtis Ivy, Jr.

---

Mark W. Dobronski
P.O. Box 99
Dexter, MI 48130

*Plaintiff*

Joseph N. Tucker (P81807)
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Phone: (502) 540-2360
Joseph.tucker@dinsmore.com

And

Karen S. Hockstad (P47409)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd, Suite 200
Columbus, OH 43215
Karen.hockstad@dinsmore.com

---

*Attorneys for Defendants*
*JNZ Insurance Services Inc.*

**DEFENDANT JNZ INSURANCE SERVICES, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant JNZ Insurance Services, Inc., ("JNZ") by and through undersigned counsel, hereby files its Answer to Plaintiff Mark W. Dobronski's ("Mr. Dobronski") Complaint [ECF No. 1].

Defendant denies, generally and specifically, any and all allegations in the Complaint not specifically admitted in the paragraphs below. Defendant further states that its investigation of the present matter is ongoing. Accordingly, Defendant reserves the right to amend this Answer. Defendant denies any and all allegations contained in the headings in the Complaint.

In response to the separately numbered paragraphs in the Complaint (reproduced below), Defendant states as follows:

**AS TO "INTRODUCTION"**

1. This action arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.111, et seq., and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059. It concerns six unsolicited calls received at Plaintiffs Lima Township residence between January 26 and September 10, 2026, soliciting Allstate automobile insurance (the "Subject Calls").

**RESPONSE:** JNZ admits only that Mr. Dobronski's Complaint purports to seek damages under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.111, et seq., and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059. JNZ lacks information or knowledge sufficient to form a belief about the remaining allegations in Paragraph 1 and therefore denies them.

2. The calls involved upstream callers who qualified Plaintiff and transferred him to insurance producers. Completed transfers resulted in Allstate proposals from Ana Mercedes Santos, Misael Matos, and Nicholas O'Connor; later callers also recited controlled identifying information that Plaintiff had supplied during the April solicitation.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 2 and therefore denies them.

3. Plaintiff seeks statutory damages and enhanced damages for knowing or willful violations. Liability is alleged against each Defendant for the calls that Defendant made, participated in, authorized, or is legally responsible for through the agency relationships described below.

**RESPONSE:** To the extent Paragraph 3 contains allegations about JNZ, JNZ denies the allegations in Paragraph 3 and specifically denies that Mr. Dobronski is entitled to any damages against JNZ whatsoever.

**AS TO "PARTIES"**

4. Plaintiff MARK W. DOBRONSKI is an individual and United States citizen. Plaintiff maintains residences in Orange County, Florida, and Lima Township, Washtenaw County, Michigan.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 4 and therefore denies them.

5. Defendant ALLSTATE INSURANCE COMPANY ("Allstate") is an Illinois corporation with its headquarters at 3100 Sanders Road, Suite 201, Northbrook, Illinois 60062. Allstate is registered and qualified to do business in Florida and conducts business in Florida.

**RESPONSE:** Paragraph 5 contains allegations about Allstate Insurance Company ("Allstate"), and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 5 and therefore denies them.

6. Defendant JNZ INSURANCE SERVICES INC. ("JNZ") is a corporation with a business address at 157 Hampton Point Drive, Suite 2, St. Augustine, Florida 32092.

**RESPONSE:** JNZ admits only that it is a corporation with its principal office address located at 157 Hampton Point Drive, # 2, St. Augustine, Florida 32092.

7. Defendant NICHOLAS O'CONNOR ("O'Connor") is an individual

insurance producer with a business address at 157 Hampton Point Drive, Suite 2, St. Augustine, Florida 32092.

**RESPONSE:** JNZ denies the allegations contained in Paragraph 7.

8. Defendant GAMBALE INSURANCE GROUP, INC. ("Gambale") is a corporation with a business address at 7100 S. Kanner Highway, Stuart, Florida 34997.

**RESPONSE:** Paragraph 8 contains allegations about Gambale Insurance Group, Inc. ("Gambale"), and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 8 and therefore denies them.

9. Defendant MISAEL MATOS ("Matos") is an individual insurance producer. He resides at 9646 SW Purple Martin Way, Stuart, Florida 34997.

**RESPONSE:** Paragraph 9 contains allegations about Misael Matos ("Mr. Matos"), and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 9 and therefore denies them.

10. Defendant NATALIE DELLA AGENCY LLC ("Della Agency") is a Florida limited liability company. Its principal place of business is 3393 W. Vine Street, Suite 302, Kissimmee, Florida 34741.

**RESPONSE:** Paragraph 10 contains allegations about Natalie Della Agency

LLC (“NDA”), and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 10 and therefore denies them.

11. Defendant ANA MERCEDES SANTOS (“Santos”) is an individual insurance producer. She resides at 3520 Jamaica Run Lane, Apartment 1608, Kissimmee, Florida 34741.

**RESPONSE:** Paragraph 11 contains allegations about Ana Mercedes Santos (“Ms. Santos”), and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 11 and therefore denies them.

12. Defendant PREMIER MARKETING SERVICES OF FLORIDA LLC (“Premier”) is a Florida limited liability company. Its principal office is located at 12908 Hyland Circle, Boca Raton, Florida 33428.

**RESPONSE:** Paragraph 12 contains allegations about Premier Marketing Services of Florida LLC (“Premier”), and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 12 and therefore denies them.

13. Defendants JOHN DOE I—X are individuals or entities whose true names and addresses are presently unknown to Plaintiff. Plaintiff will seek leave to substitute their true identities when ascertained.

**RESPONSE:** Paragraph 13 contains allegations about unnamed defendants, and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 13 and therefore denies them.

**<u>AS TO "JURISDICTION"</u>**

14. This Court has subject-matter jurisdiction under M.C.L. § 600.605 and 47 U.S.C. §§ 227(b)(3) and 227(c)(5). Plaintiff seeks damages exceeding $25,000, exclusive of interest and costs, based on separate statutory awards and enhancements for each violation.

**RESPONSE:** JNZ admits only that Mr. Dobronski's Complaint purports to seek damages under the TCPA, the MHSSA, and the FTSA and that this action was removed to this Court because this Court has federal-question jurisdiction over Mr. Dobronski's TCPA claims. JNZ denies the remaining allegations contained in Paragraph 14 and therefore denies them.

15. Plaintiff invokes limited personal jurisdiction over corporate Defendants under M.C.L. § 600.715, over limited liability company Defendants under M.C.L. § 600.735, and over individual Defendants under M.C.L. § 600.705. The claims arise from telephone solicitations that those Defendants or their authorized agents directed to Plaintiff's residential telephone service and that were received and caused injury in Michigan.

**RESPONSE:** Paragraph 15 asserts a legal conclusion requiring no response.

If a response is required, to the extent Paragraph 15 contains allegations about JNZ, JNZ denies such allegations.

16. The jurisdictional conduct attributed to each Defendant is the particular solicitation activity and authorized agency conduct described below. Plaintiff does not rely on an unrelated Defendant's Michigan contacts or on common branding alone to establish jurisdiction.

**RESPONSE:** Paragraph 16 asserts a legal conclusion requiring no response. If a response is required, to the extent Paragraph 16 contains allegations about JNZ, JNZ denies them.

## AS TO "VENUE"

17. Venue is proper in this Court under M.C.L. § 600.1629(1) as the telephone calls alleged herein were received, and thus the original injuries alleged herein occurred, in Washtenaw County.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 17 and therefore denies them.

18. Joinder is proper under MCR 2.206(A)(2) because the claims concern related Allstate insurance solicitations and common questions concerning Allstate's authorization of agency vendor arrangements; joinder also promotes the convenient administration of justice. Plaintiff alleges both each Defendant's own participation

and its responsibility for conduct of other participants under the derivative-liability allegations below.

**RESPONSE:** Paragraph 18 asserts a legal conclusion requiring no response. If a response is required, to the extent Paragraph 18 contains allegations about JNZ, JNZ denies them.

## AS TO "GENERAL ALLEGATIONS"

### Plaintiff's Residential Telephone Service

19. Plaintiff subscribes to and regularly uses 407-xxx-xx56 (the "56 Number") and 407-xxx-xx58 (the "58 Number") for personal and family communications, not business. Both numbers are assigned to service for which Plaintiff is charged on a per-call and per-minute basis.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 19 and therefore denies them.

20. The 56 Number has been registered on the National Do Not Call Registry since May 16, 2025. The 58 Number has been registered since October 2, 2025, and both registrations preceded the respective Subject Calls by more than thirty-one days.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 20 and therefore denies

them.

21. Plaintiff's telephone service permits him to receive calls at his Michigan residence notwithstanding the Florida area code. Plaintiff was physically present at his Lima Township residence when each Subject Call was received and used both numbers as residential telephone service at that residence.

**RESPONSE:** JNZ generally lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 21 and therefore denies them. Specifically, however, Plaintiff's numbers cannot be residential numbers with Florida area codes that he is able to use in the State of Michigan. Such numbers are mobile numbers; not residential numbers.

**Recorded Do Not Call Instruction**

22. In May 2025, Plaintiff installed a recording on the 56 Number that plays to incoming callers before his telephone rings: "Telemarketers, Do Not Call this number." That recording was active before Calls 2 through 6; Plaintiff does not allege that it played during the January call to the 58 Number.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 22 and therefore denies them.

23. The recording communicates a request to stop calling the number actually dialed. Plaintiff alleges receipt by the calling operation when its call

connected to that recording, while identifying below additional notice personally delivered to Matos.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 23 and therefore denies them.

**AS TO "THE CALLS"**

24. The Subject Calls occurred at the following local times while Plaintiff was in Lima Township. Call numbers below are chronological and include the January call as Call 1.

| Cal | Date | Time | Calle | Displayed CLID / CNAM |
|---|---|---|---|---|
| 1 | 01/26 | 11:46 | 58 | 940-202-4612 / none |
| 2 | 04/03 | 1:31 | 56 | 754-400-6817 / none |
| 3 | 09/10 | 10:14 | 56 | 229-231-2428 / |
| 4 | 09/10 | 11:37 | 56 | 720-721-3278 / Private |
| 5 | 09/10 | 11:38 | 56 | 720-721-3278 / Private |
| 6 | 09/10 | 11:40 | 56 | 720-721-3278 / Private |

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 24 and therefore denies them.

**Call 1**

25. On January 26, 2026, at 11:46 A.M., Plaintiff received Call 1 at the 58 Number, displaying 940-202-4612 without caller-name information. Upon

answering, Plaintiff heard a "boink" followed by three to four seconds of delay before a live agent spoke.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 25 and therefore denies them.

26. The agent identified herself as "Luna with Allstate Auto Insurance" and offered a free quote. She then sought identifying and qualifying information from Plaintiff

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 26 and therefore denies them.

27. To identify the source and destination of the unsolicited solicitation, Plaintiff supplied the controlled name Alexander Graham, a false date of birth, a controlled mailing address in Windermere, Florida, and information concerning a 2019 Lincoln Navigator and a 2016 Ford F-150 XLT. The calling operation already possessed and had dialed the 58 Number before obtaining this information.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 27 and therefore denies them.

28. Luna transferred the call, during which Plaintiff heard a recorded

statement: “This call will be recorded.” The receiving person identified herself initially as Ana; Plaintiff had to ask for her surname, Santos, and her company, Allstate.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 28 and therefore denies them.

29. Santos continued the insurance solicitation and sent an Allstate proposal from anasantosl@allstate.com. Her email identified her as a licensed sales producer for The Natalie Della Agency, and the January 26, 2026 proposal identified Alexander Graham, the vehicles described above, Santos as the preparer, and Natalie Delluniversita’s Kissimmee agency address and contact information.

**RESPONSE:** Paragraph 29 contains allegations about Ms. Santos, and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 29 and therefore denies them.

30. Immediately after the call, Plaintiff called 940-202-4612 back. It rang three times and then produced a busy signal, preventing Plaintiff from reaching the solicitor or seller or communicating a do-not-call request through that number.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 30 and therefore denies them.

31. On January 27, 2026, Plaintiff emailed Natalie Delluniversita at ndelluniversita@allstate.com concerning the calls. Plaintiff stated that his number was on the federal registry and that he had no established business relationship with Allstate.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 31 and therefore denies them.

32. That contemporaneous email recorded Santos' s explanation that Della Agency used at least three third-party vendors to transfer prospective leads to its agents, and that Delluniversita handled the vendor arrangements and records. It also recorded Santos's statement that the office had received similar complaints and that Delluniversita was allegedly looking into them.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 32 and therefore denies them.

33. Della Agency's May 1, 2026 annual report identifies Delluniversita as its manager and registered agent, with an address of 34316 Verbena Street, Wesley Chapel, Florida 33545.

**RESPONSE:** Paragraph 33 contains allegations about NDA, and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the

allegations contained in Paragraph 33 and therefore denies them.

34. At 11:49 A.M. on January 27, Delluniversita replied with the link http://pmsfl.com/, identifying the website of Premier Marketing Services of Florida LLC. Separately, Delluniversita told Plaintiff that the company was approved by Allstate and on Allstate's recommended list; Plaintiff attributes that representation to Delluniversita and does not allege that the link-only email itself contains those words.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 34 and therefore denies them.

**Call 2**

35. On April 3, 2026, at 1:31 P.M., Plaintiff received Call 2 at the 56 Number, displaying 754-400-6817 without CNAM.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 35 and therefore denies them.

36. After Plaintiff answered, he heard a "boink," approximately four seconds of silence, and a live caller identifying himself as "Brian with Allstate Insurance."

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief

about the truth of the allegations contained in Paragraph 36 and therefore denies them.

37. Brian stated that Allstate had reduced its prices and asked about Plaintiff's vehicles, accidents, and tickets. Brian transferred the call to Alex, who asked about homeownership and sought personal identifying and qualifying information.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 37 and therefore denies them.

38. Plaintiff supplied the controlled name Carl Carpenter, a false birth date, and a controlled Windermere mailing address to trace the solicitation. Those disclosures occurred after the 56 Number had already been selected and dialed.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 38 and therefore denies them.

39. The call was transferred to a person answering "Allstate, this is Misa speaking." Plaintiff identified that person as Matos, a licensed producer employed by Gambale.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 39 and therefore denies

them.

40. Matos continued the sales pitch and emailed an Allstate proposal from misaelmatos@allstate.com. The April 3 proposal identifies Carl Carpenter, Misa Matos as a licensed producer, and Patrick Gambale's Stuart agency address and telephone number.

**RESPONSE:** Paragraph 40 contains allegations about Mr. Matos, and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 40 and therefore denies them.

41. Plaintiff confronted Matos with the fact that the 56 Number was on the National Do Not Call Registry and that Plaintiff had not consented to the call. Matos stated that Allstate uses call centers to place calls and refer business to Matos and his agency, and claimed that he had no control over them.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 41 and therefore denies them.

42. Plaintiff's callback to 754-400-6817 reached a recording stating that the number was not in service. The displayed number therefore did not provide a functioning means to contact the solicitor or make a do-not-call request.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 42 and therefore denies

them.

**Call 3**

43. On September 10, 2026, at 10:14 P.M., Plaintiff received Call 3 at the 56 Number, displaying 229-231-2428 with CNAM of GEORGETOWN GA.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 43 and therefore denies them.

44. After Plaintiff answered and heard a click and three-to-four-second pause, the caller identified himself as "Simon from your insurance company."

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 44 and therefore denies them.

45. Simon asked whether he was speaking with Carl Carpenter and recited the same controlled identifying information supplied during Call 2.

**RESPONSE**: JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 45 and therefore denies them.

46. Simon then transferred Plaintiff to a person identifying himself as "Nick with Allstate."

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief

about the truth of the allegations contained in Paragraph 46 and therefore denies them.

47. Plaintiff identified Nick as Nicholas O'Connor, an Allstate producer in St. Augustine. O'Connor continued qualifying Plaintiff for automobile insurance and emailed an Allstate quote from noconnor@allstate.com.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 47 and therefore denies them.

48. O'Connor' s email identified him as a licensed sales producer for Richard O'Connor's Allstate Agency at the Hampton Point Drive address, using 904-288-8821. The September 10 proposal identifies Carl Carpenter and Richard O'Connor's agency.

**RESPONSE:** Paragraph 48 contains allegations about Mr. O'Connor, and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 48 and therefore denies them.

49. JNZ's staff listing appearing on the Internet identifies Nicholas O'Connor as a Licensed Commercial Specialist. The Richard OConnor: Allstate Insurance Facebook page displays JNZ branding, the same Hampton Point Drive address, telephone 904-288-8821, and a link to JNZ's quote-request page. These matching identifiers connect JNZ with the agency through which O'Connor

conducted the solicitation.

**RESPONSE:** To the extent the allegations in Paragraph 49 are directed to JNZ, JNZ states that its website speaks for itself and denies any allegations inconsistent with the contents of that website. As to the remaining allegations in Paragraph 49, JNZ lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies them.

50. Plaintiff's callback to 229-231-2428 rang unanswered. Plaintiff was unable to reach the caller or communicate a do-not-call demand through that callback.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 50 and therefore denies them.

**Calls 4 Through 6**

51. On September 10, 2026, at 11:37 A.M., Plaintiff received Call 4 at the 56 Number display displaying 720-721-3278 and "Private."

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 51 and therefore denies them.

52. Plaintiff was occupied and could not answer before ringing stopped; he does not allege hearing a voice or connection sound during that call.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 52 and therefore denies them.

53. One minute later, at 11:38 A.M., Call 5 arrived at the 56 Number from the same displayed number and name.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 53 and therefore denies them.

54. Plaintiff answered the incoming call and after a click and three-to-four-second pause, a male asked whether he was speaking with “Mr. Carl” and identified himself as “Sam from Allstate.”

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 54 and therefore denies them.

55. Sam offered a cheaper quote and recited the same controlled identifying information supplied during Call 2.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 55 and therefore denies them.

56. Approximately one minute and forty-five seconds into the

conversation, Sam suddenly stated that he would call back and abruptly hung up.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 56 and therefore denies them.

57. At 11:40 A.M., Call 6 arrived at the 56 Number from the same displayed number and name. After a click and three-to-four-second pause, the same speaker resumed the conversation, saying that "there had been a disconnecting problem," and again recited the controlled information. Sam stated that he was transferring Plaintiff, but the call dropped.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 57 and therefore denies them.

58. Neither Call 5 nor Call 6 produced a completed transfer identifying an additional downstream agency.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 58 and therefore denies them.

59. Callbacks to 720-721-3278 reached a telephone tree requiring the caller to spell the name of the person sought. That system supplied no available means for Plaintiff to identify the responsible solicitor or make a do-not-call request.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 59 and therefore denies them.

60. The timing, identical displayed number, and repeated caller in Calls 5 and 6 support the inference that unanswered Call 4 was part of the same solicitation sequence. The common Carl Carpenter information also links that sequence to the lead obtained during Call 2 and used during Call 3.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 60 and therefore denies them.

## AS TO "SPECIFIC ALLEGATIONS"

### Lack of Prior Consent and Controlled Information

61. Plaintiff did not request the Subject Calls or give any Defendant prior express consent or prior express written consent to make them. Plaintiff had no established business relationship with Allstate giving rise to the solicitations.

**RESPONSE:** JNZ denies the allegations contained in Paragraph 61.

62. Where the TCPA requires prior express consent, possession of a telephone number does not itself establish that consent; consent may not simply be presumed. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Red. 7961, 7991,1152 (2015).

**RESPONSE:** Paragraph 62 asserts a legal conclusion requiring no response. If a response is required, JNZ states that the TCPA speaks for itself and denies all allegations contained in Paragraph 62 inconsistent with the TCPA.

63. Plaintiff did not submit either called number to Defendants as a request for insurance solicitation, or authorize another person to do so. The callers possessed the numbers before Plaintiff supplied any controlled identifying information.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 63 and therefore denies them.

64. Plaintiffs responses to unsolicited callers were investigative efforts to identify the persons responsible. Plaintiff alleges no agreement authorizing future telemarketing; receipt of an emailed proposal was not a signed authorization for automated telephone solicitations.

**RESPONSE:** JNZ denies the allegation that Plaintiff supplying a fake name with his phone number fails to constitute consent or authorization to be called and further denies the remaining allegations contained in Paragraph 64.

65. Statements or disclosures occurring after a call began did not supply the prior consent required to initiate that call. Plaintiff's own recorded greeting is not alleged to be a prerecorded voice used by Defendants. The FCC has explained that seeking consent during a telemarketing call does not supply the prior consent

required to deliver the message initiating that call. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Red. 14014, ¶ 142 (2003).

**RESPONSE:** Paragraph 65 asserts a legal conclusion requiring no response. If a response is required, to the extent Paragraph 65 contains allegations about JNZ, JNZ denies the allegations contained in Paragraph 65.

**Calling Technology**

66. The answered calls repeatedly exhibited an electronic connection sound and several seconds of delay before a live salesperson spoke. The callers then conducted scripted qualification and transferred Plaintiff to downstream sales personnel, and the September calls repeatedly used the same controlled lead information.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 66 and therefore denies them.

67. Based on those features, Plaintiff alleges upon information and belief that the originating operations used automated dialing equipment. Plaintiff further alleges upon information and belief that the equipment used to place the Subject Calls employed random or sequential telephone-number generation in storing or producing numbers to be called and dialing them, within 47 U.S.C. § 227(a)(1).

**RESPONSE:** Paragraph 67 asserts a legal conclusion requiring no response. If a response is required, to the extent Paragraph 67 contains allegations about JNZ, JNZ denies use of or authorization to use equipment that is capable of random or sequential number generation and no allegations within Plaintiff's complaint support such allegation.

68. The internal selection and dialing functions, configuration, and campaign records are in the possession of the calling operations. Plaintiffs allegation concerning Call 4 is inferential, based on its immediate proximity to Calls 5 and 6 and their identical displayed number.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 68 and therefore denies them.

**Notice and Injury**

69. The 56 Number's recorded demand preceded every April and September call to that number. The April conversation with Matos additionally supplied actual notice that Plaintiff had not consented and that the number was registered.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 69 and therefore denies them.

70. The September callers used the same controlled information obtained in April, permitting an inference that Plaintiffs lead remained in the calling operation's records after the April notice. The subsequent solicitations support the allegation that the responsible operation failed to suppress the 56 Number.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 70 and therefore denies them.

71. The calls interrupted Plaintiffs activities, occupied his residential telephone service, and invaded his privacy.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 71 and therefore denies them. Specifically, JNZ denies that Plaintiff's 56 number is a residential number.

72. Each call subjected Plaintiff to per-call and per-minute charges.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 72 and therefore denies them. Denying further, residential lines are not generally charged by call and per minute.

73. The registry listings, recorded instruction, April notice, recurring use of the controlled information, and failure to provide workable callback paths support Plaintiffs allegation of knowing or willful violations by the responsible participants.

The knowledge attributable to each principal depends on the agency and notice relationships pleaded below.

**RESPONSE:** JNZ denies the allegations contained in Paragraph 73, including any allegation that JNZ knowingly or willfully violated any law or that any knowledge is attributable to JNZ as alleged. The remaining allegations in Paragraph 73 assert legal conclusions to which no response is required. If a response is required, to the extent Paragraph 73 contains allegations about JNZ, JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 73 and therefore denies them.

## AS TO "VICARIOUS AND DERIVATIVE LIABILITY / CONCERTED ACTION"

### Allstate's Authorization of Agency Vendors

74. Allstate's "Restricted Third-Party Vendors Announcement - Update October 11, 2024" states that agency owners are generally permitted to retain vendors to assist them in conducting business on Allstate's behalf. It expressly addresses vendor services involving telephony, leads, and prospect solicitation.

**RESPONSE:** Paragraph 74 contains allegations about Allstate, and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 74 and therefore denies them.

75. The announcement requires vendor use to comply with Allstate Agency Standards and applicable law. Allstate reserves authority to prohibit particular

vendors immediately, and warns that failure to comply is a breach of the agency agreement potentially resulting in termination.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 75 and therefore denies them.

76. The announcement also directs agents to a resource titled “Warm lead/Live call transfer contracted vendors.” It bears Allstate Insurance Company’s copyright notice, providing a connection to the particular Allstate entity named here.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 76 and therefore denies them.

77. Plaintiff alleges that Allstate authorized and encouraged its agencies to use telemarketing vendors to sell Allstate insurance, based on its vendor announcement and Delluniversita’s statement that Premier was approved by Allstate and on its recommended list. Allstate retained authority to restrict those vendor arrangements.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 77 and therefore denies them.

78. Premier’s absence from the pictured restricted list is not itself alleged

to establish approval. Plaintiff relies instead on Delluniversita's representation, the agency's actual receipt of the transfer, and Allstate's express authorization and oversight of vendor arrangements.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 78 and therefore denies them.

**The Particular Agency Relationships**

79. Plaintiff alleges upon information and belief that Della Agency retained or authorized Premier to generate and deliver live automobile-insurance prospects, that Premier acted through Luna or the upstream personnel responsible for Call 1, and that Santos completed the contemplated sales function. This inference rests on the completed transfer, proposal, Santos's description of the agency's vendor arrangements, and Delluniversita's identification of pmsfl.com.

**RESPONSE:** Paragraph 79 contains allegations about other defendants, and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 79 and therefore denies them.

80. Plaintiff alleges upon information and belief that Gambale authorized the originating and intermediate callers responsible for Call 2 to qualify and deliver insurance prospects to Matos. Matos's receipt and completion of the transfer, proposal, and explanation of the call-center referral process support that allegation.

**RESPONSE:** Paragraph 80 contains allegations about other defendants, and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 80 and therefore denies them.

81. Plaintiff alleges upon information and belief that JNZ authorized the operation responsible for Call 3 to deliver qualified insurance prospects to O'Connor. The completed transfer, his agency identification, the Allstate quote, and JNZ's public business records support that allegation.

**RESPONSE:** JNZ denies the allegations contained in Paragraph 81.

82. Plaintiff alleges upon information and belief that these agencies acted within Allstate's authorization to market its insurance and retain vendors for that purpose. The agency arrangements contemplated qualifying prospects, routing live calls, and preparing Allstate proposals, rather than unsolicited referrals wholly outside the recipients' business arrangements. Allstate provides the participating insurance agents access to its computer systems for insurance pricing and provides Allstate email accounts. The agents used Allstate pricing and proposal resources and their Allstate email accounts to prepare and transmit the proposals generated through the Subject Calls. Access to seller-controlled systems and detailed product-pricing information is among the indicia of apparent authority identified in In re Joint Petition Filed by DISH Network, LLC, 28 FCC Rcd. 6574, 6592-93, ¶ 46 (2013).

**RESPONSE:** Paragraph 82 asserts a legal conclusion requiring no response.

If a response is required, to the extent Paragraph 82 contains allegations about JNZ, JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 82 and therefore denies them.

83. Santos, Matos, and O'Connor are sued for their personal solicitation conduct and any calling activity they personally caused, authorized, or adopted, not merely for holding a producer position. Their respective agency employers are responsible for conduct within the scope of the employment and agency relationships alleged.

**RESPONSE:** Paragraph 83 contains allegations about other defendants, and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 83 and therefore denies them.

84. Allstate is alleged to be vicariously liable under actual-authority and authorized-subagency principles for the conduct undertaken within those arrangements. Plaintiff relies on the federal agency framework recognized in In re Joint Petition Filed by DISH Network, LLC, 28 FCC Rcd. 6574, ¶¶ 28-34, 46 (2013). A seller may be vicariously liable for third-party telemarketers' TCPA violations under federal common-law agency principles, including actual authority, apparent authority, and ratification. Id. at 6584, ¶ 28. These principles apply to the agency relationships and conduct alleged here.

**RESPONSE:** Paragraph 84 contains allegations about Allstate, and not JNZ.

JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 84 and therefore denies them. Paragraph 84 further includes legal conclusions to which no response is necessary. To the extent a response is necessary, JNZ denies them.

85. To the extent established by discovery, Plaintiff alternatively relies on apparent authority traceable to Allstate's own manifestations, including its authorization of branded agencies, sales materials, and vendor arrangements, and ratification through knowing acceptance of the solicitation activity. Plaintiff does not equate a caller's unilateral use of Allstate's name, or mere receipt of a complaint, with conclusive proof of either theory.

**RESPONSE:** Paragraph 85 contains speculative allegations which are legal conclusions about Allstate, and not JNZ. JNZ denies these allegations for itself.

86. The January claim is attributed to Premier, Della Agency, Santos, Allstate, and the responsible Does; the April claim to Gambale, Matos, Allstate, and the responsible Does; and Call 3 to JNZ, O'Connor, Allstate, and the responsible Does. Calls 4 through 6 are attributed to their originating operation and Allstate under the alleged solicitation and agency relationships; the precise downstream agency allocation remains within the routing records. The responsible Doe participants include the callers identifying themselves as Luna, Brian, Alex, Simon, and Sam, and the persons or entities operating, directing, or arranging their calls.

**RESPONSE:** To the extent Paragraph 86 contains allegations about JNZ, JNZ denies the allegations contained in Paragraph 86. As to the remaining allegations contained in Paragraph 86, JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations and therefore denies them.

87. The foregoing call-specific attributions identify the participants presently connected to particular calls by the transfers, proposals, communications, and controlled information. Plaintiff also alleges responsibility for acts performed by others under the agency, ratification, concert-of-action, and civil-conspiracy principles set forth below; personal dialing of every call is not the basis of the derivative claims.

**RESPONSE:** To the extent Paragraph 87 contains allegations about JNZ, JNZ denies the allegations contained in Paragraph 87. As to the remaining allegations contained in Paragraph 87, JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations and therefore denies them.

**Concert of Action, Civil Conspiracy, and Joint Liability**

88. Plaintiff pleads concert of action and civil conspiracy as alternative derivative theories for the independently actionable conduct alleged in this Complaint. Plaintiff relies on the underlying TCPA, MHSSA, and FTSA violations as breaches of duties imposed by law and seeks to attribute those violations to the participants legally responsible for the concerted conduct.

**RESPONSE:** To the extent Paragraph 88 contains allegations about JNZ, JNZ denies the allegations contained in Paragraph 88. JNZ specifically denies that it committed any underlying violation of the TCPA, MHSA, FTSA, or any other law.

89. Under Michigan's concert-of-action doctrine, persons who act tortiously pursuant to a common design may be held responsible for the entire resulting injury. Identification of the participant who directly caused a particular injury does not preclude responsibility of the other participants. Abel v. Eli Lilly & Co., 418 Mich. 311, 337-39, 343 N.W.2d 164 (1984).

**RESPONSE:** Paragraph 89 asserts a legal conclusion requiring no response. If a response is required, JNZ states that Michigan's concert-of-action doctrine speaks for itself and denies any allegation contained in Paragraph 89 that is inconsistent with Michigan's concert-of-action doctrine.

90. A civil conspiracy may consist of concerted action by two or more persons to accomplish an unlawful objective or a lawful objective through unlawful means. Liability depends upon an independently actionable underlying wrong committed in furtherance of that purpose. Green v. Pontiac Public Library, 350 Mich. App. 478, 495, 32 N.W.3d 487 (2024).

**RESPONSE:** Paragraph 90 asserts a legal conclusion requiring no response. If a response is required, JNZ states that the applicable Michigan law at issue speaks for itself and denies any allegation contained in Paragraph 90 that is inconsistent

with the applicable Michigan law.

91. The common commercial objective was to sell Allstate automobile insurance through coordinated outbound solicitation, qualification, live transfer, and preparation of proposals. Allstate authorized agency vendor arrangements, retained power to restrict vendors, and supplied pricing resources and Allstate email accounts; the agencies and producers received the transferred prospects and performed the sales functions. Delluniversita's identification of Premier as approved and recommended by Allstate further supports Plaintiffs allegation of an authorized solicitation process.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 91 and therefore denies them.

92. For Call 1, Plaintiff alleges that Premier and the responsible upstream callers generated and transferred the prospect, Della Agency arranged for such transfers, and Santos continued the solicitation and prepared the Allstate proposal. For Call 2, upstream callers obtained the controlled Carl Carpenter information and transferred Plaintiff to Matos at Gambale; that same information was later used in the September solicitations, including the completed transfer to O'Connor at JNZ. The completed transfers, corresponding proposals, and reuse of controlled information support the inference that these participants performed coordinated

functions rather than coincidentally contacting the same consumer.

**RESPONSE:** Paragraph 92 contains allegations about other defendants, and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 92 and therefore denies them.

93. Plaintiff alleges upon information and belief that the participants identified in the foregoing call chains agreed to and cooperated in obtaining, qualifying, transferring, and soliciting the telephone prospects described above. The unlawful means alleged include initiating the Subject Calls to registered residential numbers without the required consent, failing to provide required identification and functioning callback facilities, and, in the April-September sequence, continuing the solicitations after the recorded demand and April notice. The retained and reused controlled information supports Plaintiffs allegation that the continuing solicitation activity was part of the agreed process rather than a series of unrelated referrals.

**RESPONSE:** Paragraph 93 contains allegations about other defendants, and not JNZ. JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 93 and therefore denies them.

94. The FCC has explained that imposing vicarious liability upon a seller does not relieve the third-party telemarketer of joint liability for the unlawful calls. In re Joint Petition Filed by DISH Network, LLC, 28 FCC Rcd. 6574, 6591-92, ¶ 44 (2013). Plaintiff alleges Allstate's responsibility for all six Subject Calls under the

agency relationships pleaded above and seeks shared liability with the telemarketers and other participants legally responsible for those calls.

**RESPONSE:** To the extent the allegations in Paragraph 94 are directed to JNZ, JNZ denies the allegations in Paragraph 94. The remaining allegations in Paragraph 94 assert a legal conclusion requiring no response. To the extent a response is required, denied.

95. Plaintiff seeks joint and several liability against all Defendants for the actionable conduct undertaken within the scope and furtherance of the common design in which they participated or for which they are otherwise derivatively responsible. A participant's responsibility under these theories includes actionable acts performed by other participants in furtherance of that common design, even where the participant did not personally dial or speak during a particular call.

**RESPONSE:** To the extent the allegations in Paragraph 95 are directed to JNZ, JNZ denies the allegations in Paragraph 95. To the extent Paragraph 95 states legal conclusions, no response is required. To the extent a response is deemed necessary, JNZ denies the allegations in Paragraph 95. JNZ lacks information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 95 and therefore denies them.

96. The contracts, vendor approvals, campaign instructions, lead identifiers, routing histories, pricing-system access records, payment records, and

communications establishing the scope of the arrangements are principally within Defendants' possession. Plaintiff pleads the derivative theories in the alternative and requests allocation by Defendant and call to the extent the Court determines that particular conduct falls outside a Defendant's shared responsibility. Plaintiff seeks one satisfaction of any shared award, while preserving recovery for separately compensable violations.

**RESPONSE:** To the extent the allegations in Paragraph 96 are directed to JNZ, JNZ denies the allegations in Paragraph 96. To the extent Paragraph 96 states legal conclusions, no response is required. To the extent a response is deemed necessary, JNZ denies the allegations in Paragraph 96. JNZ lacks information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 96 and therefore denies them.

## AS TO "CAUSES OF ACTION"

## AS TO "COUNT I"
## "Violation of the TCPA – 47 C.F.R. § 64.1200(a)(1)(iii)"

97. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**RESPONSE:** JNZ reasserts all its previous averments and denials.

98. Calls 1 through 6 were made to numbers assigned to service charging Plaintiff for calls, without prior express consent and for no emergency purpose.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 98 and therefore denies them.

99. Plaintiff alleges use of a qualifying automatic telephone dialing system as described above.

**RESPONSE:** JNZ admits that Plaintiff alleges use of a qualifying automatic telephone dialing system but states that Plaintiff's own allegations undermine such allegations and therefore JNZ denies them.

100. Plaintiff seeks $500 for each of six actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation, under § 227(b)(3).

**RESPONSE:** Paragraph 100 does not contain any factual allegations to which JNZ is required to respond. If a response is required, JNZ denies that Mr. Dobronski is entitled to any relief from JNZ in this action whatsoever.

**AS TO "COUNT II"**
**"Violation of the TCPA – 47 C.F.R. § 64.1200(a)(2)"**

101. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**RESPONSE:** JNZ reasserts all its previous averments and denials.

102. The six calls solicited automobile insurance and thus were telemarketing.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief

about the truth of the allegations in Paragraph 102 and therefore denies them.

103. Plaintiff alleges that the originating operations used qualifying automated dialing equipment without his prior express written consent.

**RESPONSE:** Based on Plaintiff's allegations throughout the complaint, JNZ denies this allegation.

104. No signed agreement authorized the Subject Calls to either number. The controlled information and proposals generated after the calls began did not provide such an agreement.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 104 and therefore denies them.

105. Plaintiff seeks $500 for each of six actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation, under § 227(b)(3).

**RESPONSE:** Paragraph 105 does not contain any factual allegations to which JNZ is required to respond. If a response is required, JNZ denies that Mr. Dobronski is entitled to any relief from JNZ in this action whatsoever.

**AS TO "COUNT III"**
**"Violation of the TCPA – 47 C.F.R. § 64.1200(c)(2)"**

106. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**RESPONSE:** JNZ reasserts all its previous averments and denials.

107. Both called numbers were residential and registered more than thirty-one days before the respective solicitations. Plaintiff alleges six prohibited solicitations, including unanswered Call 4 based on its relationship to the immediately following Allstate calls.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the DNC registration allegations in Paragraph 107 and therefore denies them. JNZ denies that Plaintiff's called numbers are "residential."

108. All six calls occurred within twelve months and were made by or on behalf of Allstate under the pleaded agency relationships. The more-than-one-call requirement is alleged against Allstate and each other Defendant to whom more than one qualifying call is attributable under the direct, agency, and derivative-liability allegations; Plaintiff relies on those substantive relationships to establish attribution.

**RESPONSE:** To the extent Paragraph 108 contains allegations about JNZ, JNZ denies the allegations in Paragraph 108. To the extent Paragraph 108 contains legal conclusions, no response is required. To the extent a response is deemed necessary, the allegations are denied. JNZ lacks information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 108 and therefore denies them.

109. Plaintiff seeks $500 for each of six actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation, under § 227(c)(5).

**RESPONSE:** Paragraph 109 does not contain any factual allegations to which JNZ is required to respond. If a response is required, JNZ denies that Mr. Dobronski is entitled to any relief from JNZ in this action whatsoever.

**AS TO "COUNT IV"**
**"Violation of the TCPA – 47 C.F.R. § 64.1200(d)(4)"**

110. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**RESPONSE:** JNZ reasserts all its previous averments and denials.

111. The answered calls were Calls 1, 2, 3, 5, and 6. The upstream callers supplied first names or generic descriptions and failed to provide complete identification of the responsible solicitation entities and an appropriate contact number or address during their solicitation activity.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 111 and therefore denies them.

112. Santos supplied her surname and Allstate identification only after questioning; other callers used "your insurance company," first-name-only introductions, or resumed soliciting without identification. Plaintiff acknowledges that the later proposals identified the receiving agencies and alleges the deficiencies in the live calling activity, not that no Allstate identification ever occurred.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief

about the truth of the allegations in Paragraph 112 and therefore denies them.

113. Plaintiff seeks $500 for each of six actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation, under § 227(c)(5).

**RESPONSE:** Paragraph 113 does not contain any factual allegations to which JNZ is required to respond. If a response is required, JNZ denies that Mr. Dobronski is entitled to any relief from JNZ in this action whatsoever.

**AS TO "COUNT V"**
**"Violation of the TCPA – 47 C.F.R. §§ 64.1200(d)(3), (d)(6)"**

114. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**RESPONSE:** JNZ reasserts all its previous averments and denials.

115. Plaintiff delivered the recorded request to the operation calling the 56 Number and personally notified Matos during Call 2 of the registry listing and lack of consent. The September calls followed months later, using the same controlled lead information obtained in April.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 115 and therefore denies them.

116. Plaintiff alleges that the responsible calling operation failed to record, retain, communicate, and implement the request, and that the responsibleseller failed

to ensure the request was honored. Calls 3 through 6 constitute the subsequent calls alleged under this Count, after the maximum implementation period had elapsed.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 116 and therefore denies them.

117. Plaintiff seeks $500 for each of five actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation, under § 227(c)(5).

**RESPONSE:** Paragraph 117 does not contain any factual allegations to which JNZ is required to respond. If a response is required, JNZ denies that Mr. Dobronski is entitled to any relief from JNZ in this action whatsoever.

**<u>AS TO "COUNT VI"</u>**
**"Violation of the TCPA – 47 C.F.R. § 64.1601(e)"**

118. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**RESPONSE:** JNZ reasserts all its previous averments and denials.

119. The displayed callback numbers produced a busy signal after three rings, a not-in-service recording, unanswered ringing, or a name-spelling tree without an available DNC mechanism. Plaintiff alleges that the numbers transmitted for Calls 1 through 6 failed to provide the required means to make a do-not-call request during regular business hours.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 119 and therefore denies them.

120. Plaintiff also alleges deficient name transmission to the extent the telemarketer’s name was available through its carrier. The claim is not based solely on the absence of a CNAM display; it includes the particular callback failures described above.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 120 and therefore denies them.

121. Plaintiff asserts that § 64.1601(e) is privately enforceable under § 227(c)(5). Plaintiff acknowledges the contrary holding in Dobronski v. Transamerica Life Insurance Co., 347 Mich. App. 92 (2023), and preserves his federal-law position for reconsideration or appellate review without representing that contrary Michigan authority has been overruled.

**RESPONSE:** Paragraph 121 asserts a legal conclusion requiring no response. JNZ states that the statutory authority referenced in Paragraph 121 speaks for itself and denies any allegations inconsistent with its plain language.

122. Plaintiff seeks $500 for each of six actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation, under § 227(c)(5).

**RESPONSE:** Paragraph 122 does not contain any factual allegations to which JNZ is required to respond. If a response is required, JNZ denies that Mr. Dobronski is entitled to any relief from JNZ in this action whatsoever.

**AS TO "COUNT VII"**
**"Violation of the MHSSA – M.C.L §§ 445.111a(5), 445.111b, 445.111c(1)(f), (g), and (3)"**

123. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**RESPONSE:** JNZ reasserts all its previous averments and denials.

124. Plaintiff was a residential telephone subscriber at his residence in Washtenaw County, Michigan when he received the calls. The answered solicitations were voice communications encouraging purchase of automobile insurance, and the callers and responsible principals acted as telephone solicitors. The unanswered call can reasonably be inferred to have been the same.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief as to whether Plaintiff was a residential telephone subscriber at his residence in Washtenaw County, Michigan when he received the calls but states that the numbers at which he received the calls have Florida area codes which means such numbers are not residential; but mobile. JNZ denies all other allegations contained in Paragraph 124.

125. The were made to numbers registered on the do-not-call registry and

involved the identification deficiencies described above. The September calls also followed Plaintiffs recorded request and April notice, supporting the claim under M.C.L. § 445.111c(1)(g).

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 125 and therefore denies them.

126. Plaintiff alleges violations of the telephone-solicitation provisions independently of whether a completed home solicitation sale occurred. The commercial callers were not charitable, public-safety, or political solicitors within M.C.L. § 445.111e.

**RESPONSE:** To the extent the allegations in Paragraph 126 are directed to JNZ, JNZ denies the allegations contained in Paragraph 126. To the extent Paragraph 126 references M.C.L. § 445.111e, JNZ states that the statute speaks for itself and denies any allegations inconsistent with its terms. JNZ lacks information or knowledge sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 126 and therefore denies them.

127. Plaintiff seeks $250 for each of six actionable calls, totaling $1,500.

**RESPONSE:** Paragraph 127 does not contain any factual allegations to which JNZ is required to respond. If a response is required, JNZ denies that Mr. Dobronski is entitled to any relief from JNZ in this action whatsoever.

**AS TO "COUNT VIII"**
**"Violation of the FTSA – Fla. Stat. § 501.059(2), (8)(a)-(b), and (10)"**

128. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**RESPONSE:** JNZ reasserts all its previous averments and denials.

129. This Count concerns only Calls 1 and 2, on January 26 and April 3, 2026. Plaintiff alleges upon information and belief that those solicitations were conducted in material part from Florida through the Kissimmee and Stuart agencies and their participating producers, in addition to their originating lead-generation operations.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 129 and therefore denies them.

130. Both called numbers bear Florida area code 407, and Plaintiff maintains a Florida residence, but Plaintiff expressly acknowledges receiving the calls in Michigan. Florida coverage is alleged on the Florida solicitation activities and agency participation, not solely on a displayed originating area code.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 130 and therefore denies them.

131. Luna, Brian, and Alex did not immediately identify their true first and last names and the businesses for which they solicited. Santos initially provided only Ana, with her surname and business supplied in response to Plaintiffs questions.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 131 and therefore denies them.

132. The displayed January number rang three times and went busy on immediate callback; the April number produced a not-in-service recording. Plaintiff alleges failure to provide numbers capable of connecting the recipient to the solicitor or seller as required by subsection (8)(b).

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 132 and therefore denies them.

133. Plaintiff additionally alleges upon information and belief that the responsible callers used a system for automated selection and dialing without prior express written consent, contrary to subsection (8)(a). The FTSA claim is independently supported by the identification and callback allegations and does not depend exclusively on proof of automated technology.

**RESPONSE:** JNZ lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 133 and therefore denies

them.

134. Plaintiff seeks $500 for each of these two actionable calls, with discretionary trebling for knowing or willful violations to a maximum of $3,000.

**RESPONSE:** Paragraph 134 does not contain any factual allegations to which JNZ is required to respond. If a response is required, JNZ denies that Mr. Dobronski is entitled to any relief from JNZ in this action whatsoever.

## AS TO "PRAYER FOR RELIEF"

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against the Defendants responsible for the violations proved, as follows:

**A. Liability and Allocation**

Joint and several liability against all Defendants for the actionable calls and violations attributable to them under the agency, ratification, concert-of-action, and civil-conspiracy allegations, including acts of other participants within the scope and furtherance of the common design for which they are legally responsible. Alternatively, Plaintiff requests allocation by Defendant and call to the extent the Court determines that responsibility is not shared. Plaintiff requests only one satisfaction of any shared award, while preserving separate recovery for independently compensable violations.

**B. TCPA Damages**

Damages as follows:

| | |
|---|---|
| Count I | 6 violations |
| Count II | 6 violations |
| Count III | 6 violations |
| Count IV | 6 violations |
| Count V | 5 violations |
| Count VI | 6 violations |

A total of 35 violations at $500.00 per violation for damages of $17,500.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $52,500.00.

**C. MHSSA Damages**

Under Count VII, a total of six actionable calls at $250 each, for total damages of $1,500.00.

**D. FTSA Damages:** Under Count VIII, a total of two actionable calls at $500 each, for a total of $1,000, trebled for knowing or willful violations, for total damages of $3,000.00.

**E. Total Judgment Demanded**

Plaintiff requests total enhanced statutory damages of FIFTY SEVEN THOUSAND DOLLARS ($57,000).

**F. Costs and Interest**

Plaintiff further requests taxable costs, disbursements, prejudgment and postjudgment interest as permitted by law, and such further relief within this Court's jurisdiction as is just and proper

**RESPONSE:** Mr. Dobronski's Prayer for Relief does not contain any factual

allegations to which JNZ is required to respond. JNZ, however, denies that Mr. Dobronski is entitled to any relief from JNZ in this action whatsoever.

## **JNZ'S AFFIRMATIVE DEFENSES**

For its affirmative defenses to Mr. Dobronski's claims, JNZ states as follows:

### **FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a plausible claim against JNZ upon which relief can be granted.

### **SECOND AFFIRMATIVE DEFENSE**

Mr. Dobronski lacks standing to assert, in whole or part, the claims and demands for relief in the Complaint.

### **THIRD AFFIRMATIVE DEFENSE**

The acts or omissions of third parties for whom JNZ is not responsible, caused Mr. Dobronski's damages, if any.

### **FOURTH AFFIRMATIVE DEFENSE**

Mr. Dobronski's failure to mitigate damages, if any, bars or limits any recovery.

### **FIFTH AFFIRMATIVE DEFENSE**

Mr. Dobronski may have waived any claims against JNZ.

### **SIXTH AFFIRMATIVE DEFENSE**

To the extent any violation of law took place, the violation was not intentional

and resulted from a bona fide error that occurred notwithstanding the maintenance or procedures reasonably adapted to avoid such errors.

**SEVENTH AFFIRMATIVE DEFENSE**

The statute of limitations may bar Mr. Dobronski's claims.

**EIGHTH AFFIRMATIVE DEFENSE**

The Complaint fails to state a valid claim for costs.

**NINTH AFFIRMATIVE DEFENSE**

The statutory damages provisions of the TCPA and statutory penalties sought by Plaintiff violate the safeguards guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution of the United States, in addition to violating the Due Process Clause of the Fifth and Fourteenth Amendments, because they constitute excessive fines and are grossly disproportionate to any actual harm that may be suffered by Plaintiff and the members of the putative class.

**TENTH AFFIRMATIVE DEFENSE**

To the extent JNZ has an agency relationship with the co-defendants, JNZ directed such agents to comply with all laws, including the TCPA, and JNZ cannot be held liable – vicariously or otherwise – for the failed actions of its agents.

**ELEVENTH AFFIRMATIVE DEFENSE**

JNZ is not liable to Mr. Dobronski because it acted reasonably and with due care and implemented reasonable practices and procedures to effectively prevent

telephone solicitations in violation of the regulations prescribed under 47 U.S.C. §227 and/or other laws.

**TWELFTH AFFIRMATIVE DEFENSE**

Mr. Dobronski's Complaint and each purported claim contained therein are barred in whole or in part to the extent that Mr. Dobronski consented to the phone calls.

**THIRTEENTH AFFIRMATIVE DEFENSE**

The MHSSA claims must fail because the calls did not originate in Michigan.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Treble damages are inappropriate as JNZ has not acted willfully or knowingly in violation of the TCPA.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Mr. Dobronski's Complaint fails to the extent that Mr. Dobronski lacks standing. Mr. Dobronski's alleged damages, if any, are speculative or uncertain and not compensable, and/or Mr. Dobronski cannot recover from JNZ because the Complaint fails to allege, or Mr. Dobronski cannot maintain, an actual injury-in-fact which deprives the Court of Article III jurisdiction. Further, any damages that Mr. Dobronski claims are not fairly traceable to the purported statutory violation Mr. Dobronski raises.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Mr. Dobronski may have released any claims against JNZ.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Mr. Dobronski's claims asserted in the Complaint are barred, in whole or part, by the doctrines of waiver, estoppel, laches, unclean hands, ratifications, and/or applicable statutes of limitations.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

The interpretations of the Telephone Consumer Protection Act ("TCPA") upon which Mr. Dobronski's Complaint is based are unconstitutionally vague and overbroad and thus violate the Due Process Clause of the Fifth Amendment to the United States Constitution, and the Due Process provisions of the Fourteenth Amendment to the United States Constitution.

**NINETEENTH AFFIRMATIVE DEFENSE**

Mr. Dobronski's Complaint and each purported claim contained therein are barred to the extent that Mr. Dobronski had an established business relationship with the caller.

**TWENTIETH AFFIRMATIVE DEFENSE**

Mr. Dobronski's damages if any, have been caused by his own action or inaction.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Mr. Dobronski is not entitled to attorney's fees, punitive damages, treble damages, exemplary damages, or compensatory damages for his claims.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Mr. Dobronski's claims based on violations of the national Do-Not-Call regulations fail because those regulations were not promulgated within the time limits set forth in 47 U.S.C. 227(c).

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

Mr. Dobronski is a serial and professional TCPA litigant. Any alleged injury was known, anticipated, or voluntarily incurred for the purpose of litigation. Accordingly, Mr. Dobronski is not entitled to treble damages under the TCPA.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

JNZ reserves the right to amend or add more defenses or affirmative defenses as necessary.

**WHEREFORE**, Defendant JNZ respectfully requests that the Court:

1. Dismiss Mr. Dobronski's Petition with prejudice;

2. Enter judgment in JNZ's favor and direct Mr. Dobronski to recover nothing from JNZ;

3. Grant JNZ such other and further relief as this Court deems just and proper.

Date: October 20, 2026

Respectfully submitted,

*/s/ Karen S. Hockstad*
Joseph N. Tucker (P81807)
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Phone: (502) 540-2360
Joseph.tucker@dinsmore.com

And

Karen S. Hockstad (P47409)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd, Suite 200
Columbus, OH 43215
Karen.hockstad@dinsmore.com
*Attorneys for Defendant*
*JNZ Insurance Services Inc.*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MARK W. DOBRONSKI,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br>JNZ INSURANCE SERVICES, INC.,<br>NICHOLAS O'CONNOR,<br>GAMBALE INSURANCE GROUP, INC.,<br>MISAEL MATOS,<br>NATALIE DELLA AGENCY LLC,<br>ANA MERCEDES SANTOS,<br>PREMIER MARKETING,<br>SERVICES OF FLORIDA LLC,<br>and JOHN DOE I-X,<br><br>Defendants. | Case No. 2:26-cv-13879<br>District Judge Matthew F. Leitman<br>Magistrate Judge Curtis Ivy, Jr. |


| | |
|---|---|
| Mark W. Dobronski<br>P.O. Box 99<br>Dexter, MI 48130<br><br>*Plaintiff* | Joseph N. Tucker (P81807)<br>Dinsmore & Shohl LLP<br>101 South Fifth Street, Suite 2500<br>Louisville, KY 40202<br>Phone: (502) 540-2360<br>Joseph.tucker@dinsmore.com<br><br>And<br><br>Karen S. Hockstad (P47409)<br>Dinsmore & Shohl LLP<br>191 W. Nationwide Blvd, Suite 200<br>Columbus, OH 43215<br>Karen.hockstad@dinsmore.com |

*Attorneys for Defendant*
*JNZ Insurance Services Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, and served the same to the following by U.S. Mail on:

Mark W. Dobronski
P.O. Box 99
Dexter, MI 48130
*Pro Se Plaintiff*

I declare the foregoing is true to the best of my information, knowledge, and belief.

Date: October 20, 2026

Respectfully submitted,

*/s/ Karen S. Hockstad*
Joseph N. Tucker (P81807)
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Phone: (502) 540-2360
Joseph.tucker@dinsmore.com

And

Karen S. Hockstad (P47409)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd, Suite 200
Columbus, OH 43215
Karen.hockstad@dinsmore.com
*Attorneys for Defendant*
*JNZ Insurance Services Inc.*