**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARK W. DOBRONSKI,
Plaintiff,

v.

ALLSTATE INSURANCE COMPANY; JNZ INSURANCE SERVICES INC.; NICHOLAS O'CONNOR; GAMBALE INSURANCE GROUP, INC.; MISAEL MATOS; NATALIE DELLA AGENCY LLC; ANA MERCEDES SANTOS; PREMIER MARKETING SERVICES OF FLORIDA LLC; and JOHN DOES 1-X

Defendants.

Case No. 2:26-cv-13879-MFL-CI

District Judge Matthew F. Leitman
Magistrate Judge Curtis Ivy, Jr.

**DEFENDANT ALLSTATE INSURANCE COMPANY'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Allstate Insurance Company respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal of all claims against it. In support of this Motion, Allstate relies on the attached Brief in Support, the pleadings, exhibits, and the Federal Rules of Civil Procedure. Pursuant to Local Rule 7.1, Allstate's counsel certifies that they communicated with Plaintiff,

explaining the nature of the relief to be sought by way of this Motion, emailing a copy of the Brief, and seeking concurrence in relief. Plaintiff denied concurrence.

Dated: October 20, 2026

Respectfully submitted,

*/s/ Matthew Policastro*
Matthew F. Policastro (P85330)
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 382-3100
(312) 706-9745 (fax)
mpolicastro@cozen.com

Susan E. Egeland
Texas Bar No. 24040854
*Pro hac vice forthcoming*
COZEN O'CONNOR
1717 Main Street, Suite 3100
Dallas, Texas 75201
(214) 462-3172
(972) 865-7923 (fax)
segeland@cozen.com

*Attorneys for Defendant*
*Allstate Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this October 20, 2026, a copy of the foregoing was e-filed and served on counsel of record through the CM/ECF filing system.

*/s/ Matthew Policastro*
Matthew F. Policastro

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| MARK W. DOBRONSKI,<br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY; JNZ INSURANCE SERVICES INC.; NICHOLAS O'CONNOR; GAMBALE INSURANCE GROUP, INC.; MISAEL MATOS; NATALIE DELLA AGENCY LLC; ANA MERCEDES SANTOS; PREMIER MARKETING SERVICES OF FLORIDA LLC; and JOHN DOES 1-X<br><br>Defendants. | Case No. 2:26-cv-13879-MFL-CI<br><br>District Judge Matthew F. Leitman<br>Magistrate Judge Curtis Ivy, Jr |

**BRIEF IN SUPPORT OF DEFENDANT ALLSTATE INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. STATEMENT OF ISSUES PRESENTED .......... 2
III. LEGAL STANDARD .......... 2
IV. ARGUMENT .......... 3
1. PLAINTIFF FAILS TO PLEAD FACTS SUFFICIENT TO ESTABLISH THAT ALLSTATE MADE OR IS VICARIOUSLY LIABLE FOR THE ALLEGED CALLS. .......... 3
A. Direct Liability Fails Because Allstate Did Not Make or Initiate Any Alleged Call. .......... 4
B. Actual Authority Fails Because the Complaint Does Not Plausibly Establish Any Link in the Alleged Agency Chain. .......... 5
C. Apparent Authority Fails Because Allstate Made No Manifestation to Plaintiff, and Plaintiff Did Not Rely on One. .......... 7
D. Ratification Fails Because Allstate Neither Adopted the Alleged Calls nor Accepted Any Benefit from Them. .......... 8
2. COUNTS I AND II INDEPENDENTLY FAIL BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE USE OF AN AUTOMATIC TELEPHONE DIALING SYSTEM. .......... 9
3. COUNTS III AND V FAIL AGAINST ALLSTATE BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ATTRIBUTE THE CALLS OR ANY FAILURE TO HONOR A DO-NOT-CALL REQUEST TO ALLSTATE. .......... 10
4. COUNTS IV AND VI FAIL AGAINST ALLSTATE BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ATTRIBUTE THE CALLERS' IDENTIFICATION OR CALLER-ID PRACTICES TO ALLSTATE. .......... 11
5. COUNT VII DOES NOT PLAUSIBLY ALLEGE THAT ALLSTATE COMMITTED A VIOLATION OF THE MHSSA'S TELEPHONE-SOLICITATION PROVISIONS. .......... 12
6. COUNT VIII FAILS BECAUSE THE FTSA DOES NOT REACH CALLS RECEIVED BY A PERSON IN MICHIGAN. .......... 13
7. THE COMPLAINT DOES NOT SUPPORT TREBLE DAMAGES BECAUSE IT PLEADS NO WILLFUL OR KNOWING VIOLATION BY ALLSTATE. .......... 13

8. MICHIGAN LAW INDEPENDENTLY DEFEATS THE DERIVATIVE THEORIES SUPPORTING THE STATE-LAW CLAIMS. .......................... 14

9. LEAVE TO AMEND WOULD BE FUTILE. ............................................... 17

V. CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2, 3, 16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................2, 16

*Bristow v. American National Insurance Co.*,
No. 2:20-cv-10752, 2021 U.S. Dist. LEXIS 102406 (E.D. Mich. June 1, 2021)....................14

*Candelaria v. B.C. General Contractors, Inc.*,
236 Mich. App. 67 (1999)....................15

*David v. Serges*,
373 Mich. 442 (1964)....................16

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)....................9, 10

*Fillare v. Union Oil Co. of California*,
143 Mich. App. 520, 372 N.W.2d 606 (1985)....................14

*In re Joint Petition Filed by DISH Network, LLC*,
28 FCC Rcd. 6574 (2013)....................4, 7

*Keating v. Peterson's Nelnet, LLC*,
615 F. App'x 365 (6th Cir. 2015)....................*passim*

*Laster v. Henry Ford Health Sys.*,
316 Mich. App. 726, 892 N.W.2d 442 (2016)....................15

*Rondigo, L.L.C. v. Township of Richmond*,
641 F.3d 673 (6th Cir. 2011)....................3

*Rose v. Hartford Underwriters Insurance Co.*,
203 F.3d 417 (6th Cir. 2000)....................17

*Wamer v. University of Toledo*,
27 F.4th 461 (6th Cir. 2022) ....................................................................3

**Statutes**

47 U.S.C. § 227(a)(1), (b)(1)(A)...........................................................9

47 U.S.C. § 227(b)(1)(A)...........................................................................4

47 U.S.C. §§ 227(b)(3), 227(c)(5) ..........................................................13

Fla. Stat. § 501.059(8)(a) .........................................................................13

Florida Telephone Solicitation Act........................................................1, 2

M.C.L. §§ 445.111b(1), 445.111c(1).......................................................12

Michigan Home Solicitation Sales Act....................................................1, 2

Telephone Consumer Protection Act ...............................................*passim*

**Other Authorities**

47 C.F.R. § 64.1200(c)(2) ....................................................................4, 10

47 C.F.R. § 64.1200(d)(4)..........................................................................11

47 C.F.R. § 64.1601(e)..............................................................................11

Federal Rule of Civil Procedure 12(b)(6) ...........................................1, 2, 17

Restatement (Third) of Agency §§ 1.01, 2.01 (2006)...................................5

Restatement (Third) of Agency § 2.03 (2006)..............................................7

Restatement (Third) of Agency §§ 4.01, 4.06 (2006)...................................8

Federal Rule of Civil Procedure 8 ..............................................................7

## I. INTRODUCTION

Plaintiff initiated his Complaint under the Telephone Consumer Protection Act ("TCPA"), the Michigan Home Solicitation Sales Act, and the Florida Telephone Solicitation Act. The core of Plaintiff's Complaint is his allegation that he received six unsolicited phone calls in 2026. (Compl. ¶ 1.) Plaintiff sued Allstate along with seven other named Defendants, plus an indeterminate number of John Doe Defendants, all related to Plaintiff's alleged receipt of these six phone calls.

Plaintiff alleges he was in the state of Michigan when he received these six phone calls, although his two identified phone numbers carry a Florida area code. (Compl. ¶¶ 19, 21.) Plaintiff alleges that the phone numbers are used for "personal and family communications, not business." (Compl. ¶ 19.)

Counts I through VI of the Complaint pertain to Plaintiff's claims under the TCPA; Count VII pertains to Plaintiff's claims under the Michigan Home Solicitation Sales Act; and Count VIII pertains to Plaintiff's claims under the Florida Telephone Solicitation Act. In addition, Plaintiff expressly limited Count VIII to only two of the alleged six calls that he received. (Compl. ¶ 129-30.)

For the reasons addressed herein, the Court should dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. STATEMENT OF ISSUES PRESENTED

- Should the Court dismiss Counts I through VI because Plaintiff failed to plead facts sufficient to establish that Allstate is directly or vicariously liable for any calls placed to Plaintiff per the TCPA;
- Separately, should the Court dismiss Counts I and II because Plaintiff's Complaint does not plausibly allege the use of an automatic telephone dialing system;
- Separately, should the Court dismiss Counts III and V because Plaintiff's Complaint does not plausibly attribute the calls or any failure to honor a do-not-call request to Allstate;
- Separately, should the Court dismiss Counts IV and VI because Plaintiff's Complaint does not plausibly attribute the callers' identification or caller-ID practices to Allstate.
- Should the Court dismiss Count VII because Plaintiff's Complaint does not plausibly allege that Allstate committed a violation of the telephone-solicitation provisions of the Michigan Home Solicitation Sales Act;
- Should the Court dismiss Count VIII because the Florida Telephone Solicitation Act does not apply to Plaintiff, who received the alleged calls in Michigan;
- Independently, should the Court dismiss Plaintiff's claim for treble damages because Plaintiff's Complaint pleads no willful or knowing violation by Allstate; and
- Should the Court dismiss all Counts of Plaintiff's Complaint because Michigan Law independently defeats Plaintiff's derivative theories supporting the state-law claims.

## III. LEGAL STANDARD

To survive Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court

accepts well-pleaded facts, but not legal conclusions or unwarranted factual inferences. *Wamer v. University of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022). A claim is plausible only when the alleged facts permit a reasonable inference that the defendant is liable; allegations merely consistent with liability do not suffice. *Iqbal*, 556 U.S. at 678. The Court may consider the Complaint, exhibits attached to it, public records, and items referenced in the Complaint that are central to the claims. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011).

## IV. ARGUMENT

### 1. PLAINTIFF FAILS TO PLEAD FACTS SUFFICIENT TO ESTABLISH THAT ALLSTATE MADE OR IS VICARIOUSLY LIABLE FOR THE ALLEGED CALLS.

Plaintiff's claims against Allstate fail at the threshold because the Complaint does not plausibly connect Allstate to the alleged calls. Under Sixth Circuit law, a seller may be responsible for a third party's TCPA violation through actual authority, apparent authority, or ratification. *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371–75 (6th Cir. 2015). In plain terms, Plaintiff must allege facts showing that Allstate authorized or controlled the unlawful calling method, created a reasonable appearance that the callers had that authority, or knowingly adopted the calls after learning the important facts. Merely referring to the participants as "agents" does not satisfy that requirement. *Iqbal*, 556 U.S. at 678.

### A. **Direct Liability Fails Because Allstate Did Not Make or Initiate Any Alleged Call.**

Direct liability applies to the person or entity that initiates the challenged call. 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(c)(2); *In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. 6574, 6582–83 ¶¶ 24–26 (2013). A seller does not initiate a call merely because the call promotes its products. The seller must place the call or be so involved in placing that specific call that it effectively made the call itself. *DISH Network*, 28 FCC Rcd. at 6583 ¶ 26. The Sixth Circuit likewise distinguishes the sender of a communication from an upstream company whose potential liability depends on agency principles. *Keating*, 615 F. App'x at 370–71.

The Complaint does not come close to that standard. It does not allege that Allstate placed, scripted, or participated in any call to Plaintiff. Instead, it attributes the calls to unidentified upstream callers, third-party marketers, and agency personnel. The allegations that Allstate generally authorized vendor use and retained oversight of vendor arrangements say nothing about Allstate's involvement in a particular call. By Plaintiff's own account, unidentified callers originated the calls and, in three instances, transferred him to producers associated with Allstate agencies. Those allegations do not make Allstate the initiator.

Nor does the Complaint allege that Allstate owned, operated, or controlled any originating telephone number. The Complaint identifies separate third parties as the callers but pleads no facts connecting Allstate to the act of dialing Plaintiff.

Because the pleaded facts establish neither that Allstate made the calls nor that it was sufficiently involved in placing them, direct liability should be dismissed.

### B. Actual Authority Fails Because the Complaint Does Not Plausibly Establish Any Link in the Alleged Agency Chain.

Because Allstate did not initiate the calls, Plaintiff must plausibly plead vicarious liability. Actual authority turns on the principal's manifestations to the agent and the principal's right to control the conduct at issue. Restatement (Third) of Agency §§ 1.01, 2.01 (2006); *Keating*, 615 F. App'x at 373. A contractual relationship or authority to market a principal's products does not itself establish authority to use a prohibited calling method. *Id.* at 373–74.

The Complaint alleges that Allstate generally permitted agency owners to retain vendors, required compliance with Allstate Agency Standards and applicable law, and retained authority to restrict vendors. (Compl. ¶¶ 74–76.) Those allegations may describe oversight of vendor arrangements, but they do not show that Allstate authorized unlawful calls or controlled the manner in which any particular call was placed. Indeed, the requirement of legal compliance cuts against an inference that Allstate authorized TCPA violations. See *Keating*, 615 F. App'x at 373–74.

Plaintiff's theory also depends on authority and control at each step of a three-level chain: Allstate to an agency, the agency to a vendor, and the vendor to the unidentified calling operation. *Keating* rejected TCPA liability where the downstream vendor lacked authority to use the challenged method and the upstream

defendants did not know of or control the sender's conduct. 615 F. App'x at 373–75. The closely analogous decision in *Hossfeld v. Allstate Insurance Co.* likewise held that each link in a claimed subagency chain requires affirmative authority; the mere absence of a prohibition is not enough. Nos. 25-1518 & 25-1672, 2026 WL 1815908, at *5–6 (7th Cir. June 24, 2026). Thus, a shared goal of selling Allstate insurance cannot substitute for facts showing authority and control at every link.

First, the Complaint alleges no operational control by Allstate over the agencies' telemarketing. It does not allege that Allstate selected numbers, chose dialing technology, supplied scripts, set call schedules, directed caller-identification practices, or handled do-not-call requests for the upstream callers. Allegations that Allstate authorized vendor use, supplied quoting tools, and retained power to restrict vendors concern the agencies' general sales relationship, not control over the allegedly unlawful calls. (Compl. ¶¶ 74–82.) *Keating*, 615 F. App'x at 373–74.

Second, Plaintiff's allegations concerning the agencies and vendors do not identify concrete control over call operations. Plaintiff alleges completed transfers, resulting proposals, and statements that agencies used vendors. (Compl. ¶¶ 29–34, 39–42, 46–50, 79–81.) But he does not allege facts showing that an agency dictated a vendor's dialing method, scripts, target list, disclosures, or compliance procedures. Completed transfers may support a commercial relationship; they do not, without more, establish the right to control the conduct that allegedly violated the TCPA.

Third, the Complaint does not identify the upstream calling entities or plead facts showing that any vendor was authorized to appoint and control them. It alleges that the responsible callers and routing records remain unknown and invokes discovery to fill the gap. (Compl. ¶¶ 58–60, 86, 96.) But Rule 8 requires facts making agency plausible before discovery. Because the Complaint does not plead authority and control at each link, it does not plausibly attribute the upstream calls to Allstate. *Keating*, 615 F. App'x at 373–75.

### C. Apparent Authority Fails Because Allstate Made No Manifestation to Plaintiff, and Plaintiff Did Not Rely on One.

Apparent authority exists only when the principal's own words or conduct cause a person to reasonably believe that the actor has authority. Restatement (Third) of Agency § 2.03 (2006). The caller cannot create that authority merely by invoking Allstate's name or claiming an affiliation. *Keating*, 615 F. App'x at 374; *DISH Network*, 28 FCC Rcd. at 6586 ¶ 35. *Hossfeld* applies the same rule: the required manifestation must come from Allstate, not from the caller. 2026 WL 1815908, at *6–7.

The Complaint alleges that callers invoked Allstate's name, transferred Plaintiff to producers, and generated Allstate proposals. (Compl. ¶¶ 25–60, 82, 85.) But the callers' own statements cannot establish apparent authority, and the later proposals do not show that Allstate manifested authority for the upstream callers to use the challenged solicitation methods. See *Keating*, 615 F. App'x at 374. The

Complaint identifies no pre-call communication or conduct by Allstate that would reasonably convey such authority to Plaintiff.

Plaintiff also does not allege that he changed position in reliance on a manifestation by Allstate. Rather, he alleges that he supplied controlled information to identify the callers and did not purchase insurance. (Compl. ¶¶ 27, 38, 45, 55, 61–65.) Those investigative acts do not plausibly show reliance on authority conferred by Allstate. Apparent authority therefore fails. *Keating*, 615 F. App'x at 374.

### D. <u>Ratification Fails Because Allstate Neither Adopted the Alleged Calls nor Accepted Any Benefit from Them.</u>

Ratification requires more than a call that ultimately promotes the principal's products. The principal must know the material facts and then affirm the specific act or knowingly accept its benefit. Restatement (Third) of Agency §§ 4.01, 4.06 (2006). *Keating* rejected ratification where the defendants did not authorize the challenged method and did not knowingly accept benefits from it. 615 F. App'x at 374–75. *Hossfeld* likewise rejected ratification where Allstate lacked knowledge of the downstream caller and acted against, rather than in approval of, the challenged conduct once it learned the facts. 2026 WL 1815908, at *7–8.

The Complaint does not allege assent by Allstate. Plaintiff's January email went to Della Agency personnel, his April objection was made to Matos, and his prerecorded instruction was received by unidentified calling operations. (Compl. ¶¶ 22–23, 31–34, 41, 69–73.) Plaintiff does not allege that Allstate received those

notices, learned that a specific vendor was placing unlawful calls, or thereafter approved that conduct. Knowledge cannot be imputed through an agency relationship that has not been plausibly alleged.

Nor does the Complaint identify a benefit that Allstate knowingly accepted from the calls to Plaintiff. Plaintiff alleges no purchase or application; he alleges only that independently owned agencies prepared proposals after transfers. (Compl. ¶¶ 29, 40, 47–48, 64.) Without facts showing Allstate's knowledge of the allegedly unlawful conduct and its election to adopt that conduct or retain a call-specific benefit, ratification is not plausible. *Keating*, 615 F. App'x at 374–75.

### 2. COUNTS I AND II INDEPENDENTLY FAIL BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE USE OF AN AUTOMATIC TELEPHONE DIALING SYSTEM.

Counts I and II require use of equipment that stores or produces telephone numbers using a random or sequential number generator and dials those numbers. 47 U.S.C. § 227(a)(1), (b)(1)(A); *Facebook, Inc. v. Duguid*, 592 U.S. 395, 402–04 (2021). Automated dialing alone is insufficient; the random-or-sequential-number-generator requirement is essential.

The Complaint alleges connection sounds, brief delays, live qualification, transfers, and reuse of controlled lead information. (Compl. ¶¶ 66–68.) Those features may suggest automation, but they do not plausibly suggest random or sequential number generation. Indeed, repeated use of Plaintiff's controlled

information is more consistent with targeted dialing from a stored lead record. Paragraph 67 adds only the legal conclusion that the equipment used random or sequential generation, without facts explaining how the numbers were generated, stored, or selected. *Duguid* requires more than the label "ATDS." Because the pleaded facts support targeted lead-based calling rather than random or sequential generation, Counts I and II should be dismissed.

### 3. COUNTS III AND V FAIL AGAINST ALLSTATE BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ATTRIBUTE THE CALLS OR ANY FAILURE TO HONOR A DO-NOT-CALL REQUEST TO ALLSTATE.

Counts III and V impose different duties, but both require Plaintiff to connect the challenged conduct to Allstate. Count III alleges solicitations to numbers on the National Do Not Call Registry under 47 C.F.R. § 64.1200(c)(2), which applies to the entity that initiates the call. Count V alleges a failure to maintain and implement company-specific do-not-call procedures under Section 64.1200(d), which applies to an entity that initiates telemarketing calls. (Compl. ¶¶ 106–17.) The Complaint does not allege that Allstate initiated any call.

The Complaint also does not allege that Plaintiff made a company-specific do-not-call request to Allstate. His prerecorded instruction was received by unidentified calling operations, his April objection was made to Matos, and his January email was sent to Della Agency personnel. (Compl. ¶¶ 22–23, 31–34, 41, 69–73.) None of those allegations show that Allstate received a request or failed to

honor one. Plaintiff can attribute those notices to Allstate only through the same agency chain that the Complaint does not plausibly plead.

Nor does the alleged reuse of Plaintiff's controlled information cure that defect. At most, it supports an inference that an unidentified calling operation retained the lead. (Compl. ¶¶ 45, 55, 69–70.) It does not identify that operation, show that Allstate controlled it, or establish that Allstate received and disregarded Plaintiff's request. Because the Complaint does not connect the calls, the alleged notices, or the later use of Plaintiff's information to Allstate, Counts III and V should be dismissed against Allstate.

### 4. COUNTS IV AND VI FAIL AGAINST ALLSTATE BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ATTRIBUTE THE CALLERS' IDENTIFICATION OR CALLER-ID PRACTICES TO ALLSTATE.

Counts IV and VI address different disclosure requirements but fail against Allstate for the same reason: the Complaint does not plausibly attribute the challenged conduct to Allstate. Count IV alleges that upstream callers failed to provide the identification required by 47 C.F.R. § 64.1200(d)(4). Count VI alleges that the caller-ID information transmitted under 47 C.F.R. § 64.1601(e) did not provide a working means to reach the solicitor or make a do-not-call request. (Compl. ¶¶ 110–22.) Yet the Complaint attributes the live statements, displayed numbers, and callback failures to unidentified upstream callers and calling operations. (Compl. ¶¶ 25–60, 111–20.) It does not allege that Allstate selected the

displayed numbers, controlled what the callers said, or directed any caller to use a nonfunctioning callback number. Thus, both counts depend on the same agency chain that the Complaint does not plausibly plead. Counts IV and VI should therefore be dismissed against Allstate.

### 5. COUNT VII DOES NOT PLAUSIBLY ALLEGE THAT ALLSTATE COMMITTED A VIOLATION OF THE MHSSA'S TELEPHONE-SOLICITATION PROVISIONS.

Count VII fails against Allstate because the statutory duties attach to the "person making a telephone solicitation" and the "telephone solicitor." M.C.L. §§ 445.111b(1), 445.111c(1). The Complaint alleges that unidentified upstream callers made the solicitations, supplied incomplete identification, used nonfunctioning callback numbers, and continued calling after alleged requests. (Compl. ¶¶ 25–73, 124–26.) It does not allege that Allstate itself made a call or controlled those practices. Nor does it plead facts supporting derivative liability under Michigan agency law for the reasons discussed above. Labeling Allstate a "responsible principal" does not transform it into the person who made the solicitation.

Because the Complaint does not plausibly allege that Allstate made the calls or is legally responsible for the unidentified callers, the MHSSA claim should be dismissed against Allstate.

### 6. COUNT VIII FAILS BECAUSE THE FTSA DOES NOT REACH CALLS RECEIVED BY A PERSON IN MICHIGAN.

The FTSA regulates telephone solicitations made to a called party "who is in this state." Fla. Stat. § 501.059(8)(a). Its territorial limit turns on the *recipient's* location when the call is received, not merely the caller's location or the called number's area code.

The Complaint expressly alleges that Plaintiff received Calls 1 and 2 while physically present at his Michigan residence. (Compl. ¶¶ 4, 17, 21, 24, 129–30.) Although Plaintiff admits he received the calls in Michigan, he argues that the FTSA applies because some of the alleged solicitation activity occurred in Florida. (Compl. ¶ 130.) But Section 501.059(8)(a) applies only when the called party is in Florida. The location of the caller or agency, and the called number's Florida area code, cannot satisfy that requirement when Plaintiff alleges he received the calls in Michigan. Count VIII therefore falls outside the FTSA's territorial scope. It also fails against Allstate because the Complaint does not plausibly allege that Allstate made or is vicariously liable for the calls.

### 7. THE COMPLAINT DOES NOT SUPPORT TREBLE DAMAGES BECAUSE IT PLEADS NO WILLFUL OR KNOWING VIOLATION BY ALLSTATE.

Even if a substantive TCPA claim survived, the Complaint does not plausibly support treble damages against Allstate. The TCPA permits enhanced damages only for a willful or knowing violation. 47 U.S.C. §§ 227(b)(3), 227(c)(5). In this District,

allegations that a defendant should have known of a violation are not enough; the pleading must support actual knowledge of the facts that made the conduct unlawful. *Bristow v. American National Insurance Co.*, No. 2:20-cv-10752, 2021 U.S. Dist. LEXIS 102406 (E.D. Mich. June 1, 2021). *Hossfeld* similarly held that trebling requires knowing or reckless conduct, not merely a voluntary act. 2026 WL 1815908, at *8–9. Here, Plaintiff alleges that he emailed Della Agency personnel after Call 1, objected to Matos during Call 2, and used a prerecorded do-not-call message for calls to the 56 Number. (Compl. ¶¶ 22–23, 31–34, 41, 69–73.) None of those allegations shows that Allstate itself received notice. The vendor announcement also describes only a general framework allowing agencies to use vendors subject to Allstate standards, applicable law, and Allstate's authority to restrict vendors. (Compl. ¶¶ 74–76.) It does not show that Allstate knew who the callers were, knew they had called Plaintiff, or approved an unlawful practice. Without facts supporting knowledge or reckless disregard attributable to Allstate, the request for treble damages should be dismissed.

### 8. MICHIGAN LAW INDEPENDENTLY DEFEATS THE DERIVATIVE THEORIES SUPPORTING THE STATE-LAW CLAIMS.

Under Michigan law, a principal is not liable merely because another actor promotes its products, uses its branding, or shares a commercial objective. *Fillare v. Union Oil Co. of California*, 143 Mich. App. 520, 525, 372 N.W.2d 606, 609 (1985)

("[we] conclude that merely allowing another entity to use a trademark is not a sufficient basis for establishing a duty," holding that summary judgment was proper because the defendant did not own, control, or possess the premises at issue, even though defendant's trademarks were displayed and its products were sold there). The key question is whether Allstate had the right to control the method of the challenged work or later adopted the conduct as its own. It is the "absence of control" here that obviates Allstate's liability for the actions of others, as alleged by Plaintiff. *Laster v. Henry Ford Health Sys.*, 316 Mich. App. 726, 735, 892 N.W.2d 442, 448 (2016).

Michigan generally does not impose liability for an independent contractor's conduct unless the alleged principal retained control over the manner and method of the work. *Candelaria v. B.C. General Contractors, Inc.*, 236 Mich. App. 67, 72–76 (1999). Plaintiff alleges that Allstate allowed agencies to use vendors, provided agents with pricing systems and email accounts, and retained authority to restrict vendors. (Compl. ¶¶ 74–82.) Those allegations concern the agencies' general ability to market and sell Allstate products. They do not show that Allstate selected the numbers, chose the dialing technology, supplied scripts, set call schedules, directed caller-identification practices, or controlled how do-not-call requests were handled. General oversight of vendor relationships is not control over the method of the calls alleged here.

Second, Plaintiff cannot bridge that factual gap with conclusions. The Complaint alleges that Allstate is vicariously liable under "actual-authority and authorized-subagency principles" and seeks to attribute each participant's acts through agency, ratification, concert-of-action, and conspiracy theories. (Compl. ¶¶ 84–87.) Those allegations identify legal theories, not facts showing that Allstate authorized the agencies to appoint the unidentified callers or controlled the callers' work. The callers' use of Allstate's name, the agents' access to Allstate quoting systems, and the preparation of Allstate proposals may show that the agencies sold Allstate insurance. They do not show that Allstate controlled the upstream solicitation methods that allegedly violated the law. *Twombly* and *Iqbal* require the missing facts, not labels attached to the completed transfers.

Ratification under Michigan law likewise requires the principal to affirm the unauthorized act and treat it as its own. *David v. Serges*, 373 Mich. 442, 444–45 (1964). The Complaint does not allege that Allstate received Plaintiff's January email, his objection to Matos during Call 2, or his prerecorded do-not-call message. (Compl. ¶¶ 22–23, 31–34, 41, 69–73.) Nor does it allege that Allstate learned that a particular vendor was violating the law and then approved the conduct or knowingly accepted a benefit from Plaintiff's calls. Continued calls by unidentified third parties do not show adoption by Allstate unless their knowledge and conduct can first be

attributed to Allstate through a plausibly pleaded agency relationship. The Complaint does not plead that relationship.

### 9. LEAVE TO AMEND WOULD BE FUTILE.

Leave to amend may be denied as futile when an amended complaint could not survive Rule 12(b)(6). *Rose v. Hartford Underwriters Insurance Co.*, 203 F.3d 417, 420–21 (6th Cir. 2000). That standard is satisfied here because the defects are not technical pleading omissions that additional detail could cure. Plaintiff expressly alleges that he received the relevant calls in Michigan, but the FTSA applies only when the called party is in Florida. No amendment consistent with that allegation can bring Count VIII within the statute's territorial reach.

The remaining defects arise from Plaintiff's own detailed account of the calls and alleged relationships. Plaintiff has already pleaded the calls, transfers, proposals, vendor framework, notices, and derivative-liability theories at length. Further amendment would not supply the missing control, authority, manifestation, knowledge, statutory coverage, or ATDS functionality without contradicting that factual account. Because repleading would merely repackage the same legally insufficient theories, allowing amendment of any count would be futile. The Court should dismiss the Complaint against Allstate with prejudice.

## V. CONCLUSION

For the foregoing reasons, Allstate respectfully requests that the Court dismiss all claims against Allstate with prejudice because the Complaint fails to state a plausible claim and further amendment would be futile.

Dated: October 20, 2026

Respectfully submitted,

*/s/ Matthew Policastro*
Matthew F. Policastro (P85330)
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 382-3100
(312) 706-9745 (fax)
mpolicastro@cozen.com

Susan E. Egeland
Texas Bar No. 24040854
*Pro hac vice forthcoming*
COZEN O'CONNOR
1717 Main Street, Suite 3100
Dallas, Texas 75201
(214) 462-3172
(972) 865-7923 (fax)
segeland@cozen.com

*Attorneys for Defendant*
*Allstate Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this October 20, 2026, a copy of the foregoing was e-filed and served on counsel of record through the CM/ECF filing system.

*/s/ Matthew Policastro*
Matthew F. Policastro