UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,

Plaintiff,

Case No. 2:26-cv-13879
District Judge Matthew F. Leitman
Magistrate Judge Curtis Ivy, Jr

v.

ALLSTATE INSURANCE COMPANY; JNZ INSURANCE SERVICES INC.; NICHOLAS O'CONNOR; GAMBALE INSURANCE GROUP, INC.; MISAEL MATOS; NATALIE DELLA AGENCY LLC; ANA MERCEDES SANTOS; PREMIER MARKETING SERVICES OF FLORIDA LLC; and JOHN DOE I-X,

Defendants.

---

**MISAEL MATOS AND GAMBALE INSURANCE GROUP, INC.'S**
**<u>JOINT ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES</u>**

Defendants Misael Matos ("Matos") and Gambale Insurance Group, Inc. ("Gambale" and collectively with Matos, the "Gambale Defendants"), by their attorneys, The Miller Law Firm, P.C., states as follows for its Answer to Plaintiff Mark Dobronski's Complaint:

## INTRODUCTION

1. This action arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, the Michigan Home Solicitation Sales Act("MHSSA"), M.C.L. § 445.111, et seq., and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059. It concerns six unsolicited calls received at Plaintiff's Lima Township residence between January 26 and September 10, 2026, soliciting Allstate automobile insurance (the "Subject Calls").

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

2. The calls involved upstream callers who qualified Plaintiff and transferred him to insurance producers. Completed transfers resulted in Allstate proposals from Ana Mercedes Santos, Misael Matos, and Nicholas O'Connor; later callers also recited controlled identifying information that Plaintiff had supplied during the April solicitation.

**ANSWER: The Gambale Defendants admit only that one phone call later discovered to be Plaintiff was transferred to Defendant Matos. Answering further, the remainder of this paragraph is denied as untrue.**

3. Plaintiff seeks statutory damages and enhanced damages for knowing or willful violations. Liability is alleged against each Defendant for the calls that Defendant made, participated in, authorized, or is legally responsible for through the agency relationships described below.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

**PARTIES**

4. Plaintiff MARK W. DOBRONSKI is an individual and United States citizen. Plaintiff maintains residences in Orange County, Florida and Lima Township, Washtenaw County, Michigan.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

5. Defendant ALLSTATE INSURANCE COMPANY ("Allstate") is an Illinois corporation with its headquarters at 3100 Sanders Road, Suite 201, Northbrook, Illinois 60062. Allstate is registered and qualified to do business in Florida and conducts business in Florida.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

6. Defendant JNZ INSURANCE SERVICES INC. ("JNZ'') is a corporation with a business address at 157 Hampton Point Drive, Suite 2, St. Augustine, Florida 32092.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

7. Defendant NICHOLAS O'CONNOR ("O'Connor") is an individual insurance producer with a business address at 157 Hampton Point Drive, Suite 2,St. Augustine, Florida 32092.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

8. Defendant GAMBALE INSURANCE GROUP, INC. ("Gambale") is a corporation with a business address at 7100 S. Kanner Highway, Stuart, Florida 34997.

**<u>ANSWER:</u> Admitted.**

9. Defendant MISAEL MATOS ("Matos") is an individual insurance producer. He resides at 9646 SW Purple Martin Way, Stuart, Florida 34997.

**ANSWER: Admitted.**

10. Defendant NATALIE DELLA AGENCY LLC ("Della Agency") is a Florida limited liability company. Its principal place of business is 3393 W. Vine Street, Suite 302, Kissimmee, Florida 34741.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

11. Defendant ANA MERCEDES SANTOS ("Santos") is an individual insurance producer. She resides at 3520 Jamaica Run Lane, Apartment 1608, Kissimmee, Florida 34741.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

12. Defendant PREMIER MARKETING SERVICES OF FLORIDA LLC ("Premier") is a Florida limited liability company. Its principal office is located at 12908 Hyland Circle, Boca Raton, Florida 33428.

**ANSWER: The Gambale Defendants lack knowledge or information**

**sufficient to form a belief as to the truth of this allegation.**

13. Defendants JOHN DOE 1-X are individuals or entities whose true names and addresses are presently unknown to Plaintiff. Plaintiff will seek leave to substitute their true identities when ascertained.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

## JURISDICTION

14. This Court has subject-matter jurisdiction under M.C.L. § 600.605 and 47 U.S.C. §§ 227 (b)(3) and 227(c)(5). Plaintiff seeks damages exceeding $25,000, exclusive of interest and costs, based on separate statutory awards and enhancements for each violation.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

15. Plaintiff invokes limited personal jurisdiction over corporate Defendants under M.C.L. § 600.715, over limited liability company Defendants

under M.C.L. § 600.735, and over individual Defendants under M.C.L. § 600.705. The claims arise from telephone solicitations that those Defendants or their authorized agents directed to Plaintiff's residential telephone service and that were received and caused injury in Michigan.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

16. The jurisdictional conduct attributed to each Defendant is the particular solicitation activity and authorized agency conduct described below. Plaintiff does not rely on an unrelated Defendant's Michigan contacts or on common branding alone to establish jurisdiction.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

## VENUE

17. Venue is proper in this Court under ~.C.L. §.600.1629(1) as the telephone calls alleged herein were received, and thus the original injuries alleged herein occurred, in Washtenaw County.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

18. Joinder is proper under MCR 2.206(A)(2) because the claims concern related Allstate insurance solicitations and common questions concerning Allstate's authorization of agency vendor arrangements; joinder also promotes the convenient administration of justice. Plaintiff alleges both each Defendant's own participation and its responsibility for conduct of other participants under the derivative-liability allegations below.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

## GENERAL ALLEGATIONS

**Plaintiff's Residential Telephone Service**

19. Plaintiff subscribes to and regularly uses 407-xxx-xx56 (the *"56 n*umber") and 407-xxx-xx58 (the "58 Number") for personal and family communications, not business. Both numbers are assigned to service for which Plaintiff is charged on a per-call and per-minute basis.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

20. The 56 Number has been registered on the National Do Not Call Registry since May 16, 2025. The 58 Number has been registered since October 2, 2025, and both registrations preceded the respective Subject Calls by more than thirty-one days.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

21. Plaintiff's telephone service permits him to receive calls at his Michigan residence notwithstanding the Florida area code. Plaintiff was physically present at his Lima Township residence when each Subject Call was received and used both numbers as residential telephone service at that residence.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

**Recorded Do Not Call Instruction**

22. In May 2025, Plaintiff installed a recording on the 56 Number that plays to incoming callers before his telephone rings: "Telemarketers, Do Not Call this number." That recording was active before Calls 2 through 6; Plaintiff does not allege that it played during the January call to the 58 Number.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

23. The recording communicates a request to stop calling the number actually dialed. Plaintiff alleges receipt by the calling operation when its call connected to that recording, while identifying below additional notice personally delivered to Matos.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

**THE CALLS**

24. The Subject Calls occurred at the following local times while

Plaintiff was in Lima Township. Call numbers below are chronological and include the January call as Call 1.

| Call | Date | Time | Called No. | Displayed CLID/CNAM |
|---|---|---|---|---|
| 1 | 01/26/2026 | 11:46 A.M. | 58Number | 940-202-4612 / none |
| 2 | 04/03/2026 | 1:31 P.M. | 56Number | 754-400-6817 / none |
| 3 | 09/10/2026 | 10:14A.M. | 56Number | 229-231-2428 / GEORGETOWN GA |
| 4 | 09/10/2026 | 11:37 A.M. | 56Number | 720-721-3278 / Private |
| 5 | 09/10/2026 | 11:38 A.M. | 56Number | 720-721-3278 / Private |
| 6 | 09/10/2026 | 11:40A.M. | 56Number | 720-721-3278 / Private |

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

## Call 1

25. On January 26, 2026, at 11:46 A.M., Plaintiff received Call 1 at the 58 Number, displaying 940-202-4612 without caller-name information. Upon answering, Plaintiff heard a "boink" followed by three to four seconds of delay before a live agent spoke.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

26. The agent identified herself as "Luna with Allstate Auto Insurance" and offered a free quote. She then sought identifying and qualifying information from Plaintiff.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

27. To identify the source and destination of the unsolicited solicitation, Plaintiff supplied the controlled name Alexander Graham, false date of birth, a controlled mailing address in Windermere, Florida, and information concerning a 2019 Lincoln Navigator and a 2016 Ford F-150 XLT. The calling operation already possessed arid had dialed the 58 Number before obtaining this information.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

28. Luna transferred the call, during which Plaintiff heard a recorded statement: "This call will be recorded." The receiving person identified herself initially as Ana; Plaintiff had to ask for her surname, Santos, and her company, Allstate.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

29. Santos continued the insurance solicitation and sent an Allstate

proposal from anasantosl@allstate;com. Her email identified her as a licensed sales producer for The Natalie Della Agency, and the January 26, 2026 proposal identified Alexander Graham, the vehicles described above, Santos as the preparer, and Natalie Delluniversita's Kissimmee agency address and contact information.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

30. Immediately after the call Plaintiff called 940-202-4612 back. It rang three times and then produced a busy signal, preventing· Pl8:intiff from reaching the solicitor or seller or communicating a do-not-call request through that number.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

31. On January 27, 2026, Plaintiff emailed Natalie Delluniversita at ndelluniversita@allstate.comconcerning the calls. Plaintiff stated that his number was on the federal registry and that he had no established business relationship with Allstate.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

32. That contemporaneous email recorded Santos's explanation that Della Agency used at least three third-party vendors to transfer prospective leads to its agents, and that Delluniversita handled the vendor arrangements and records. It also recorded Santos's statement that the office had received similar complaints and that Delluniversita was allegedly looking into them.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

33. Della Agency's May 1, 2026 annual report identifies Delluniversita as its manager and registered agent, with an address of 34316 Verbena Street, Wesley Chapel, Florida 33545.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

34. At 11:49 A.M. on January 27, Delluniversita replied with the link http://pmsfl.com/, identifying the website of Premier Marketing Services of Florida LLC. Separately, Delluniversita told Plaintiff that the company was approved by Allstate and on Allstate's recommended list; Plaintiff attributes that representation to Delluniversita and does not allege that the link-only email itself contains those

words.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

**Call 2**

35. On April3, 2026, at1:31 P.M., Plaintiff received Call 2 at the 56 Number, displaying 754-400-6817 without CNAM.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

36. After Plaintiff answered, he heard a "boink," approximately four seconds of silence, and a live caller identifying himself "Brian with Allstate Insurance."

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

37. Brian stated that Allstate had reduced its prices and asked about Plaintiff's vehicles, accidents, and tickets. Brian transferred the call to Alex, who asked about homeownership and sought personal identifying and qualifying information.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

38. Plaintiff supplied the controlled name Carl Carpenter, a false birth date, and a controlled Windermere mailing address to trace the solicitation. Those disclosures occurred after the 56 Number had already been selected and dialed.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

39. The call was transferred to a person answering "Allstate, this is Misa speaking." Plaintiff identified that person as Matos, a licensed producer employed by Gambale.

**<u>ANSWER:</u> Admitted.**

40. Matos continued the sales pitch and emailed an Allstate proposal from misaelmatos@allstate.com. The April 3 proposal identifies Carl Carpenter, Misa Matos as a licensed producer, and Patrick Gambale's Stuart agency address and telephone number.

**<u>ANSWER:</u> Admitted, but only to the extent that Matos confirmed the qualifying information provided to him and emailed a proposal believing he**

**was emailing that individual alone. The Gambale Defendants deny the remainder of this allegation as untrue.**

41. Plaintiff confronted Matos with the fact that the 56 Number was on the National Do Not Call Registry and that Plaintiff had not consented to the call. Matos stated that Allstate uses call centers to place calls and refer-business to Matos and his agency, and claimed that he had no control over them.

**ANSWER:** **Admitted only to the extent that Matos spoke on the phone with a man identifying himself as Carl Carpenter. The Gambale Defendants Lack knowledge or information sufficient to form a belief as to the truth of the remainder of this allegation. Answering further, Matos does not recall the exact content of the phone conversation, and the Gambale Defendants expect that a contemporaneous recording of the conversation, if available, would confirm its content.**

42. Plaintiff's callback to 754-400-6817 reached a recording stating that the number was not in service. The displayed number therefore did not provide a functioning means to contact the solicitor or make a do-not-call request.

**ANSWER:** **The Gambale Defendants lack knowledge or information**

**sufficient to form a belief as to the truth of this allegation.**

## Call 3

43. On September 10, 2026, at 10:14 P.M., Plaintiff received Call 3 at the 56 Number, displaying 229-231-2428 with CNAM of GEORGETOWN GA.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

44. After Plaintiff answered and heard a click and three-to-four-second pause, the caller identified himself as "Simon from your insurance company."

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

45. Simon asked whether he was speaking with Carl Carpenter and recited the same controlled identifying information supplied during Call 2.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

46. Simon then transferred Plaintiff to a person" identifying himself

as "Nick with Allstate."

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

47. Plaintiff identified Nickas Nicholas O'Connor, an Allstate producer in St. Augustine O'Connor continued qualifying Plaintiff for automobile insurance and emailed an Allstate quote from noconnor@allstate.com.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

48. O'Connor's email identified him as a licensed sales producer for Richard O'Connor's Allstate Agency at the Hampton Point Drive address, using 904-288-8821. The September 10 proposal identifies Carl Carpenter and Richard O'Connor's agency.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

49. JNZ's staff listing appearing on the Internet identifies Nicholas O'Connor as a Licensed Commercial Specialist. The Richard OConnor: Allstate Insurance Facebook page displays JNZ branding, the same Hampton Point Drive

address, telephone 904-288-8821, and a link to JNZ's quote-request page. These matching identifiers connect JNZ with the agency through which O'Connor conducted the solicitation.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

50. Plaintiff's callback to 229-231-2428 rang unanswered. Plaintiff was unable to reach the caller or communicate a do-not-call demand through that callback.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

**<u>Calls 4 Through 6</u>**

51. On September 10, 2026, at 11:37 A.M., Plaintiff received Call 4 at the 56 Number display displaying 720-721-3278 and "Private."

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

52. Plaintiff was occupied and could not answer before ringing stopped; he does not allege hearing a voice or connection sound during that call.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information**

**sufficient to form a belief as to the truth of this allegation.**

53. One minute later, at 11:38 A.M., Call 5 arrived at the 56 Number from the same displayed number and name.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

54. Plaintiff answered the incoming call and after a click and three-to-four-second pause, a male asked whether he was speaking with "Mr. Carl" and identified himself as "Sam from Allstate."

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

55. Sam offered a cheaper quote and recited the same controlled identifying information supplied during Call 2.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

56. Approximately one minute and forty-five .seconds into the conversation, Sam suddenly stated that he would call back and abruptly hung up.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

57. At 11:40 A.M., Call 6 arrived at the 56 Number from the same displayed number and name. After a click and three-to-four-second.pause, the same speaker resumed the conversation, saying that ‘‘there had been a disconnecting problem,” and again recited the controlled information. Sam stated that he was transferring Plaintiff, but the call dropped.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

58. Neither Call 5 nor Call 6 produced a completed transfer identifying an additional downstream agency.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

59. Callbacks to 720-721-3278 reached a telephone tree requiring the caller to spell the name of the person sought. That system supplied no available means for Plaintiff to identify the responsible solicitor or make a do-not-call request.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

60. The timing, identical displayed number, and repeated caller in Calls 5 and 6 support the inference that unanswered Call 4 was part of the same solicitation sequence. The common Carl Carpenter information also links that sequence to the lead obtained during Call 2 and used during Call 3.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation. The Gambale Defendants further specifically deny as untrue any implication that they were "linked" in any way with any of calls 3 through 6.**

## SPECIFIC ALLEGATIONS

### Lack of Prior Consent and Controlled Information

61. Plaintiff did not request the Subject Calls or give any Defendant prior express consent or prior express written consent to make them. Plaintiff had no established business relationship with Allstate giving rise to the solicitations.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

62. Where the TCPA requires prior express consent, possession of a telephone number does not itself establish that consent; consent may not simply be presumed. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of1991,* 30 FCC Rcd. 7961, 7991, 52 (2015).

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

63. Plaintiff did not submit either called number to Defendants as a request for insurance solicitation, or authorize another person to do so. The callers possessed the numbers before Plaintiff supplied any controlled identifying information.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

64. Plaintiff's responses to unsolicited callers were investigative efforts to identify the persons responsible. Plaintiff alleges no agreement authorizing future telemarketing; receipt of an emailed proposal was not a signed authorization for automated telephone solicitations.

**ANSWER: This paragraph is solely a statement of the pleader's**

**intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

65. Statements or disclosures occurring after a call began did not supply the prior consent required to initiate that call. Plaintiff's own recorded greeting is not alleged to be a prerecorded voice used. by Defendants. The FCC has explained that seeking consent during a telemarketing call does not supply the prior consent required to deliver the message initiating that call. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of1991,* 18 FCC Rcd. 14014, 142 (2003).

**ANSWER:** **This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

## Calling Technology

66. The answered calls repeatedly exhibited an electronic connection sound and several seconds of delay before a live salesperson spoke. The callers then conducted scripted qualification and transferred Plaintiff to downstream sales personnel, and the September calls repeatedly used the same controlled lead

information.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

67. Based on those features, Plaintiff alleges upon information and belief that the originating operations used automated dialing equipment. Plaintiff further alleges upon information and belief that the equipment used to place the Subject Calls employed random or sequential telephone-number generation in storing or producing numbers to be called and dialing them, within 47 U.S.C. § 227(a)(1).

**<u>ANSWER:</u> This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

68. The internal selection and dialing functions, configuration, and campaign records are in the possession of the calling operations. Plaintiff's allegation concerning Call 4 is inferential, based on its immediate proximity to Calls 5 and 6 and their identical displayed number.

**<u>ANSWER:</u> This paragraph is solely a statement of the pleader's**

**intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

## Notice and Injury

69. The 56 Number's recorded demand preceded every April and September call to that number. The April conversation with Matos additionally supplied actual notice that Plaintiff had not consented and that the number was registered.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegation of a "recorded demand." Answering further, the Gambale Defendants admit only that the individual claiming to be Carl Carpenter on the phone stated that he did not consent to the call and that his phone number was registered. The Gambale Defendants deny the remainder of this paragraph as untrue.**

70. The September callers used the same controlled information obtained in April, permitting an inference that Plaintiffs lead remained in the calling operation's records after the April notice. The subsequent solicitations support the allegation that the responsible operation failed to suppress the 56 Number.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the Plaintiffs allegations concerning "the September callers." The remainder of this paragraph is a statement of the pleader's intentions and/or legal conclusions, and as such, no further answer is required. To the extent any further answer is required, the Gambale Defendants deny the remainder of this paragraph as untrue.**

71. The calls interrupted Plaintiffs activities, occupied his residential telephone service, and invaded his privacy.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to support a belief as to the truth of this allegation.**

72. Each call subjected Plaintiff to per-call and per-minute charges.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to support a belief as to the truth of this allegation.**

73. The registry listings, recorded instruction, April notice, recurring use of the controlled information, and failure to provide workable callback paths support Plaintiffs allegation of knowing or willful violations by the responsible

participants. The knowledge attributable to each principal depends on the agency and notice relationships pleaded below.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

## VICARIOUS AND DERIVATIVE LIABILITY / CONCERTED ACTION

### Allstate's Authorization of Agency Vendors

74. Allstate's "Restricted Third-Party Vendors Announcement - Update October 11, 2024" states that agency owners are generally permitted to retain vendors to assist them in conducting business on Allstate's behalf; It expressly addresses vendor services involving telephony, leads, and prospect solicitation.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

75. The announcement requires vendor use to comply with Allstate Agency Standards and applicable law. Allstate reserves authority to prohibit particular vendors immediately, and warns that failure to comply is a breach of the

agency agreement potentially resulting in termination.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

76. The announcement also directs agents to a resource titled "Warm lead/Live call transfer contracted vendors." It bears Allstate Insurance Company's copyright notice, providing a connection to the particular Allstate entity named here.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

77. Plaintiff alleges that Allstate authorized and encouraged its agencies to use telemarketing vendors to sell Allstate insurance based on its vendor announcement and Delluniversita's statement that Premier was approved by Allstate and on its recommended list. Allstate retained authority to restrict those vendor arrangements.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

78. Premier's absence from the pictured restricted list is not itself alleged to establish approval. Plaintiff relies instead on Delluniversita's representation, the agency's actual receipt of the transfer, and Allstate's express authorization and oversight of vendor arrangements.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

**The Particular Agency Relationships**

79. Plaintiff alleges upon information and belief that Della Agency retained or authorized Premier to generate and deliver live automobile-insurance prospects, that Premier acted through Luna or the upstream personnel responsible for Call 1, and that Santos completed the contemplated sales function. This inference rests on the completed transfer, proposal, Santos's description of the agency's vendor arrangements, and Delluniversita's identification of pmsfl.com.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to support a belief as to the truth of this allegation.**

80. Plaintiff alleges upon information and belief that Gambale authorized the

originating and intermediate callers responsible for Call 2 to qualify and deliver insurance prospects to Matos. Matos's receipt and completion of the transfer, proposal, and explanation of the call-center referral process support that allegation.

**<u>ANSWER:</u> Denied as untrue. Answering further, the Gambale Defendants do not authorize any calls in violation of the Telephone Consumer Protection Act, its implementing regulations, or related state statutes**

81. Plaintiff alleges upon information and belief that JNZ authorized the operation responsible for Call 3 to deliver qualified insurance prospects to O'Connor. The completed transfer, his agency identification, the Allstate quote, and JNZ's public business records support that allegation.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

82. Plaintiff alleges upon information and belief that these agencies acted within Allstate's authorization to market its insurance and retain vendors for that purpose; The agency arrangements contemplated qualifying prospects, routing live calls, and preparing Allstate proposals, rather than unsolicited referrals wholly outside

the recipients' business arrangements. Allstate provides the participating insurance agents access to its computer systems for insurance pricing and provides Allstate email accounts. The agents used Allstate pricing and proposal resources and their Allstate email accounts to prepare and transmit the proposals generated through the Subject Calls. Access to seller-controlled systems and detailed product-pricing information is among the indicia of apparent authority identified in/n *re Joint Petition Filed by DISH Network, LLC,* 28 FCC Red. 6574, 6592-93, ,! 46 (2013).

**<u>ANSWER:</u> This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

83. Santos, Matos, and O'Connor are sued for their personal solicitation conduct and any calling activity they personally caused, authorized, or adopted, not merely for holding a producer position. Their respective agency employers are responsible for conduct within the scope of the employment and agency relationships alleged.

**<u>ANSWER:</u> This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

84. Allstate is alleged to be vicariously liable under actual-authority and authorized-subagency principles for the conduct undertaken within those arrangements. Plaintiff relies on the federal agency framework recognized in *In re Joint Petition Filed by DISH Network, LLC,* 28 FCC Red. 6574, fl 28-34, 46 (2013). A seller may be vicariously liable for third-party telemarketers' TCPA violations under federal common-law: agency principles, including actual authority, apparent authority, and ratification. *Id.* at 6584, 28. These principles apply to the agency relationships and conduct alleged here.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

85. To the extent established by discovery, Plaintiff alternatively relies on apparent authority traceable to Allstate's own manifestations, including its authorization of branded agencies, sales materials, and vendor arrangements, and ratification through knowing acceptance of the solicitation activity. Plaintiff does not equate a caller's unilateral use of Allstate's name, or mere receipt ofa complaint, with conclusive proof of either theory.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

86. The January claim is attributed to Premier, Della Agency, Santos, Allstate, and the responsible Does; the April claim to Gambale, Matos, Allstate, and the responsible Does; and Call 3 to JNZ, O'Connor, Allstate, and the responsible Does. Calls 4 through 6 are attributed to their originating operation and Allstate under the alleged solicitation and agency relationships the precise downstream agency allocation remains within the routing records. The responsible Doe participants include the callers identifying themselves as Luna, Brian, Alex, Simon, and Sam, and the persons or entities operating, directing, or arranging their calls.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

87. The foregoing call-specific attributions identify the participants presently

connected to particular calls by the transfers, proposals, communications, and controlled information. Plaintiff also alleges responsibility for acts performed by others under the agency, ratification, concert-of-action, and civil-conspiracy principles set forth below; personal dialing of every call is not the basis of the derivative claims.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

## Concert of Action, Civil Conspiracy, and Joint Liability

88. Plaintiff pleads concert of action and civil conspiracy as alternative derivative theories for the independently actionable conduct alleged in this Complaint. Plaintiff relies on the underlying TCPA, MHSSA, and FTSA violations as breaches of duties imposed by law and seeks to attribute those violations to the participants legally responsible for the concerted conduct.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

89. Under Michigan's concert-of-action doctrine, persons who act tortiously pursuant to a common design may be held responsible for the entire resulting injury. Identification of the participant who directly caused a particular injury does not preclude responsibility of the other participants. *Abel v. Eli Lilly & Co.,* 418 Mich. 311, 337-39, 343 N.W.2d 164 (1984).

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

90. A civil conspiracy may consist of concerted action by two or more persons to accomplish an unlawful objective or a lawful objective through unlawful means. Liability depends upon an independently actionable underlying wrong committed in furtherance of that purpose. *Green Pontiac Public Library,* 350 Mich. App. 478,495, 32 N.W.3d 487 (2024).

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

91. The common commercial objective was to sell Allstate automobile insurance through coordinated outbound solicitation, qualification, live transfer, and preparation of proposals. Allstate authorized agency vendor arrangements, retained power to restrict vendors, and supplied pricing resources and Allstate email accounts; the agencies and producers received the transferred prospects and performed the sales functions. Delluniversita's identification of Premier as approved and recommended by Allstate further supports Plaintiffs allegation of an authorized solicitation process.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

92. For Call 1, Plaintiff alleges that Premier and the responsible upstream callers generated and transferred the prospect, Della Agency arranged for such transfers, and Santos continued the solicitation and prepared the Allstate proposal. For Call 2, upstream callers obtained the controlled Carl Carpenter information and transferred Plaintiff to Matos at Gambale; that same information was later used in the September solicitations, including the completed transfer to O'Connor

at JNZ. The completed transfers, corresponding proposals, and reuse of controlled information support the inference that these participants performed coordinated functions rather than coincidentally contacting the same consumer.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to support a belief as to the truth of any allegation regarding call 1 or calls 3-6. As to call 2, the Gambale Defendants admit that it was transferred to Matos.**

93. Plaintiff alleges upon information and belief that the participants identified in the foregoing call chains agreed to and cooperated in obtaining, qualifying, transferring, and soliciting the telephone prospects described above. The unlawful means alleged include initiating the Subject Calls to registered residential numbers without the required consent, failing to provide required identification and functioning callback facilities, and, in the April-September sequence, continuing the solicitations after the recorded demand and April notice. The retained and reused controlled information supports Plaintiff's allegation that the continuing solicitation activity was part of the agreed process rather than a series of unrelated referrals.

**ANSWER: Denied as untrue.**

94. The FCC has explained that imposing vicarious liability upon a seller does not relieve the third-party telemarketer of joint liability for the unlawful calls. *In re Joint Petition Filed by DISH Network, LLC,* 28 FCC Red. 6574, 6591-92, ,r 44 (2013). Plaintiff alleges Allstate's responsibility for all six Subject Calls under the agency relationships pleaded above and seeks shared liability with the telemarketers and other participants legally responsible for those calls.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

95. Plaintiff seeks joint and several liability against all Defendants for the actionable conduct undertaken within the scope and furtherance of the common design in which they participated or for which they are otherwise derivatively responsible. A participant's responsibility under these theories includes actionable acts performed by other participants in furtherance of that common design, even where the participant did not personally dial or speak during a particular call.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny**

**this paragraph as untrue.**

96. The contracts, vendor approvals, campaign instructions, lead identifiers, routing histories, pricing-system access records, payment records, and communications establishing the scope of the arrangements are principally within Defendants' possession. Plaintiff pleads the derivative theories in the alternative and requests allocation by Defendant and call to the extent the Court determines that particular conduct falls outside a Defendant's shared responsibility. Plaintiff seeks one satisfaction of any shared award, while preserving recovery for separately compensable violations.

**<u>ANSWER:</u> This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

## CAUSES OF ACTION
## COUNT I
## Violation of TCPA 47 C.F.R. § 64.1200(a)(l)(iii)

97. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**<u>ANSWER:</u> The Gambale Defendants incorporate by reference each**

**answer to the preceding paragraphs as if fully restated herein.**

98. Calls 1 through 6 were made to numbers assigned to service charging Plaintiff for calls, without prior express consent and for no emergency purpose.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

99. Plaintiff alleges use of a qualifying automatic telephone dialing system as described above.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

100. Plaintiff seeks $500 for each of six actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation, under§ 227(b)(3).

**<u>ANSWER:</u> This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

## COUNT II

## Violation of TCPA-47 C.F.R. § 64.1200(a)(2)

101. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**ANSWER: The Gambale Defendants incorporate by reference each answer to the preceding paragraphs as if fully restated herein.**

102. The six calls solicited automobile insurance and thus were telemarketing.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

103. Plaintiff alleges that the originating operations used qualifying automated dialing equipment without his prior express written consent.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

104. No signed agreement authorized the Subject Calls to either number. The

controlled information and proposals generated after the calls began did not provide such an agreement.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

105. Plaintiff seeks $500 for each of six actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation, under§ 227(b)(3).

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

**COUNT III**

**Violation of TCPA- 47 C.F.R. § 64.1200(c)(2)**

106. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**ANSWER: The Gambale Defendants incorporate by reference each preceding answer as if fully restated herein.**

107. Both called numbers were residential and registered more than thirty-one days before the respective solicitations. Plaintiff alleges six prohibited

solicitations, including unanswered Call 4 based on its relationship to the immediately following Allstate calls.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

108. All six calls occurred within twelve months and were made by or on behalf of Allstate under the pleaded agency relationships. The more-than-one-call requirement is alleged against Allstate and each other Defendant to whom more than one qualifying call is attributable under the direct, agency, and derivative-liability allegations; Plaintiff relies on those substantive relationships to establish attribution.

**<u>ANSWER:</u> This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

109. Plaintiff seeks $500 for each of six actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation, under§ 227(c)(5).

**<u>ANSWER:</u> This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required.**

**To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

## <u>COUNT IV</u>

## Violation ofTCPA-47 C.F.R. § 64.1200(d)(4)

110. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**<u>ANSWER:</u> The Gambale Defendants incorporate by reference each preceding answer as if fully restated herein.**

111. The answered calls were Calls 1, 2, 3, 5, and 6. The upstream callers supplied first names or generic descriptions and failed to provide complete identification of the responsible solicitation entities and an appropriate contact number or address during their solicitation activity.

**<u>ANSWER:</u> The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

112. Santos supplied her surname and Allstate identification only after questioning; other callers used “your insurance company,” first-name-only introductions, or resumed soliciting without identification. Plaintiff acknowledges that the later proposals identified the receiving agencies and

alleges the deficiencies in the live calling activity, not that no Allstate identification ever occurred.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

113. Plaintiff seeks $500 for each of six actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation, under§ 227(c)(5).

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

**COUNT V**

**Violation of TCPA -47 C.F.R. §§ 64.1200(d)(3), (d)(6)**

114. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**ANSWER: The Gambale Defendants incorporate by reference each preceding answer as if fully restated herein.**

115. Plaintiff delivered the recorded request to the operation calling

the 56 Number and personally notified Matos during Call 2 of the registry listing and lack of consent. The September calls followed months later, using the same controlled lead information obtained in April.

**ANSWER: The Gambale defendants admit only that a person who identified himself as Carl Carpenter spoke to Matos during the transferred portion of call 2 and stated that the number was registered. As to the remainder of this paragraph, the Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation.**

116. Plaintiff alleges that the responsible calling operation failed to record, retain, communicate, and implement the request, and that the responsible seller failed to ensure the request was honored. Calls 3 through 6 constitute the subsequent calls alleged under this Count, after the maximum implementation period had elapsed.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

117. Plaintiff seeks $500 for each of five actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation,

under§ 227(c)(5).

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

**COUNT VI**

**Violation of TCPA-47 C.F.R. § 64.1601(e)**

118. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**ANSWER: The Gambale Defendants incorporate by reference all preceding answers as if fully restated herein.**

119. The displayed callback numbers produced a busy signal after three rings, a not-in-service recording, unanswered ringing, or a name-spelling tree without an available DNC mechanism. Plaintiff alleges that the numbers transmitted for Calls 1 through 6 failed to provide the required means to make a do-not-call request during regular business hours.

**ANSWER: The Gambale defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

120. Plaintiff also alleges deficient name transmission to the extent the telemarketer's name was available through its carrier. The claim is not based solely on the absence of a CNAM display; it includes the particular callback failures described above.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

121. Plaintiff asserts that§ 64.1601(e) is privately enforceable under § 227(c)(5). Plaintiff acknowledges the contrary holding in Dobronski v. Transamerica Life Insurance Co., 347 Mich. App. 92 (2023), and preserves his federal-law position for reconsideration or appellate review without representing that contrary Michigan authority has been overruled.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

122. Plaintiff seeks $500 for each of six actionable calls, with discretionary enhancement to $1,500 for each knowing or willful violation, under§ 227(c)(5).

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

**COUNT VII**

**Violation of MHSSA- M.C.L. §§ 445.llla(S), 445.lllb, 445.lllc(l)(t), (g), and (3)**

123. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**ANSWER: The Gambale Defendants incorporate by reference each preceding answer as if fully restated herein.**

124. Plaintiff was a residential telephone subscriber at his residence in Washtenaw County, Michigan when he received the calls. The answered solicitations were voice communications encouraging purchase of automobile insurance, and the callers and responsible principals acted as telephone solicitors. The unanswered call can reasonably be inferred to have been the same.

**ANSWER: As to the portion of this paragraph alleging Plaintiff's residence, the Gambale Defendants lack knowledge or information**

**sufficient to form a belief as to the truth of that allegation. As to the remainder of the paragraph, it is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

125. The calls were made to numbers registered on the do-not-call registry and involved the identification deficiencies described above. The September calls also followed Plaintiffs recorded request and April notice, supporting the claim under M.C.L. § 445.11 lc(l)(g).

**ANSWER:** **This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

126. Plaintiff alleges violations of the telephone-solicitation provisions independently of whether a completed home solicitation sale occurred. The commercial callers were not charitable, public-safety, or political solicitors within M.C.L. § 445.11 le.

**ANSWER:** **This paragraph is solely a statement of the pleader's**

**intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

127. Plaintiff seeks $250 for each of six actionable calls, totaling $1,500.

**<u>ANSWER:</u> This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

**COUNT VIII**

**Violation of the FTSA-Fla. Stat.§ 501.059(2), (8)(a)-(b), and (10)**

128. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

**<u>ANSWER:</u> The Gambale Defendants incorporate by reference each preceding answer as if fully restated herein.**

129. This Count concerns only Calls 1 and 2, on January 26 and April 3, 2026. Plaintiff alleges upon information and belief that those solicitations were

conducted in material part from Florida through the Kissimmee and Stuart agencies and their participating producers, in addition to their originating lead-generation operations.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of any allegation concerning call 1. As to call 2 only, the Gambale Defendants admit they conduct operations in material part from Florida.**

130. Both called numbers bear Florida area code 407, and Plaintiff maintains a Florida residence, but Plaintiff expressly acknowledges receiving the calls in Michigan. Florida coverage is alleged on the Florida solicitation activities and agency participation, not solely on a displayed originating area code.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

131. Luna, Brian, and Alex did not immediately identify their true first and last names and the businesses for which they solicited. Santos initially provided only Ana, with her surname and business supplied in response to Plaintiffs

questions.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

132. The displayed January number rang three times and went busy on immediate callback; the April number produced a not-in-service recording. Plaintiff alleges failure to provide numbers capable of connecting the recipient to the solicitor or seller as required by subsection (S)(b).

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

133. Plaintiff additionally alleges upon information and belief that the responsible callers used a system for automated selection and dialing without prior express written consent, contrary to subsection (S)(a). The FTSA claim is independently supported by the identification and callback allegations and does not depend exclusively on proof of automated technology.

**ANSWER: The Gambale Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

134. Plaintiff seeks $500 for each of these two actionable calls, with discretionary trebling for knowing or willful violations to a maximum of $3,000.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against the Defendants responsible for the violations proved, as follows:

### A. Liability and Allocation

Joint and several liability against all Defendants for the actionable calls and violations attributable to them under the agency, ratification, concert-of-action, and civil-conspiracy allegations, including acts of other participants within the scope and furtherance of the common design for which they are legally responsible. Alternatively, Plaintiff requests allocation by Defendant and call to the extent the Court determines that responsibility is not shared. Plaintiff requests only one satisfaction of any shared award, while preserving separate recovery for independently compensable violations.

**B. TCPA Damages**

Damages as follows:

| | |
|---|---|
| Count I | 6 violations |
| Count II | 6 violations |
| Count III | 6 violations |
| Count IV | 6 violations |
| Count V | 5 violations |
| Count VI | 6 violations |

**C. MHSSA Damages**

Under Count VII, a total of six actionable calls at $250 each, for total damages of $1,500.00.

**D. FTSA Damages:** Under Count vm, a total of two actionable calls at $500 each, for a total of$1,000, trebled for knowing or willful violations, for total damages of$3,000.00.

**E. Total Judgment Demanded**

Plaintiff requests total enhanced statutory damages of FIFTY SEVEN THOUSAND DOLLARS ($57,000).

**F. Costs and Interest**

Plaintiff further requests taxable costs, disbursements, prejudgment and post judgment interest as permitted by law, and such further relief within this Court's jurisdiction as is just and proper.

**ANSWER: This paragraph is solely a statement of the pleader's intentions and/or legal conclusions, and as such, no answer is required. To the extent any answer is required, the Gambale Defendants deny this paragraph as untrue.**

## AFFIRMATIVE AND OTHER DEFENSES

The Gambale Defendants, by their attorneys, state the following defenses and affirmative defenses to the allegations made in the Complaint. By asserting the following defenses and affirmative defenses to Plaintiff's Complaint, the Gambale Defendants do not assume any burden of proof that Plaintiff otherwise may have and reserve the right to amend their defenses and affirmative defenses.

1. The case should be dismissed because this Court lacks general and limited personal jurisdiction over the Gambale Defendants.

2. Plaintiff has failed, in whole or in part, to state a claim upon which relief can be granted.

3. Plaintiff's claims are barred, in whole or in part, due to absence of or failure to meet elements under the Telephone Consumer Protection Act or its state law equivalent and associated regulations or law.

4. Plaintiff's claims are barred, in whole or in part, because the Plaintiff lacks standing.

5. Plaintiff's claims are barred, in whole or in part, because of the Plaintiff's consent.

6. Plaintiff's claims are barred, in whole or in part, because of applicable safe harbor provisions.

7. Plaintiff's Amended Complaint is or may be barred, in whole or in part,

due to a bona fide error.

8. Plaintiff's claims fail because the alleged damages were not caused by any action or inaction by the Gambale Defendants.

9. Plaintiff's claims are barred, in whole or in part, because of lack of any duty owed by the Gambale Defendants.

10. Plaintiff's claims are barred, in whole or in part, by their assertion of damages which are not proper calculation or measure of purported damages.

11. Plaintiff's claims are barred, in whole or in part, by their failure to mitigate the purported damages.

12. Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

13. Plaintiff's claims may be barred, in whole or in part, due to the parties' course of dealing and/or course of performance, and/or due to Plaintiffs' acquiescence.

14. Plaintiff's claims may be barred, in whole or in part, by estoppel, including equitable estoppel.

15. Plaintiff's claims are barred, in whole or in part, due to their inequitable conduct and/or unclean hands.

16. Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff seeks to recover the same amounts for the same alleged occurrences from others.

17. Plaintiff's claims are barred, in whole or in part, because the Gambale Defendants acted in good faith.

18. Plaintiff's claims may be barred, in whole or in part, by the doctrines of waiver and/or release.

19. Plaintiff's claims may be barred by election of remedies.

20. The Gambale Defendants reserve the right to add further and other Affirmative Defenses as they become known.

Dated: October 20, 2026

Respectfully Submitted,

**THE MILLER LAW FIRM, P.C.**

/s/ *Brandon T. Goldstein (P86448)*
Devon P. Allard (P71712)
Brandon T. Goldstein (P86448)
950 W. University, Ste. 300
Rochester, MI 48307
(248) 841-2200
dpa@millerlawpc.com
btg@millerlawpc.com

*Attorneys for Defendants Gambale Insurance Group, Inc. and Misael Matos*

**PROOF OF SERVICE**

The Undersigned certifies that on October 20, 2026, he filed the foregoing document with the Clerk of the Court using the CM/ECF system.

Counsel of record not registered to receive filings via the Court's CM/ECF system was served by first-class US Mail at their address of record as follows:

Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099

Respectfully Submitted,

**THE MILLER LAW FIRM, P.C.**

/s/ *Brandon T. Goldstein (P86448)*
Devon P. Allard (P71712)
Brandon T. Goldstein (P86448)
950 W. University, Ste. 300
Rochester, MI 48307
(248) 841-2200
dpa@millerlawpc.com
btg@millerlawpc.com

*Attorneys for Defendants Gambale Insurance Group, Inc. and Misael Matos*